## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:  CertainTeed Fiber Cement Siding Litigation
--------------------------------------------------------------
This Document Relates to: All Actions
--------------------------------------------------------------

MDL NO. 11-2270

## SECOND CONSOLIDATED AMENDED COMPLAINT

Plaintiffs Steve Clavette, Chad Epsen, Monique Orieux, Chris Thames and Gwen Weithaus, Steven Wiedmeyer, Richard Tesoriero, Michael Patota, John and Barbara Robards and Koreen Grube, by and through their counsel, and on behalf of themselves and all others similarly situated ("the Class") bring this action against CertainTeed Corporation ("CertainTeed").   In support hereof, Plaintiffs allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this consumer class action against CertainTeed Corporation, on behalf of all persons and entities who own, or have owned homes or other structures physically located in the United States on which CertainTeed WeatherBoards FiberCement exterior siding products ("Siding") were installed.

2.      This lawsuit arises out of damages sustained by Plaintiffs and the Class that were proximately caused by CertainTeed's defective Siding used in the construction of Class member's homes and other structures, or which was otherwise installed on the homes and structures of Plaintiffs and the Class.

3.      CertainTeed sold or distributed Siding throughout the United States for installation on homes, commercial buildings, and other structures. At all times material hereto, CertainTeed marketed and represented the Siding to be "the finest-performing product of its kind," and "engineered for decades of superior protection, wear and durability." Specifically,

CertainTeed sold its Siding to Plaintiffs and members of the Class with a warranty that its Siding will be free from manufacturing defects for a 50-year period, and specifying that subject to yearly proration "CertainTeed will pay to repair or replace, at its option, any WeatherBoards FiberCement Siding determined to be defective during the 50-year period following its installation."   Consumers, as well as those within the construction industry appropriately relied on the warranty and on CertainTeed's marketing nomenclature to mean that the Siding is expected to have a usable life of 50 years.

4.      Contrary to this representation and understanding, however, the Siding is defectively designed and manufactured, such that it prematurely fails, causing damage to the underlying structures.  The outward manifestation of the Siding deterioration is among other things, cracking, surface crazing or micro-cracking, warping, bowing, discoloration, and product shrinkage and excessive gapping.  The defects in the Siding are so severe that Plaintiffs and members of the Class must repair or replace their siding sooner than reasonably expected.

5.      Plaintiffs seek to recover, for themselves and the Class, all costs associated with repairing, removing and/or replacing the Siding, as well as the costs of repairing any damage to their properties caused by the failure of the Siding to perform as represented and warranted. Plaintiffs also seek injunctive relief requiring CertainTeed to modify their warranty claims process so as to uniformly provide relief in accordance with its obligations under the law.

## PARTIES

*Plaintiffs*

A.      **Steve Clavette**

6.      Plaintiff Steve Clavette is a citizen of Mequon, Wisconsin residing at 3318 West Riverland Drive.  Mr. Clavette purchased his newly constructed home on or about June 9, 2006,

which was constructed using CertainTeed WeatherBoards FiberCement Siding.  Mr. Clavette first became aware of the problem with his Siding during the summer of 2010.  Specifically, in 2010, Mr. Clavette began to notice large gaps between the Siding boards on his home. Thereafter, Mr. Clavette noticed shrinkage and a cracked board.

7.      Mr. Clavette is a general contractor and has overseen the construction of many clients' homes on which CertainTeed's defective Siding had been installed.  Many of his clients submitted warranty claims to CertainTeed regarding its defective Siding, and in certain cases, Mr. Clavette personally accompanied the inspector sent by CertainTeed to investigate his clients' claims.  In most cases, CertainTeed either denied that its Siding was defective or blamed the manifested defects on the installer of the Siding.  For some of Mr. Clavette's clients, CertainTeed did offer to provide replacement Siding boards but told these homeowners that they were responsible for removing the defective Siding, as well as installing and painting the replacement boards themselves.

8.      In light of Mr. Clavette's experiences with CertainTeed concerning his clients' defective Siding, and having observed firsthand the company's woefully inadequate response to his clients' legitimate warranty claims, he decided to forego submitting a warranty claim to CertainTeed, believing the process to be a futile exercise that would not make him whole.

**B.      Chad Epsen**

9.      Plaintiff Chad Epsen is a citizen of Elk River, Minnesota, residing at 13560 211th Avenue NW.

10.     Mr. Epsen built his home in 2004 using CertainTeed Siding.  Subsequently, in 2006, the Siding began to warp and shrink.

11.    In 2008, the installer who originally installed the Siding, repaired the damaged boards under his own warranty, and replaced them with new CertainTeed Siding.

12.    In 2009, Mr. Epsen noticed more warping and shrinkage.  By 2010, he saw cracking, gapping, paint chipping, delaminating, boards coming loose and nails pulling up on the Siding on each side of his home.

13.    Mr. Epsen contacted CertainTeed, who sent an inspector to his home.  The inspector determined that Mr. Epsen had a valid claim and told Mr. Epsen that the damage was related to the Siding and not the installation.  A warranty manager for CertainTeed told Mr. Epsen that CertainTeed would pay for new CertainTeed Siding for his home and $280 worth of paint.  Mr. Epsen requested that CertainTeed pay for the significant labor costs of removing the defective Siding on his home, and having new Siding installed.

14.    CertainTeed responded that "under no circumstances" would it pay for any labor involved in the removal of the existing Siding or the installation of new Siding, nor any other associated expenses, other than the $280 worth of paint.  The defective and damaged CertainTeed Siding remains on Mr. Epsen's home.

**C.    Monique Orieux**

15.    Plaintiff Monique Orieux is a citizen of Minnesota, residing in Ramsey, Minnesota.

16.    Ms. Orieux hired United Building Centers ("UBC") to install CertainTeed WeatherBoards Siding on her Minnesota vacation home and two other structures on the property.  Installation began in November 2004 and was completed in February 2005.  Ms. Orieux paid $19,509.65 for materials and labor.  Ms. Orieux constructed a fourth structure on her property in

4

July 2005 and sided that structure with CertainTeed Siding as well.  She paid $3,749.56 for materials.

17.     During the installation on the fourth structure, Ms Orieux noticed discoloration and shrinkage in the Siding installed in 2004-2005.   She immediately contacted UBC to seek relief, but the lumber yard refused to remedy the problem and did not inform her of CertainTeed's warranty requirement that she report the problem to CertainTeed within two years of installation in order to receive full compensation.

18.     In April 2008, Ms. Orieux submitted a warranty claim to CertainTeed.  Upon inspection, CertainTeed identified several boards of Siding that did not meet its quality standards and agreed to replace those specific boards but refused to pay for the labor to remove, dispose of and replace the problem boards.  CertainTeed also disclaimed any liability for the discoloration of the boards.  However, it provided eight gallons of cleaning solution to remove efflorescence (crusty, white salt deposits leached from the FiberBoard as water passes through it) and labor to apply the solution.  The cleaning solution was only a temporary fix for the mineral deposits, but it did not substantially improve the discoloration problem.

19.     Although Ms. Orieux has been in continual contact with CertainTeed regarding its defective Siding, CertainTeed continues to refuse to replace the Siding.

**D.     Gwen Weithaus and Chris Thames**

20.     Plaintiffs Gwen Weithaus and Chris Thames, a married couple, are citizens of Menomonee Falls, Wisconsin residing at W173N5423 Ravenwood Drive.  Ms. Weithaus and Mr. Thames jointly purchased their newly constructed home on or about October 20, 2003, which was constructed using prefinished CertainTeed WeatherBoards FiberCement Siding.  Ms. Weithaus and Mr. Thames first became aware of the problem with their Siding in 2005 when

they began to notice large gaps between the siding boards on their home. Thereafter, Ms. Weithaus and Mr. Thames noticed shrinkage, cracked boards, corners cracked off and bowing of boards. Ms. Weithaus and Mr. Thames estimate that eighty percent of their siding is defective.

21.     Ms. Weithaus and Mr. Thames submitted a claim under CertainTeed's warranty coverage and provided documentation of the foregoing defects in support of the claim. CertainTeed, through its representatives, offered only unfinished replacement boards, but refused to deliver the boards, finish the boards, remove the defective boards, install the replacement boards, or paint Ms. Weithaus' and Mr. Thames' home so as to match the new boards to the existing boards.

**E.     Steven Wiedmeyer**

22.     Plaintiff Steven Wiedmeyer is a citizen of West Bend, Wisconsin, residing at 5738 Hillcrest Lane. Mr. Wiedmeyer purchased CertainTeed WeatherBoards FiberCement Siding on or about June 2003 for his home and purchased additional Siding on or about June 2004 for a detached garage.

23.     In late 2004, Mr. Wiedmeyer first became aware of a problem with the Siding when he began to notice shrinkage and gaps in the seams of the Siding boards. Thereafter, during 2005, Mr. Weidmeyer noticed the paint flaking throughout the siding on his house, even on sides with little exposure to the sun.

24.     Mr. Wiedmeyer then contacted the supplier who had installed the defective Siding on his home, only to be told by the supplier that CertainTeed would likely not honor its warranty with Mr. Wiedmeyer because, in the supplier's experience, CertainTeed had regularly been denying warranty claims regarding its defective Siding.

**F.      Richard Tesoriero**

25.      Plaintiff Dr. Richard Testoriero is a citizen of New York, residing at 138 Chapel Rd. in Hannibal NY.

26.      In 2004, Dr. Tesoriero's builder installed 575 pieces of CertainTeed, Duck Back Mahogany colored, Siding on his New York home.

27.      The primary reason Dr. Tesoriero purchased CertainTeed Siding, as opposed to another type of siding product, is because the Siding came with a purported 50-year warranty.

28.      In 2004, Dr. Tesoriero informed CertainTeed that his Siding was discoloring (leaching and chalking white residue).  CertainTeed responded to Dr. Tesoriero's letter by denying liability for the discoloration of the boards, providing only twelve gallons of cleaning solution to remove efflorescence (crusty, white salt deposits, leached from the FiberBoard as water passes through it) and labor to apply the solution.  The cleaning solution was only a temporary fix for the mineral deposits. Dr. Tesoriero has had to reapply solution yearly.

29.      In 2008, Dr. Tesoriero began to notice more discoloration, shrinkage, peeling, warping, and chipping of his Siding.

30.      In May, 2008, Dr. Tesoriero submitted a warranty claim to CertainTeed, informing the company of the foregoing problems with his Siding.

31.      In July, 2008, CertainTeed sent Dr. Tesoriero a letter denying his warranty claim, refusing to repair and/or replace his defective siding.

**G.      Michael Patota**

32.      Plaintiff Michael Patota is a citizen of Georgia, residing at 5720 Upper Creek Ct., Suwanee, Georgia.

33.      In 2005, Mr. Patota built his home using CertainTeed WeatherBoards Fibercement Siding.

34.     Within six (6) years of installation, the Siding on Mr. Patota's home began to warp, crack, shrink and deteriorate.

35.     In 2011, Mr. Patota contacted CertainTeed about the problems.   In response thereto, a CertainTeed representative instructed Mr. Patota to complete a CertainTeed "Fibercement Complaint Questionnaire" and submit the completed questionnaire and photos of the affected Siding to CertainTeed.

36.     Following CertainTeed's instructions, Mr. Patota completed the "Fibercement Complaint Questionnaire" he received from CertainTeed and sent it back to the company along with photos of his defective cracked Siding.

37.     Responding to Mr. Patota's complaint, CertainTeed did not admit liability for the cracking of the boards but offered to provide Mr. Patota with replacement boards and paint. However, the company refused to provide Mr. Patota with any funds to cover labor for removal of the Siding and installation of new boards.   Consequently, Mr. Patota refused CertainTeed's offer.

38.     Mr. Patota then submitted a warranty claim to CertainTeed, further informing the company of his Siding's manifested defects.

39.     In response to Mr. Patota's warranty claim, CertainTeed sent Mr. Patota a letter denying the claim.

**H.     John and Barbara Robards**

40.     Plaintiffs John and Barbara Robards, are citizens of Kentucky, residing at 17531 Fisherville Woods Dr., Fisherville Ky.

41.     Plaintiffs hired Doug French to install the Siding on their Kentucky home. Installation began in approximately November/December, 2006 and was completed in

approximately January, 2007. The Robards did not receive a copy of CertainTeed's warranty prior to or at the time of installation.

42.     The primary reason the Robards purchased CertainTeed Siding instead of another product is because it came with a 50-year warranty, which they learned about through advertisements for the product.

43.     The Robards noticed discoloration, cracking, and shrinkage in their Siding in approximately August 2010. They immediately contacted Falls City Lumber to seek relief, however, the lumberyard refused to remedy the problem and did not inform Plaintiffs of CertainTeed's warranty requirement that they report the problem to CertainTeed within two years of installation in order to receive full compensation.

44.     In approximately September 2010, the Robards submitted a warranty claim to CertainTeed but were unaware that CertainTeed required completion of a lengthy claim form until shortly before submitting it to the company.

45.     In response thereto, CertainTeed scheduled an inspection of the Robards' home for January 25, 2011.

46.     After inspecting the property, CertainTeed admitted that its inspection identified several boards of Siding that did not meet quality standards, but offered only to replace those specific boards and refused to pay for the labor necessary to remove, dispose of and replace all of the defective Siding.

**I.     Koreen Grube**

47.     Plaintiff Koreen Grube is a citizen of Wisconsin, residing at 6905 Mount Pleasant Drive, West Bend Wisconsin.

48.     Grube built her home in 2007 using CertainTeed Siding.  In 2008, the Siding began to crack.

49.     Not too long after Grube noticed problems with her Siding in 2008, she called Dennis Jung of Jung Construction Co., the company that installed her Siding.  A representative from the company inspected her home and gave her a price quote to caulk the cracked Siding. Because there were not many cracks at that time, Grube decided to monitor the situation.

50.     In 2009, however, the problem worsened and in the spring of 2010, she heard that others were having a problem with their Siding as well.  Grube initiated a complaint with CertainTeed in May 2010.

51.     Grube filled out an "FIC Complaint Questionnaire" she received from CertainTeed and enclosed an invoice and photos of her home showing some of the 40 cracks that had appeared in her Siding.

52.     CertainTeed inspected Grube's property in June 2010 and was unable to determine the cause of the cracking and warping in the Siding.

53.     CertainTeed stated that because Grube's Siding was no longer covered by the two-year "SureStart Protection," her warranty would only cover the cost of materials on a prorated basis.

54.     Consequently, CertainTeed offered to provide Grube with 429 pieces of Siding to replace the "affected walls" of her home because, "[w]hile the problem of cracks in the siding you are experiencing has not been determined, we do value our customers." However, CertainTeed refused to pay for the labor necessary to remove the defective Siding and install the new boards.

55.     Notwithstanding CertainTeed's offer to provide Grube with new boards to replace the defective Siding, the estimated labor cost for the installation of these new boards is approximately $7,000.

**Defendant**

56.     Defendant CertainTeed Corporation is a Pennsylvania corporation with its principal place of business located at 750 E. Swedesford Road, Valley Forge, Pennsylvania 19482. CertainTeed is a leading North American manufacturer of building materials including roofing, siding, insulation, windows and patio doors, fence, decking, railing, foundations and pipe.  CertainTeed and its affiliates have more than 7,000 employees and more than 65 manufacturing facilities throughout the United States and Canada. The group had total sales of more than $3 billion in 2008.

## JURISDICTION AND VENUE

57.     Defendant CertainTeed is headquartered in Montgomery County, Pennsylvania and conducts substantial business in Pennsylvania, including the sale and distribution of the Siding.  This Court has jurisdiction over Defendant because CertainTeed maintains sufficient contacts with Pennsylvania and otherwise has intentionally availed itself of the laws and markets of Pennsylvania.

58.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d).  The Named Plaintiffs are citizens of Wisconsin, Minnesota, Georgia, Kentucky and New York, and Defendant CertainTeed is a citizen of Pennsylvania.  Moreover, there are more than 100 Class members residing in multiple states, and the amount in controversy exceeds Five Million Dollars ($5,000,000.00).

59.    Venue is proper in this district pursuant to 28 U.S.C. § 1391, *et seq.* because CertainTeed's principal place of business is located in Valley Forge, Pennsylvania and as such, it resides within this district.

<u>**SUBSTANTIVE ALLEGATIONS**</u>

I.    **CertainTeed Misrepresented the Siding's Characteristics and Breached its Warranties to the Class.**

60.    Since at least 1999, CertainTeed has manufactured, sold or distributed Siding throughout the United States for installation on homes, commercial buildings or other structures.

61.    CertainTeed's marketing materials obtained from its website have represented that its WeatherBoards FiberCement Siding is "the best-looking, finest-performing product of its kind" and "the finest cement siding you can buy."

62.    CertainTeed's sales brochures and marketing literature, which were widely distributed to building professionals who installed the Siding and were generally available to Plaintiffs and the Class at the time of sale, similarly tout the superior characteristics of the Siding.  In these materials, CertainTeed states, among other things: "[e]ach and every sheet and board is engineered for decades of superior protection, wear and durability and is backed with a century-long tradition of excellence and customer satisfaction," and "[w]hen we say CertainTeed, we mean quality made certain, satisfaction guar<u>anteed</u>." (emphasis in original). CertainTeed further represents that its Siding "LASTS LONGER" and "OUTPERFORMS THE OTHERS."  Specifically, CertainTeed claims that its Siding has superior freeze/thaw protection, protects against damaging moisture, and resists everyday bumps and harmful impacts.  (*See* **Exhibit A.**)

63.     CertainTeed widely advertises that its Siding carries a 50-year warranty. Building professionals and consumers appropriately and reasonably interpret CertainTeed's warranty and representations to mean that the product is expected to have a usable life of 50 years.

64.     CertainTeed's limited 50-year warranty is attached hereto as **Exhibit B**. The warranty guarantees to the original property owner (and certain successive owners) that the Siding will be "free from manufacturing defects." The warranty also states that "CertainTeed will pay to repair or replace, at its option, any WeatherBoards FiberCement Siding determined to be defective during the 50-year period following its installation," subject to a proration of 2% per year.

65.     CertainTeed also provides a two-year warranty for its Siding called "SureStart Protection." SureStart Protection provides:

> [u]nder this warranty feature, CertainTeed will pay to repair or replace, at its option, any WeatherBoards FiberCement Siding proven to be defective during the two-year SureStart Protection period . . . CertainTeed's maximum liability under SureStart Protection will be equal to the reasonable cost to replace or repair the defective material at current value, including labor in connection with removal, repair or installation of either the original or replacement WeatherBoards FiberCement Siding . . .

66.     Given the early and severe deterioration in the product that requires unexpected maintenance and premature repair and replacement, the Siding has not lived up to CertainTeed's representations and warranties.

## II.     CertainTeed's FiberCement Siding is Inherently Defective.

67.     Upon information and belief, because of defect in its formulation and manufacture, the Siding experiences excessive shrinkage and expansion and long-term material degradation. Because of the excessive shrinkage and expansion, the Siding is prone to shrinking at the seams and joints, excessive gapping, warping, bowing, dropped panels, nails pulling

through panels, cracked panels, surface cracking, poor paint adhesion and generally pulling away from and off walls.  These defects manifest and worsen over time, indicating degradation of the material.  Several Plaintiffs have attempted to mitigate and or conceal damages through the installation of additional fasteners and/or application of sealant to cracks and open gaps; however progressive worsening of conditions has resulted in failure of the repairs.

68.    Upon information and belief, these defects have manifested themselves uniformly in the Siding installed on the homes of Plaintiffs and members of the Class and have been the subject of several online blog fora in which consumers and home developers have given similar details about: 1) the widespread defects inherent in the various CertainTeed formulated Siding products; and 2) CertainTeed's failure to honor its express and implied warranties with Class members and its efforts to obfuscate the true nature of its defective Siding.

69.    The following represents a small sampling of internet postings by CertainTeed Siding purchasers and installers regarding their frustrations with the defective Siding [*sic* throughout]:

a)   "We noticed several small cracks in our siding (probably about 8), within about 20 months of our build. Unfortunately we did not report them immediately and Certainteed would only replace the boards. So we have the boards (enough to reside the whole section) but have to pay for the labor on our own..." (http://ths.gardenweb.com/forums/load/build/msg0623391229111.htm1.)

b)   The product is shrinking at the seams over 1/2". I used the water diverters and they are now visable. The builder specs a pre-finished product therefore I am unable to caulk the seams. Also the nails were pulling thru the product. After close review we found the nailing to be per spec. (flush nailing) We are thinking the product was absorbing too much moisture and froze during the winter months, making the product weak. Since we have had these problems Certainteed has re-formulated the product and added more flyash to the panel." (http://www.contractortalk.com/f33/hanging-certainteed-cement-siding-31865/.)

c)   "Our company installed 25 sq. of Certinteed Fiber Cement Siding on a house

April of 2006 and 3 month later we had chalking and discoloration problems that had to be repaid at our expence. At that time a represenitive told us it was an excelent job of installing. 9 months later we more discoloration and shrinkage at end joints, bottom of boards cupping out, and boards cupping between studs 16"0.c. We contacted or supplier and ask to file a warrenty claim they contacted Certinteed and they sent a Rep. out to look at the siding. A few days later they responded with a letter and said it was basicly a installation problem or a moister problem from a bad roof, or poor bath room or kitchen ventilation. We had installed Hardi Fiber Cement Siding on a house before this one and one house after this house with the same cutting and nailing system with no problems. You tell me if Certieed dosen't have a product problem." *(Id.)*

70.    At present, upon information and belief, there are thousands of Class members, including Plaintiffs, whose homes and other structures incorporate CertainTeed's defective Siding and who have observed and otherwise experienced the uniform defects described herein.

71.    Because the defects in the Siding are so widespread, some Class members have been denied insurance coverage for their homes or other structures unless coverage for the Siding and Siding related damage is excluded.

72.    Upon information and belief, as a direct result of the readily observable and uniform defects inherent in the Siding and in an attempt to cure and ameliorate the defects, CertainTeed has modified the material composition of its Siding several times throughout the Class period, but such modifications have not cured the defects inherent in the Siding.

**III.    The Remedies Provided by the Warranty are Inadequate.**

73.    Upon information and belief, CertainTeed has received thousands of warranty claims alleging a manufacturing or design defect in the Siding.  Despite receiving a litany of complaints from consumers (such as Plaintiffs and other members of the Class), CertainTeed has not notified consumers about the defects, and has refused to fully repair damage caused by the premature failure of its product.

74.     CertainTeed's response to customers' warranty submissions and other requests for assistance and compensation is woefully inadequate under these circumstances in that it limits Plaintiffs and Class members' recovery to replacement costs of individual boards of Siding and excludes costs of labor to replace the Siding or remove damaged Siding for the last 48 years of the warranty.

75.     CertainTeed's failure to address on a class-wide basis the defects inherent in its Siding, which have foreseeably resulted in the myriad of problems described herein, constitutes a breach of its express and implied warranties to Plaintiffs and the Class.  Moreover, CertainTeed's affirmative representations as to the suitability and exemplary composition of its defective Siding constitute an actionable misrepresentation of material fact.

76.     CertainTeed warranted, advertised and sold to Plaintiffs and the Class Siding products that it reasonably should have known were defectively designed and failed prematurely.

77.     As a direct and proximate result of purchasing and installing CertainTeed's Siding, Plaintiffs and the Class have suffered damages, in that the Siding on their homes and other structures has and will continue to fail prematurely, resulting in damage to the Siding and the underlying structures and requiring them to expend thousands of dollars to repair the damage associated with the incorporation of the Siding into their homes and other structures, or to prevent such damage from occurring.

IV.     **Tolling of Statutes of Limitation**

78.     Until shortly before Plaintiffs filed their original complaints, Plaintiffs had no knowledge of, nor reasonable basis to believe that the Siding they purchased was inherently defective.  Indeed, because the defects in the Siding are latent and not detectable until manifestation, Class members could not reasonably discover their Siding was defective until

after installation, despite the exercise of due diligence. At the time of first sale, building and construction professionals would not be able to detect the latent defect unless they subjected the Siding to their own testing, modeling or analysis.

79.     In addition, Plaintiffs were impeded from discovering the defective nature of the Siding because of CertainTeed's affirmative acts of concealment regarding the inherent defects of its Siding and the corresponding affirmative misrepresentations of material fact contained in its marketing materials regarding the exemplary nature and premier long-term durability of the Siding.

80.     Furthermore, upon information and belief, CertainTeed has adopted a uniform standardized set of obfuscating responses to Class members who attempt to invoke the company's warranty coverage and who seek to hold CertainTeed to its promises regarding its defective Siding.  Specifically, agents of CertainTeed when reviewing warranty claims have falsely asserted to Class members that the Siding defects constitute normal wear and tear, are the natural outgrowth of cement-based siding products, and/or were caused by improper installation.

81.     Indeed, CertainTeed's self-serving representations that the Siding defects were no more than normal wear and tear, and its disingenuous claims of improper installation constitute affirmative misrepresentations of material fact in light of the known defects inherent in the Siding purchased by Plaintiffs and the Class.  Likewise, such representations serve to conceal the truth concerning the true nature of CertainTeed's defective Siding.

82.     At all times material hereto, CertainTeed had a duty to disclose to Plaintiffs and the Class that its Siding was defective, prone to foreseeable and uniform problems, such as shrinkage and other problems detailed herein, and otherwise was inherently flawed in its design such that the Siding was not suitable for use as an exterior building material.

17

## CLASS ALLEGATIONS

83.     This action has been brought and may be properly maintained as a nationwide

class action pursuant to Fed. R. Civ. P. 23, on behalf of a Class defined as follows:

> All individuals and entities that own, or have owned, homes or
> other structures physically located in the United States, on which
> CertainTeed Fiber Cement Siding is or has been installed.
> Excluded from the Class is the Defendant, any entity in which
> Defendant has a controlling interest or which has a controlling
> interest of Defendant, and Defendant's legal representatives,
> assigns and successors.

84.     Alternatively, or in addition to the nationwide Class claims, Plaintiffs bring these

claims under Fed. R. Civ. P. 23 on behalf of themselves and on behalf of Subclasses of

individuals and entities residing in each of the states in which a named Plaintiff resides and each

of the states where the laws are similar to each of the states in which a named Plaintiff resides.

("State Subclasses").  The State Subclasses are defined as:

> All individuals and entities that own, or have owned, homes or
> other structures physically located in the applicable State, on which
> CertainTeed Fiber Cement Siding is or has been installed.
> Excluded from the Class is the Defendant, any entity in which
> Defendant has a controlling interest or which has a controlling
> interest of Defendant, and Defendant's legal representatives,
> assigns and successors.

85.     Plaintiffs reserve the right to re-define the Class(es) prior to class certification.

86.     Members of the Class are so numerous that their individual joinder is

impracticable.  While the precise number is unknown at this time, upon information and belief,

the proposed Class is comprised of at least thousands of members.  The true number of Class

members is likely to be known by Defendant and may be ascertained through its books and

records.

18

87.     There are numerous questions of law and fact common to Plaintiffs and the Class, and those questions predominate over any questions that may affect individual Class members, including but not limited to:

a)      Whether the Siding is defective;

b)      Whether the Siding is subject to shrinking, warping, gapping, cracking, chipping, freezing, poor paint adhesion and generally pulling away from and off homes, and is not suitable for use as an exterior siding product for the duration of time advertised, marketed and warranted;

c)      Whether CertainTeed knew or should have known of the defective nature of the Siding prior to putting it into the stream of commerce for purchase by Plaintiffs and the Class;

d)      Whether CertainTeed properly advised consumers about the likelihood of its Siding's premature failure;

e)      Whether CertainTeed owed a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, warranting and marketing of the Siding;

f)      Whether CertainTeed breached its duty to Plaintiffs and the Class by designing, manufacturing, advertising and selling to Plaintiffs and the Class defective Siding and by failing promptly to remove the Siding from the marketplace or take other appropriate remedial action;

g)      Whether the siding material will continue to degrade in performance over time;

h)      Whether the Siding fails to perform in accordance with the reasonable expectations of ordinary consumers;

i)      Whether the Siding fails to perform as advertised, marketed and warranted;

j)      Whether CertainTeed breached its express warranties to Plaintiffs and the Class by advertising, marketing and selling defective Siding to Plaintiffs and the Class;

k)      Whether CertainTeed breached its implied warranties to Plaintiffs and the Class by advertising, marketing and selling Siding that was not of a merchantable quality, nor fit for the ordinary purpose for which it was sold;

l)      Whether Plaintiffs and the Class are entitled to compensatory damages, and the amount of such damages for the removal and replacement of the defective Siding;

m)      Whether CertainTeed's representations regarding the suitability and exemplary nature of its Siding, and its omissions and concealment of facts to the contrary regarding the Siding defects constitute violations of the Pennsylvania's Unfair Trade Practices and Consumer Protection Law and the similar laws of all other applicable States; and

n)      Whether CertainTeed should be required to notify all Class members about their defective Siding.

88.     Plaintiffs' claims are typical of the claims of the members of the Class, in that Plaintiffs, like all Class members, own homes or other structures on which the defective Siding had been installed.  As a result of the uniform defects inherent in the Siding's formulation, the Siding has failed and will continue to fail prematurely, causing Plaintiffs and all members of the Class to suffer damages in the form of unreimbursed costs associated with repairing or replacing the defective Siding.

89.     Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs have retained counsel with substantial experience in prosecuting nationwide multi-state

consumer class actions.  Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class they represent, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse or antagonistic to those of the Class.

90.     Plaintiffs and the members of the Class have all suffered and will continue to suffer harm and damages as a result of CertainTeed's conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, the vast majority of Class members likely would not be in a position to litigate their claims individually and would have no effective remedy at law through which to vindicate their claims against CertainTeed and be made whole.  Class treatment of predominating common questions of law and fact would also be superior to multiple individual actions, in that class treatment would conserve the resources of the courts and the litigants, and will further efficient adjudication of Class member claims.

## CAUSES OF ACTION

## COUNT I
## BREACH OF CONTRACT — EXPRESS WARRANTY

91.     Plaintiffs incorporate by reference each of the allegations contained in foregoing paragraphs of this Complaint.

92.     CertainTeed marketed and sold its Siding with the intent that the Siding would be purchased by Plaintiffs and members of the Class.

93.     The written warranty that has been attached hereto, and which was provided to Plaintiffs and the Class when they purchased the Siding, constitutes an express warranty as set forth in Uniform Commercial Code provision 13 Pa. C.S.A. § 2313.

94.     In this warranty, CertainTeed expressly states that its Siding is free of manufacturing defects and is suitable for use as an exterior home product.  This express warranty

became the primary basis of the bargain between CertainTeed and Plaintiffs and the Class when they purchased the Siding for installation on their homes and structures.

95.     Specifically, CertainTeed expressly warranted that the Siding purchased by Plaintiffs and the Class would be defect-free for a period of fifty years.  In fact, the Siding falls well short of this express promise and has manifested uniform defects causing the Siding to fail well in advance of this period.  Owners report that the problems worsen over time indicating the material is degrading with continued exposure to the elements.

96.     Defendant breached its express warranties to Plaintiffs and the Class by designing, manufacturing, marketing and selling Siding that was not fit for its intended use as a durable and long-term exterior home building product.  As detailed herein, the Siding did not perform as expressly promised and was fraught with a myriad of uniform defects.

97.     Moreover, because CertainTeed's express warranty provides for complete repair and replacement costs (including labor) for only an initial two-year period following purchase, Defendant's warranty coverage is inadequate to cover all of the costs of repairing, replacing and/or removing the defective Siding from the homes and structures of Plaintiffs and the Class and does not compensate Plaintiffs and the Class for any damages to their underlying homes and structures caused by the defective Siding, and for the diminution in the value of Plaintiffs' homes and structures.

98.     As alleged herein, CertainTeed has denied and continues to deny its express obligations to Plaintiffs and the Class.

99.     As a result of CertainTeed's breach of its express warranties, Plaintiffs and the Class have suffered actual damages, in that they have purchased and installed on their homes and other structures Siding that is defective and not at all suitable for its intended purpose.  These

defects have caused and will continue to cause Plaintiffs and the Class to expend substantial resources repairing and/or replacing their Siding and to address any collateral damages to their underlying homes and structures proximately caused by the defective Siding.

## COUNT II
## BREACH OF CONTRACT — IMPLIED WARRANTY

100.    Plaintiffs incorporate by reference each of the allegations contained in foregoing paragraphs of this Complaint.

101.    At all times material hereto, CertainTeed manufactured and sold its Siding to Plaintiffs and the Class, and in so doing, impliedly warranted to them that the product was of merchantable quality and fit for the use for which it was intended in accordance with Uniform Commercial Code provisions, 13 Pa. C.S.A. §§ 2314, 2315.

102.    The Siding was unfit for its intended use and it was not of merchantable quality, as warranted by CertainTeed, in that it was vulnerable (by virtue of its defective formula and not due to any secondary cause) to failure and malfunction in the myriad of ways detailed herein.  As such, the Siding was not merchantable at the time of purchase, in that it was not free from defects and not fit for its intended purpose, as warranted.

103.    As a result, CertainTeed breached its implied warranties to Plaintiffs and the Class by manufacturing and selling exterior siding with fundamental, inherent defects. Additionally, CertainTeed knowingly allowed these warranties to be made to Plaintiffs and the Class with the intent of inducing them to purchase its Siding even after being put on notice by Plaintiffs and other Class members of the defects inherent in its Siding.

104.    As a result of CertainTeed's breach of its implied warranties, Plaintiffs and the Class have suffered actual damages, in that they have purchased and installed on their homes and other structures a siding product that is defective and not at all suitable for its intended purpose.

These defects have caused and will continue to cause Plaintiffs and the Class to expend substantial resources repairing and/or replacing their Siding and addressing any collateral damages to their underlying homes and structures proximately caused by the defective Siding.

<u>COUNT III</u>
<u>NEGLIGENCE</u>

105.    Plaintiffs incorporate by reference each of the allegations contained in foregoing paragraphs of this Complaint.

106.    CertainTeed had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, design, marketing and manufacture of the Siding.

107.    CertainTeed breached its duty to Plaintiffs and the Class by designing, manufacturing, marketing and selling to Plaintiffs and the Class a defective product that has failed prematurely and will continue to fail prematurely, by failing to notify Plaintiffs and the Class of the true nature of its defective Siding, and by failing to promptly remove the Siding from the marketplace and take other appropriate remedial action.

108.    CertainTeed knew or should have known that the Siding was defective, would fail prematurely, was not suitable for use as an exterior housing material and otherwise was not as CertainTeed had represented it to be to Plaintiffs and the Class.

109.    Moreover, CertainTeed knew that Plaintiffs and the Class would rely upon the quality assurances that came with its Siding, and such reliance by Plaintiffs and the Class was foreseeable and justified.

110.    As a direct and proximate result of CertainTeed's negligence, Plaintiffs and the Class have suffered actual damages, in that they have purchased and installed on their homes and other structures Siding that is defective and not at all suitable for its intended purpose.  These defects have caused and will continue to cause Plaintiffs and the Class to expend substantial

24

resources repairing and/or replacing their Siding and addressing any collateral damages to their underlying homes and structures proximately caused by the defective Siding.

## COUNT IV
## VIOLATIONS OF UNFAIR TRADE
## PRACTICES AND CONSUMER PROTECTION LAWS

111.    Plaintiffs incorporate by reference each of the allegations contained in foregoing paragraphs of this Complaint.

112.    CertainTeed is a manufacturer, marketer, seller and/or distributor of the Siding.

113.    CertainTeed's conduct, as described herein, took place within the Commonwealth of Pennsylvania and constitutes unfair methods of competition or unfair or deceptive acts or practices in violation of §§ 201-2(4),(v),(vii), and (xxi) of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (hereinafter, "UTPCPL"), 73 Pa. C.S.A. §§ 201-1, *et seq.*

114.    The UTPCPL applies to the claims of all the Class members because the unlawful conduct occurred within the Commonwealth of Pennsylvania and otherwise emanated therefrom. Moreover, CertainTeed's applicable warranties, as attached herein, direct Class members to submit warranty claims to CertainTeed in Blue Bell, Pennsylvania, and CertainTeed directs all warranty works from its Blue Bell, Pennsylvania and Valley Forge, Pennsylvania offices.

115.    Plaintiffs and other Class members are consumers who purchased Siding for use on their homes or other structures, and the Siding was installed primarily for personal, family or household purposes within the meaning of 73 Pa. C.S.A. § 201-9.2.

116.    CertainTeed used and employed unfair methods of competition and/or unfair or deceptive acts or practices within the meaning of 73 Pa. C.S.A. §§ 201-2 and 201-3.  Such unfair

methods of competition and/or unfair or deceptive acts or practices include, but are not limited to the following:

     a)  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have (§ 201-2(4)(v)) (Defendant misrepresented and concealed material facts about the quality, uses, characteristics and benefits of the CertainTeed Siding);

     b)  Representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model, if they are of another (§ 201-2(4)(vii)) (Defendant concealed material facts about the quality of the CertainTeed Siding);

     c)  Failing to comply with any written guaranty or warranty given to the buyer (§ 201-2(4)(xiv)) (Defendant failed to comply with its express and implied warranties as set forth herein); and

     d)  Engaging in other fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding (§ 201-2(4)(xxi)) (Defendant deceptively created the likelihood of confusion or misunderstanding about the quality of the CertainTeed Siding and Defendant's intention to honor its warranties with respect to the CertainTeed Siding).

     117.   CertainTeed knew or should have known that its Siding was defective, would fail prematurely, was not suitable for use as an exterior siding product and otherwise was not as warranted and represented by CertainTeed.

     118.   CertainTeed's misrepresentations, concealment, omissions and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiffs and other members of the Class to be deceived about the suitability of the Siding for use as a long-

lasting exterior home building product that would be backed by warranties of up to fifty years, and that those warranties would in fact be honored by Defendant.

119.   CertainTeed intended that Plaintiffs and the Class would rely on their representations and warranties regarding the suitability, durability and exemplary nature of its defective Siding.

120.   CertainTeed's conduct and omissions described herein repeatedly occurred in CertainTeed's trade or business and were capable of deceiving a substantial portion of the consuming public.

121.   The facts concealed or otherwise not disclosed by CertainTeed constitute material facts, in that Plaintiffs and any reasonable consumer would have considered those facts important in deciding whether to purchase the Siding or purchase homes or structures constructed with the Siding.  Had Plaintiffs and the Class known the Siding was defective and would fail prematurely they would not have purchased the Siding, or they would have either negotiated additional warranty coverage, negotiated a lower price to reflect the risk or simply avoided the risk altogether by purchasing different siding.

122.   Alternatively, Plaintiffs seek to recover for CertainTeed's unfair and deceptive acts of consumer fraud under the substantially similar Consumer Fraud and Deceptive Trade Practices Act of the States in which Plaintiffs and members of the Class reside.

123.   Plaintiffs and other members of the Class have been damaged as a proximate result of CertainTeed's violations of Pennsylvania's (and other States') Unfair Trade Practices and Consumer Protection Law(s) and have suffered damages as a direct and proximate result of having purchased defective Siding.

124.    As a direct and proximate result of CertainTeed's violations of the Unfair Trade Practices and Consumer Protection Laws as set forth above, Plaintiffs and the Class have suffered and continue to suffer an ascertainable loss of money and are, therefore, entitled to relief, including damages, plus triple damages, costs and attorney's fees under 73 Pa. C.S.A. § 201-9.2, or the substantially similar Consumer Fraud and Deceptive Trade Practices Acts of the home States of Plaintiffs and the Class.

## COUNT V
## UNJUST ENRICHMENT

125.    Plaintiffs incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

126.    Substantial benefits have been conferred on CertainTeed by Plaintiffs and the Class by purchasing CertainTeed Siding, and CertainTeed has knowingly and willingly accepted and enjoyed these benefits.

127.    CertainTeed either knew or should have known that the payments rendered by Plaintiffs and the Class were given and received with the expectation that the CertainTeed Siding would perform as represented and warranted.    For CertainTeed to retain the benefit of the payments under these circumstances is inequitable.

128.    CertainTeed's acceptance and retention of these benefits under the circumstances make it inequitable for CertainTeed to retain the benefit without payment of the value to the Plaintiffs and the Class.

129.    Plaintiffs and the Class are entitled to recover from CertainTeed all amounts wrongfully collected and improperly retained by CertainTeed, plus interest thereon.

130.    As a direct and proximate result of CertainTeed's wrongful conduct and unjust enrichment, Plaintiffs and the Class are entitled to an accounting, restitution from, and institution

of a constructive trust disgorging all profits, benefits, and other compensation obtained by CertainTeed, plus attorneys' fees, costs and interest thereon.

**COUNT VI**
**DECLARATORY AND INJUNCTIVE RELIEF**

131.    Plaintiffs incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

132.    Plaintiffs on behalf of themselves and members of the Class, seek a Court declaration of the following:

a)     The Siding has defects which cause it to fail and leak, resulting in water damage to property and the necessity of the removal and replacement of the Siding;

b)     The Siding has a defect in workmanship and material that causes failures;

c)     CertainTeed knew of the defects in its Siding and that the limitations contained in its purported limited warranties are unenforceable;

d)     CertainTeed shall re-audit and reassess all prior warranty claims on their Siding, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds; and

e)     CertainTeed shall establish an inspection program and protocol to be communicated to Class members that will require Defendant to inspect, upon request, a Class member's structure to determine whether a Siding failure is manifest.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request that the Court grant the following relief, on behalf of themselves and all others similarly situated:

A.      Enter an Order certifying the proposed Class of plaintiffs (and subclasses, if applicable), appointing Plaintiffs as Class Representatives, and appointing the undersigned counsel as Class Counsel;

B.      Declare that CertainTeed must notify all Class members of the problems with its Siding;

C.      Enter an order enjoining CertainTeed from further deceptive advertising, marketing, distribution and sales practices with respect to its Siding products, and requiring CertainTeed to remove and replace Plaintiffs' and Class members' Siding with a suitable alternative siding of Plaintiffs' and Class members' choosing;

D.      Enter an award to Plaintiffs and the Class that includes compensatory, exemplary or punitive damages as allowed by Pennsylvania law or other law, and statutory damages, including interest thereon, in an amount to be proven at trial;

E.      Declare that CertainTeed must account for and disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of its Siding, or order CertainTeed to make full restitution to Plaintiffs and members of the Class;

F.      Award pre-judgment and post-judgment interest at the maximum rate allowable by law;

G.      Award reasonable attorneys' fees and reimbursement of costs incurred by Plaintiffs and their counsel in connection with this action; and

H.     Award such other and further relief as the Court deems just and proper.


## JURY DEMAND

Plaintiffs, on behalf of themselves and the members of the Class hereby demand trial by

jury on all issues so triable.

Dated: June 19, 2011                           s/ _____

H. Laddie Montague, Jr.
Lawrence Deutsch
Shanon J. Carson
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
(215) 875-4656 - Telephone
(215) 875-4604 - Facsimile

Michael A. McShane
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
(415) 568-2555 - Telephone
(415) 576-1776 – Facsimile

INTERIM CO-LEAD COUNSEL


Arnold Levin
Charles E. Schaffer
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA  19106
(215) 592-1500 - Telephone
(215) 592-4663 – Facsimile

Ellen Meriwether
CAFFERTY FAUCHER LLP
1717 Arch Street, Suite 3610
Philadelphia, PA  19103
(215) 864-2800 - Telephone
(215) 864-2810 - Facsimile

Jennifer W. Sprengel
Christopher B. Sanchez
CAFFERTY FAUCHER LLP
30 North LaSalle Street, Suite 3200
Chicago, IL  60602
(312) 782-4880 - Telephone
(312) 782-4485 – Facsimile

Charles J. LaDuca
Brendan S. Thompson
CUNEO, GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
(202) 789-3960 - Telephone
(202) 789-1813 - Facsimile

Robert K. Shelquist
LOCKRIDGE, GRINDAL, NAUEN, PLLP
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900 - Telephone
(612) 339-0981 - Facsimile

Paul T. Falk
Carl E. Metz, II
FALK METZ, LLC
20 South Clark Street, Suite 1900
Chicago, IL  60603
(312) 922-5800 - Telephone
(312) 922-3990 - Facsimile

Marc I. Gross
POMERANTZ, HAUDEK, BLOCK, GROSSMAN
        & GROSS, LLP
100 Park Avenue
New York, NY  10017
(212) 661-1100 - Telephone
(212) 661-8665 - Facsimile

Patrick V. Dahlstrom
POMERANTZ, HAUDEK, BLOCK, GROSSMAN
        & GROSS, LLP
10 South LaSalle, Suite 3505
Chicago, IL  60603
(312) 377-1181 - Telephone

32

(312) 377-1184 – Facsimile

Clayton D. Halunen
Shawn J. Wanta
HALUNEN & ASSOCIATES
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 605-4098 - Telephone
(612) 605-4099 - Facsimile

Steven A. Schwartz, Esquire
CHIMICLES & TIKELLIS LLP
361 West Lancaster Avenue
One Haverford Centre
Haverford, PA   19041
(610) 645-4720 - Telephone
(610) 649-3633 - Fax

Christopher L. Coffin,
Nicholas R. Rockforte
Patrick W. Pendley
Stan P. Baudin
PENDLEY, BAUDIN & COFFIN, L.L.P.
24110 Eden Street
Post Office Drawer 71
Plaquemine, Louisiana 70765
Telephone: (225) 687-6396
Facsimile: (225) 687-6398
Email: ccoffin@pbclawfirm.com

Mark K. Gray
Matthew L. White
Doris A. Kim
GRAY & WHITE
713 E. Market St.
Louisville, KY.  40202
Telephone: (502) 210-8924
Fax: (502) 618-4059

Craig L. Lowell
Brent L. Crumpton (Of Counsel)
Admitted Pending Pro Hac Vice
WIGGINS, CHILDS, QUINN & PANTAZIS
The Kress Building
301 19th Street North

Birmingham, Alabama 35203
clowell@wcqp.com
blc@crumptonlaw.com

Douglas P. Dehler (S.B.N.1000732)
SHEPHERD, FINKELMAN, MILLER
      & SHAH, LLP
111 East Wisconsin Avenue, Suite 1750
Milwaukee, Wisconsin 53202
Telephone: (414) 226-9900
Facsimile: (414) 226-9905
Email: ddehler@sfmslaw.com

Natalie Finkelman Bennett
SHEPHERD, FINKELMAN, MILLER
      & SHAH, LLP
35 E. State Street
Media, PA 19063
Tel: (610) 891-9880
Fax: (610) 891-8993
Email: nfinkelman@sfmslaw.com

Edward A. Wallace
Amy E. Keller
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, Illinois 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
Email: eaw@wexlerwallace.com
Email: aek@wexlerwallace.com

***Counsel for Plaintiffs***