## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re CertainTeed Fiber Cement Siding Litigation | **MDL Docket No. 2270**<br><br>Case No. 2:11-md-02270-TON |
| This Document Relates to: All Actions | |

## OBJECTION OF SETTLMENT CLASS MEMBER GARY JUELICH TO THE PROPOSED CLASS ACTION SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT THE FINAL APPROVAL HEARING

Settlement Class Member Gary Juelich ("Juelich"), by and through counsel, files this Objection to the proposed settlement in the November 1, 2013 Corrected Agreement of Compromise and Settlement ("Settlement" or "Settlement Agreement") and Notice of Intent to Appear at the Final Approval Hearing, and respectfully states as follows:

### I. JUELICH IS A SETTLEMENT CLASS MEMBER

Juelich is a member of the Settlement Class, as defined by the Court's October 3, 2013 Preliminary Approval Order [D.E. 28]. Juelich had CertainTeed Fiber Cement Siding ("Siding") installed on his home in May of 2008. Juelich and the other Settlement Class Members purchased the Siding with CertainTeed's express 50-Year Warranty ("Warranty"). Juelich first began to notice defects and damage in the Siding in 2010 and has noticed additional defects and damage since then. Based on his Warranty, Juelich contacted CertainTeed and informed it of the problems. In 2011, CertainTeed performed a field inspection of Juelich's home and determined that a substantial portion of the Siding should be replaced due to excessive gapping and cracks.[1] Juelich has not settled his Warranty claim with CertainTeed.

---

[1] See Exhibit 1 – October 25, 2011 Letter from CertainTeed to Juelich.

On or about February 14, 2012, Juelich filed a Class Action Petition against CertainTeed in the Circuit Court of St. Louis County, Missouri, based on the defects in the Siding. CertainTeed removed the case to the United States District Court for the Eastern District of Missouri. Subsequently, the case was transferred to this Court for inclusion in this MDL upon order of the JPML. Juelich's case remains pending in this Court in case number 2:12-cv-01589-TON. Juelich is not one of the named plaintiffs in the Settlement Agreement. Neither Juelich nor his counsel were consulted or advised during any settlement negotiations in this matter. Had Juelich or his counsel been consulted regarding the terms of the proposed Settlement, they would have rejected those terms as not being fair, reasonable and adequate, as set forth more fully herein.

## II.    SUMMARY OF ARGUMENT

The Settlement, in the form before the Court, should not be approved. The Settlement eliminates Settlement Class Members' express 50-Year Warranties for which they have already paid substantial sums. Under the Settlement, they will lose 35 to 50 years of their Warranties which extend out as far as the year 2063. Despite these 50-Year Warranties, the Settlement releases all claims for failure of the Siding that occur after the much shorter 6-Year Claims Submission Period under the Settlement. The Settlement should be reformed to exclude the release of these Warranty claims, or at a minimum, should fully reinstate the balance of the Settlement Class Members' 50-Year Warranties following the 6-Year Claims Submission Period.

Under the Settlement, a Settlement Class Member who makes a claim and replaces his defective Siding with CertainTeed siding will have no further recourse if that replacement siding fails. That Settlement Class Member will not have a further claim under the Settlement or the Warranty. In contrast, the 50-Year Warranty expressly extends the balance of the Warranty to

any replacement siding. In its current form, the Settlement allows CertainTeed to unload the vast majority of its obligations under the express 50-Year Warranties (which would likely include multiple replacements over the 35 to 50 year balance of the Settlement Class Members' Warranties), and instead, perform a one-time replacement that must be done within the much shorter 6-year Claims Submission Period.

The Notice was inadequate in that it failed to properly inform Settlement Class Members that the Settlement will release all of their rights and claims under the express 50-Year Warranties.

The Notice was also inadequate because it did not provide Settlement Class Members with information sufficient for them to determine what benefits they may receive under the Settlement. There are material discrepancies in and between the Settlement Agreement, the Notice, Plaintiffs' Memorandum in Support of Preliminary Approval and CertainTeed's Memorandum in Support of Preliminary Approval, and it appears even the Settling Parties are in disagreement as to what benefits are available to Settlement Class Members under the Settlement. Further, the "Claim Value Estimation Calculator" on the Settlement website is wrought with multiple disclaimers indicating that Settlement Class Members should not rely on it, and further, it is at odds with terms and statements contained in the Notice and Plaintiffs' Memorandum in Support of Preliminary Approval. Further, the Notice fails to inform Settlement Class Members of the size of the Class. In settlements of this nature, with a limited fund, Settlement Class Members are unable to gage the benefits they may receive because they do not know how many potential claims there will be which will diminish the fund.

The Opt-Out procedure is exceedingly burdensome, intrusive and oppressive and violates Settlement Class Members' due process rights. The mandatory Opt-Out procedure, as ordered,

requires Settlement Class Members to provide information which is neither relevant nor necessary to their due process right to opt-out of this litigation. It requires them to conduct an investigation and detailed examination of potentially multiple properties (both commercial and residential) and to provide detailed measurements. It requires them to exercise expertise in order to determine the nature and extent of damage to the Siding and to provide detailed measurements of the scope of that damage – likely requiring the services of an experienced professional siding contractor. The Settlement provides no compensation to Settlement Class Members to undertake these onerous tasks of retaining contractors or having counsel review and execute the Opt-Out Form. Moreover, Settlement Class Members were ordered to ascertain, compile and properly submit all of this information within a short period of time during the winter holiday season with the deadline ending on New Year's Eve.

For these reasons, the Settlement, in its current form, should not be approved.

## ARGUMENT

**III. THE SETTLEMENT ELIMINATES THE EXPRESS 50-YEAR WARRANTY FOR WHICH CLASS MEMBERS ALREADY PAID SUBSTANTIAL SUMS, CAUSING SETTLEMENT CLASS MEMBERS TO BE STRIPPED OF 35 TO 50 YEARS OF THEIR WARRANTIES**

### A. The Express 50-Year Limited Warranty on the Siding

Since CertainTeed introduced the Siding in 1999, it has widely advertised that its Siding carries an express 50-Year Limited Warranty. As Plaintiffs alleged, "[t]his express warranty became the primary basis of the bargain between CertainTeed and Plaintiffs and the Class when they purchased the Siding for installation on their homes and structures." Second Amended Consol. Cmplt. [D.E. 13], ¶ 94. Building professionals and consumers appropriately and

reasonably interpret CertainTeed's warranty and representations to mean that the product is expected to have a usable life of 50 years. CertainTeed's express 50-Year Limited Warranty is attached hereto as Exhibit 2. The Warranty provides, in relevant part:

> CertainTeed warrants to the original property owner/consumer that, when subject to normal and proper handling and use, and proper installation, its WeatherBoards FiberCement Siding primed with FiberTect will be free from manufacturing defects during the 50-year period following its date of installation. Subject to the *Warranty Proration Schedule* on the back of this warranty, CertainTeed will pay to repair or replace, at its option, any Weatherboards FiberCement Siding CertainTeed determines to be defective under the terms of this limited warranty. CertainTeed also reserves the right to refund the amount paid by the original property owner/consumer for the WeatherBoards FiberCement Siding (prorated as indicated in the *Warranty Proration Schedule*).

*See* Exhibit 2. The Warranty Proration Schedule contained in the Warranty is:

> 0-2 years 100%
> 3-50 years 2% reduction each year of purchase price of FiberCement Siding since date of original installation

*Id.* Further, the Warranty is transferable by the original property owner/consumer to the first subsequent property owner. *Id.*

As part of the Warranty, CertainTeed also provides a two-year coverage called "SureStart Protection." SureStart Protection provides in relevant part:

> [u]nder this warranty feature, CertainTeed will pay to repair or replace, at its option, any WeatherBoards FiberCement Siding CertainTeed determines to be defective during the two-year SureStart period . . . CertainTeed's maximum liability under SureStart Protection will be equal to the reasonable cost to replace or repair the defective material at current value, including labor in connection with removal, repair or installation of either the original or replacement WeatherBoards FiberCement Siding . . .

*Id.*

B.    **The Settlement Agreement Releases All Claims of All Settlement Class Members Under the Express 50-Year Warranty**

While the proposed Settlement does not compensate Settlement Class Members for any claims for Siding failure that occurs after the 6-year Claims Submission Period, the proposed Settlement, as written, nevertheless releases these claims, including all claims under the express 50-Year Warranties. The release in the Settlement provides, in relevant part:

14.    **RELEASE**

14.1    Upon the Court's entry of the Final Approval Order, all Settlement Class Members who have not properly and timely opted out of the Settlement Class pursuant to the terms of this Agreement shall be conclusively deemed to have *released and forever discharged* (as by an instrument under seal without further act by any person, and upon good and sufficient consideration), on behalf of themselves and their agents (including homeowners' and condominium associations), heirs, executors and administrators, successors, attorneys, representatives, and assigns, the Released Persons from each and every claim of liability, including relief under federal law or the law of any state, *which arises out of the purchase, installation, and/or use of the Siding during the Class Period*, including without limitation all claims or liability on account of or related to damage to, malfunction of, or failure of performance of the Siding which were alleged or could have been alleged in the complaints in this Litigation. Such release will not release the Released Persons from: (a) any obligation that CertainTeed has assumed under this Agreement; (b) any claims which do not arise from damage to, malfunction of, or failure of performance of the Siding; (c) any claim for damage to the back side of the wall plywood, structural sheathing or OSB, towards to the interior of the property; (d) any claim for bodily injury, including claims for pain and suffering, emotional distress, mental anguish, or similar damages suffered as the result of such bodily injury; and (e) obligations incurred by CertainTeed in settlements it has made with Settlement Class Members prior to the Effective Date. The Releasing Parties expressly release all claims for penalties, consequential damages, punitive damages, exemplary damages, statutory damages, special damages, damages based upon a multiplication of compensatory damages, court costs, or attorneys' fees or expenses, which might otherwise have been made in connection with any claim relating to damage to the Siding itself.

14.2    This release includes all claims that the Settlement Class Members have *or may hereafter discover* including, without limitation, claims, injuries, damages, or facts in addition to or different from those now known or believed to be true with respect to any matter disposed of by this Agreement. By this Agreement, the *Settlement Class Members have fully, finally and forever settled*

*and released any and all such claims, injuries, damages, or facts whether known or unknown, suspected or unsuspected, contingent or non-contingent, past or future, whether or not concealed or hidden, which exist, could exist in the future, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, without regard to the subsequent discovery or existence of different or additional facts.* The Settlement Class Members shall be deemed by the operation of the Final Approval Order to have acknowledged that the foregoing waiver was separately bargained for and a key element of the settlement of which the releases herein are a part. *The Settlement Class Members expressly and intentionally waive any and all rights and benefits which they now have or in the future may have related to matters arising from or in any way related to, connected with, or resulting from damage to, malfunction of, or failure of performance of the Siding.*

Settlement Agreement, pp. 30-32 (emphasis added).

As demonstrated above, the release language in the Settlement contains no carve-out for any claims under the Express 50-Year Limited Warranty — even claims that arise after the 6-year Claims Submission Period. The Settlement further provides:

15.2    This Agreement shall be the sole and exclusive remedy for any and all claims of Settlement Class Members against CertainTeed arising from alleged damage to, malfunction of, or failure of performance of the Siding, and upon entry of the Final Judgment by the Court, each Settlement Class Member who has not opted out of the Class shall be barred from initiating, asserting, or prosecuting any such claims against CertainTeed.

Settlement Agreement, p. 34.

Based on the foregoing, the Settlement Agreement, in its current form, releases the claims under the express 50-Year Warranty.

## C.    Elimination of the Settlement Class Members' Rights under the Express 50-Year Warranty for which Settlement Class Members have already paid Substantial Sums is not Fair, Reasonable or Adequate

Unlike most class action settlements that provide class members with benefits *in addition to* those already possessed by class members, this Settlement provides certain limited benefits but *takes away* substantial benefits from Settlement Class Members – benefits for which

Settlement Class Members have already paid substantial sums. Absent the Settlement, the oldest of the Settlement Class Members' Warranties would provide benefits through 2049 and the newest of those Warranties would provide benefits through 2063.[2] However, the Settlement eliminates the Warranty and completely releases all claims of all Settlement Class Members under the Warranty — even if the failure of the Siding occurs outside of the 6-year Claims Submission Period proposed in the Settlement.[3] Settlement Class Members will no longer be able to make any claims under the express 50-Year Warranty for which they paid substantial sums as part of the purchase price of the Siding. Instead, they will only be able to file claims during the 6-Year Claims Submission Period proposed in the Settlement.

Under the Settlement, Settlement Class Members who purchased the siding on September 30, 2013 and therefore have Warranties extending benefits out to 2063, will lose all fifty (50) years of their Warranties. Likewise, Settlement Class Members who purchased the Siding in 1999, when it was first introduced to the market, will lose thirty-five (35) years of their Warranties. Juelich purchased the Siding in 2008. Therefore, Juelich's express 50-Year Warranty provides benefits through the year 2058. Under the Settlement, however, Juelich's Warranty will be eviscerated and replaced with a much shorter 6-year Claims Submission Period which involves a claims process more onerous than the Warranty claims process. The Settlement takes away forty-four (44) years of Juelich's Warranty.

What happens when the Siding fails after the 6-year Claims Submission Period proposed in the Settlement? The answer is that Juelich, like all other Settlement Class Members, will be

---

[2] The Settlement defines the "Class Period" as "the time period from January 1, 1999 through September 30, 2012." Settlement Agreement, ¶ 1.1.l.

[3] Only the 2-Year SureStart portion of the Warranty would remain intact, but only if the Settlement Class Member's claim is made within two years of the installation date of the Siding. Settlement Agreement, ¶¶ 4.6, 5.4.

barred from pursuing any claims, including Warranty claims, against CertainTeed. They will have no remedy, despite having paid substantial sums for a product with the Warranty they expected to last 50 years. Their claims will be forever released without compensation for any failure of the Siding occurring after the 6-year Claims Submission Period proposed in the Settlement. This is not a fair, reasonable and adequate resolution to the litigation.

### D.   The Proposed Settlement Should be Rejected and Amended to Exclude Release of the Settlement Class Members' Express 50-Year Warranties

The proposed Settlement, in its current form, should be rejected. Alternatively, it should be amended to exclude the release of Settlement Class Members' rights under their 50-Year Warranties. Settlement Class Members paid valuable consideration for those warranties as part of the purchase price of the Siding and have a right to rely on them. The Settlement, in its current form, will strip away 35 to 50 years of those Warranties. If the Settling Parties are unwilling to completely exclude a release of claims under those Warranties, then at a minimum, the Settlement should be reformed to fully reinstate the balance of those Warranties following the 6-Year Claims Submission Period.

## IV.   ONCE THE SIDING IS REPLACED UNDER THE SETTLEMENT AGREEMENT, SETTLEMENT CLASS MEMBERS HAVE NO FURTHER RECOURSE IF THE REPLACEMENT SIDING LATER FAILS

Under the Settlement, a Settlement Class Member who makes a claim and replaces his defective Siding with CertainTeed siding will have no further recourse if that replacement siding fails. The Notice provides:

> The Settlement allows a class member to make more than one claim during the claims period, however, a Claimant cannot collect twice for the same wall section for which they previously received compensation.

Exhibit 3 – Long Form Notice, ¶ 10. The following example is set forth in the Notice:

9

> The average cost of installing fiber cement siding to a home in the United States is approximately $500 per square (a "square" is 100 square feet of siding). Since the average home requires about 28 squares, the cost to re-side an average home is about $14,000. An example of a recovery for a Class Member would be as follows: If two out of the four sides of an average size home built in 2006 had Qualifying Damage in excess of 5%, and each of the sides was of equal size, then one-half of the 28 squares, or 14 squares would need to be replaced.

*Id.* Under this example, a Settlement Class Member would make a claim under the Settlement in order replace two of the four sides of his home with new siding. For many reasons, it would be unreasonable to assume that persons would want mismatched siding on their homes. Indeed, this issue has been the subject of litigation throughout the country. *See, e.g., Pellegrino v. State Farm Fire and Cas. Co.,* 2013 WL 3878591, 7  (E.D. Pa. 2013) ("[W]e recognize that those courts that have found that matching may be necessary, have expressed concern that a plaintiff may not be made whole if the repaired or replaced portions of the insured's property do not match the undamaged portions. *See Collins,* 2009 WL 4729901, at *6 (relying on testimony that failure to match would result in a different appearance and not place the plaintiffs in the position they were in prior to the loss in denying summary judgment). In such circumstances, an insured's property could potentially be worth less than before the covered loss."). Further, the Settlement Agreement's compensation formula is based on the cost of CertainTeed's Siding. Settlement Agreement, ¶ 7.2. Therefore, in order to maintain aesthetic uniformity and prevent a checkerboard or mismatched appearance of his home due to mismatched siding, the Settlement Class Member would replace the Siding with the same CertainTeed siding covering the remainder of his home. Under the Settlement, however, if that replacement siding subsequently failed, the Settlement Class Member would have no further recourse. As set forth in the Notice, he would not be able to "collect twice for the same wall section for which he previously received compensation." *Id.* So, under the Settlement, if he replaced the Siding in year 2 of the 6-Year

Claims Submission Period and in year 5, that replacement siding failed, he would not be able to make another claim for it under the Settlement.

That Settlement Class Member would also have no other claim against CertainTeed. Because this siding was replaced as a result of the Settlement, and therefore arises from, is in any way related to, connected with, or resulting from damage to, malfunction of, or failure of performance of his original Siding which was the subject of his Settlement claim, the Settlement releases all other claims the Settlement Class Member may have relating to the replacement siding. As the Settlement provides:

> The Settlement Class Members expressly and intentionally waive *any and all rights and benefits* which they now have *or in the future may have related to matters* arising from or in any way related to, connected with, or resulting from damage to, malfunction of, or failure of performance of the Siding.

Settlement Agreement, p. 32 (emphasis added). As set forth in Section III. B., above, that would include a release of any Warranty claim for the replacement siding.

In sharp contrast, however, the express 50-Year Warranty contains no such exclusions. In fact, the Warranty expressly extends coverage to the replacement siding, stating:

> In the event of repair or replacement under the terms of this warranty, the original warranty will apply to the replacement or repaired material and will extend for the balance of the warranty period in effect at the time the WeatherBoards FiberCement Siding is determined to be defective.

Exhibit 2 – Warranty.

In its current form, the Settlement allows CertainTeed to unload the vast majority of its obligations under the express 50-Year Warranties (which would likely include multiple replacements over the 35 to 50 year balance of the Settlement Class Members' Warranties), and instead, perform a one-time replacement that must be done within the much shorter 6-year Claims Submission Period. In essence, it is a "one-and-done" proposition for CertainTeed.

11

Good for CertainTeed. Bad for the Settlement Class.

The Settlement, in its current form, should be rejected. Alternatively, it should be, along with the other changes indicated by this Objection, reformed to extend the balance of Settlement Class Members' express 50-Year Warranties to all siding replaced as a result of the Settlement and to exclude any release of such Warranty claims on the replacement siding.

## V.   THE NOTICE WAS INADEQUATE IN THAT IT FAILED TO ADEQUATELY INFORM SETTLEMENT CLASS MEMBERS THAT THE SETTLEMENT ELIMINATES THEIR EXPRESS 50-YEAR WARRANTIES

The essence of this Settlement is that Settlement Class Members are giving up their express 50-Year Warranties in exchange for a much shorter 6-Year Claims Submission Period under the terms of the claims process in the Settlement. It would have been a simple task to clearly inform Settlement Class Members that, by staying in the Settlement, they are forever giving up all rights under their express 50-Year Warranties – Warranties for which they have already paid substantial sums and have a right to rely on.   However, this was not done. The Notice does not adequately inform Settlement Class Members that their express 50-Year Warranties will be eliminated by the Settlement.   Exhibit 3 – Long Form Notice.   Further, nothing in the Settlement Website, including the "Frequently Asked Questions" section, explains this to Settlement Class Members. [4]

In fact, the only mention of a "release" in the Notice is contained in paragraph 26 under the heading "If You Do Nothing," which states:

IF YOU DO NOTHING

26. What happens if I do nothing at all?

---

[4] *See* http://www.certainteedfibercementsettlement.com/hc/en-us/sections/200130996-Frequently-Asked-Questions (Last visited 12/30/13).

If you have the Siding on your building, all decisions made by the Court in this lawsuit or about the settlement will apply to you. If the Court approves the settlement, you will have released CertainTeed from any further claims against it about the issues settled in this lawsuit, and you can't ever sue CertainTeed again about these issues. This is true even if you do not send in a Claim Form for a remedy.

However, you will retain the right to make a claim under the Agreement until six years after the Effective Date. (There is a shorter deadline if you sold the building. See Question 12).

Exhibit 3 – Long Form Notice, ¶ 26.

Informing Settlement Class Members under the heading "If You Do Nothing," that they "can't ever **sue** CertainTeed again" about the issues settled in this lawsuit does not adequately inform them they are forever releasing all their rights under their express 50-Year Warranties. First, there is no valid reason to include this provision solely under the heading "If You Do Nothing." The release would be triggered by all actions taken by Settlement Class Member other than opting out. Second, "sue" does not mean "submit a warranty claim" and it is not reasonable to assume Settlement Class Members would conflate those two actions. This reinforces the natural conclusion that most Settlement Class Members would understand they continue to have the ability to submit a warranty claim for the duration of their express 50-Year Warranties for which they have already paid substantial sums and have a right to rely on. Further, the term "warranty" is not used in any of the release language in the Settlement Agreement. *See* Settlement Agreement, pp. 30-34. Settlement Class Members should not be required to retain counsel for the purpose of interpreting such language to determine if their Warranty claims are being released. Due process considerations also counsel against binding absent potential class members to understandings that were not made express in the class notice or settlement agreement. *See, e.g., In re Diet Drugs (Phentermine/ Fenfluramine /Dexfenfluramine) Products Liability Litigation,* 369 F.3d 293 (3rd Cir. 2004).

Here, neither the Notice nor the Settlement Agreement expressly informed Settlement Class Members that the Settlement would release their express 50-Year Warranties and strip them of their rights under those Warranties — rights for which they have already paid substantial sums. Because the Notice did not properly inform Settlement Class Members of this release, they were not afforded due process. On this basis, the Settlement should not be approved in its current form. Alternatively, the Settlement should be reformed to exclude the release of claims under the 50-Year Warranties.

## VI. THE NOTICE IS INADEQUATE BECAUSE IT DOES NOT SET FORTH INFORMATION WHICH ALLOWS SETTLEMENT CLASS MEMBERS TO DETERMINE WHAT BENEFITS THEY MAY RECEIVE UNDER THE SETTLEMENT

### A. There are Material Discrepancies Between the Terms of the Settlement Agreement and the Notice Regarding Available Benefits Under the Settlement, and further, there are Discrepancies Between the Settling Parties' Apparent Interpretations of the Benefits Available Under the Settlement

Based on material discrepancies in and between the Settlement Agreement, the Notice, Plaintiffs' Memorandum in Support of Preliminary Approval and CertainTeed's Memorandum in Support of Preliminary Approval, it appears even the Settling Parties are at disagreement as to what benefits are available to Settlement Class Members under the Settlement. Below is a comparison of the differing terms and interpretations contained in these documents: [5]

#### i. The Settlement Agreement

The Settlement Agreement provides:

---

[5] Using the example set forth in the Notice, the scenarios discussed in this section will assume the Siding was installed in 2006; the average replacement cost for a square of Siding is $500; and that 14 squares of Siding are being replaced.

> In order to ensure that the settlement fund is not depleted during the claims period, the Claimant will receive an initial payment in the amount of 50% of their claim. At the end of the claims period, the Claimant *will receive* a second payment, and depending on the claims rate *may* receive the full value of their claim *with a reduction for usage*.

Settlement Agreement, ¶ 7.3 (emphasis added).

Under this provision, the Claimant would receive an initial payment of $1,820 (14 squares X $500 per square = $7,000) ($7,000 X .52 reduction for usage = $3,640) ($3,640 X .50 first payment = $1,820). Further, the Claimant will receive a second payment *up to* the "full value" of his claim "*with* a reduction for usage." The Settlement Agreement is not clear whether the "reduction for usage" for the second payment will be calculated based on the date of his original claim or at the time the second payment is made (*i.e.,* at the end of the 6-Year Claims Submission Period). Assuming it is calculated based on the date of his original claim, the maximum amount of the Claimant's second payment would be $1,820 since it is "*with* a reduction for usage." Therefore, the Claimant's total maximum benefit under the Settlement would be *up to* $3,620.

### ii. The Long Form Notice

Contrary to the Settlement Agreement, the Long Form Notice provides in relevant part:

> According to the schedule set forth above, which reflects both a reduction for the number of years of service the homeowner received from the Siding, and the compromises inherent in the Settlement process, the claim would be valued at $3,640 ((14 squares x $500/square) multiplied by .52).The *Claimant could receive more than this amount* if there are excess funds at the end of the claims period. In fact, *the maximum amount payable could ultimately be the full value of the claim without an adjustment*, depending upon the claims rate. In order to help you decide if this settlement is right for you, you can also contact your local contractor, most of whom will give you a free estimate of the cost to replace your siding.
>
> In order to ensure that all Claimants are treated equally during the six year claims period, all claims will be paid on a two-payment schedule. The first payment will

be in the amount of 50% of the claim value (in the above example that would be $1,820) as soon as the claim is administered. *The second payment would be made at the end of the claims period,* unless Class Counsel seeks approval from the Court to accelerate payments based on the claims rate.

Under this provision, the Claimant would receive an initial payment of $1,820 (14 squares X $500 per square = $7,000) ($7,000 X .52 reduction for usage = $3,640) ($3,640 X .50 first payment = $1,820). Here, however, the Long Form Notice provides the Claimant could receive *more* than this formula amount if there are excess funds at the end of the claims period, and that the maximum amount payable could ultimately be the full value of the claim *without* an adjustment, depending upon the claims rate. The full value of the Claimant's claim (*without* an adjustment for usage) would be $7,000. Under the provisions of this Notice, the Claimant's total maximum benefit under the Settlement would be *up to* $7,000. This is nearly double the amount that the Settlement Agreement provides. Therefore, a material discrepancy exists between the terms of the Settlement Agreement and the Notice that was disseminated to the Settlement Class.

Further, nowhere in the Settlement Agreement does it provide that Claimants can receive *more* than the amount set forth in the formula in the Settlement Agreement ((# of squares x Price per square) multiplied by percentage reduction for usage). Nowhere in the Settlement Agreement does it provide greater payments to Claimants if "there are excess funds at the end of the claims period." In fact, the only provision in the Settlement Agreement that arguably addresses "excess funds" is paragraph 4.5 which provides in part that "unexpended funds shall be returned to CertainTeed." These provisions in the Notice create further material discrepancies between the terms of the Settlement Agreement and the Notice that was disseminated to the Settlement Class.

### iii.     Plaintiffs' Memorandum in Support of Preliminary Approval

As set forth below, with regard to these material discrepancies, Plaintiffs' Memorandum in Support of Preliminary Approval tracks the language of the Long Form Notice, but also materially deviates from the terms of the Settlement Agreement.

> An example of a recovery for a Settlement Class Member would be as follows: if two out of the four sides of an average size home built in 2006 had qualifying damage in excess of 5%, and each of the sides was of equal size, then one-half of the 28 squares, or 14 squares would need to be replaced. According to the proration schedule in the Settlement Agreement, which reflects both a reduction for the number of years of service the homeowner received from the Siding, and the compromises inherent in the Settlement process, the claim would be valued at 52% of RS Means, which equals $3,640 ((14 squares x $500/square) x .52). Moreover, the *Claimant could receive more than this amount* if there are excess funds at the end of the claims period. In fact, *the maximum amount payable could ultimately be the full value of the claim <u>without</u> adjustment*.
> In order to ensure that Claimants in year one are not treated differently from those who make claims in year six, *all claims will be paid on a two-payment schedule*. The first payment will be in the amount of 50% of the claim value (in the above example that would be $1,820) as soon as the claim is administered. *The second payment will be made at the end of the claims period*, unless Class Counsel seeks approval from the Court to accelerate payments based on the claims rate.

Pltf. Mem. In Support of Preliminary Approval [D.E. 25-1], p. 8 (emphasis added). Again, under the Plaintiffs' apparent understanding of the Settlement Agreement, the Claimant's total maximum benefit under the Settlement would be *up to* $7,000  because it may be  *without* adjustment.  Again, this is nearly double the amount that the Settlement Agreement provides. Plaintiffs also state that Claimants could receive more than the compensation formula in the Settlement Agreement provides if there are excess funds at the end of the claims period. However, Plaintiffs cite to no provisions in the Settlement Agreement that provide for any such relief to the Settlement Class Members.

### iv.    CertainTeed's Memorandum in Support of Preliminary Approval

CertainTeed adds to the material discrepancies.   In its Memorandum in Support of Preliminary Approval, it asserts that there is only *potentially* a second payment at the conclusion of the Claims Submission Period, stating:

> Claimants will receive an initial payment of 50% of the value of their claim, and *potentially a second payment* at the conclusion of the Claims Submission Period.

CertainTeed Mem. In Support of Preliminary Approval [D.E. 26], p. 5 (emphasis added).  This is at odds with the Settlement Agreement which provides certainty that "the Claimant *will receive* a second payment..."   Further, it is at odds with the Notice which provides certainty that "[t]he second payment *would be made* at the end of the claims period. . ."  Finally, it is at odds with Plaintiffs' Memorandum in Support of Preliminary Approval which provides certainty that "[t]he second payment *would be made* at the end of the claims period. . ."    Therefore, under CertainTeed's apparent understanding of the Settlement Agreement, there is no guarantee that Settlement Class Members will receive any second payment at the end of the Claims Submission Period.   Under this scenario, the Claimant's benefit under the Settlement Agreement may be limited to the initial $1,820 payment   —   not the $3,640 provided under the Settlement Agreement — and not the $7,000 provided under the Notice and under Plaintiffs' Memorandum in Support of Preliminary Approval.  This is another material discrepancy.

These material variations, interpretations and discrepancies frustrate Settlement Class Members' abilities to determine what benefits they may receive under the Settlement.  As a result, Settlement Class Members will be unable to make an informed decision to accept or reject the Settlement.

**B.** **The "Claim Value Estimation Calculator" Does Not Aid Settlement Class Members in Determining the Benefits they May Receive Under the Settlement**

The Settlement website (www.certainteedfibercementsettlement.com) contains a "Claim Value Estimation Calculator." In order to use the calculator, Settlement Class Members must first agree to its terms and conditions, which provide:

USE OF WEBSITE CALCULATOR

This web-based calculator provides only a ***rough and preliminary estimate of possible payments*** from the settlement. The calculator is based on costs as of the date the Court preliminarily approved the settlement, in October, 2013. Those costs will be updated when the settlement becomes final and ***may increase, decrease, or remain the same*** when the settlement is finalized. The actual payments will be determined by the claim administrator, and ***will be based on additional factors and costs that this courtesy calculator does not analyze or estimate***. The actual payments will be based on a number of factors, including (1) the extent of the Qualifying Damage, (2) the proportion of the wall with Qualifying Damage, (3) the size of the wall, (4) the length of time the Siding has been installed, (5) the actual construction of the building, and (6) the individual characteristics related to the tear off, replacement, and painting necessary to remediate the damaged siding which qualifies for payment. The claim administrator will consider information submitted on claim forms and information developed during the claim administration process to determine the amounts of payments. Accordingly, ***the claim administrator is not bound by the results of this calculator***. The volume of claims submitted may also affect the amounts of payments either up or down. In addition, the amounts may be paid in multiple payments over the length of the claims period to ensure that class members making early claims are not treated differently than class members making claims throughout the class period or the end of the class period.

☐ I agree with all applicable terms and conditions

*See* Exhibit 4 – Printout from Settlement website (emphasis added). As the above terms and conditions make clear, this is hardly a bastion of certainty for Settlement Class Members. It is not reasonable to require a Settlement Class Member to rely on such vagaries when making an important decision to accept or reject the Settlement. Further, the calculator includes a reduction

for usage (termed "Siding age deduction") in its calculation. *See* Exhibit 5 – Printout of sample calculation from Claim Value Estimation Calculator. Again, this is at odds with the Notice and Plaintiffs' Memorandum in Support of Preliminary Approval, both of which provide the "maximum amount payable could ultimately be the full value of the claim *without* an adjustment. . ."

## C. Settlement Class Members Will Also Have Great Difficulty Determining Whether to Accept or Reject The Settlement Because The Notice Did Not Inform the Settlement Class of the Size of the Settlement Class

Coupled with the discrepancies in and between the Settlement Agreement, the Notice, Plaintiffs' Memorandum in Support of Preliminary Approval and CertainTeed's Memorandum in Support of Preliminary Approval, and the vagaries of the Claim Value Estimation Calculator, discussed above, Settlement Class Members will further have a difficult time assessing potential benefits under the Settlement because the Notice does not inform them of the number of Settlement Class Members in the Settlement Class. There is a finite Settlement Fund of $103.9 million. If the requested payments for attorneys' fees and costs, costs of notice and administration, and incentive awards are deducted from the Settlement Fund, the Settlement Fund will be reduced to approximately $82.9 million.

The Class Period covers over 14 years and the Settlement Class is a nationwide class. If there are 10,000 Settlement Class Members, the average amount available to each would be approximately $8,290. If there are 100,000 Settlement Class Members, the average amount available to each would be approximately $829. If there are 200,000 Settlement Class Members, the average amount available to each would be approximately $414. If there are 300,000 Settlement Class Members, the average amount available to each would be approximately $276.

Obviously, the amount each individual Settlement Class Member's claim would depend on their particular circumstances and could be higher or lower than the averages. The problem is that the Notice did not provide Settlement Class Members with the number of Settlement Class Members or even an estimate of the number, and therefore, Settlement Class Members are unable to gage the potential benefits they may receive under the Settlement. If the number of claims under the Settlement is sufficiently large, it would certainly negate the Settlement Agreement's formula using a nationwide average of $500 per square to replace the Siding. Further, it would render the Claim Value Estimation Calculator a complete nullity.

These issues affect the Settlement Class Members' ability to make informed decisions of whether to stay in the Settlement, opt-out, or object. If the number of claims is sufficiently high, a Settlement Class Member with a current claim may receive more benefits under the Warranty than under the Settlement. In that case, it may be more prudent to opt-out. Unfortunately, the Notice does not provide the Settlement Class with sufficient information to make informed decisions.

This issue has been previously addressed by this Court:

> One revision is needed to give putative class members sufficient information to make a reasonable decision to opt-out of the class. The notice currently does not inform its readers that the number of potential class members may be as high as 52,000 individuals. Such information is necessary for a putative class member to weigh the pros and cons of accepting the settlement or choosing to opt out of the class. Consequently, this court requires that the following language be included in Section II of the notification announcement: "it is estimated that the number of class members may be as high as 52,000 members."
>
> *   *   *
>
> Because the settlement class is approximately 45,000 to 52,000 individuals, each class member will receive a pro-rata share from the settlement fund after payment is made for notification and a determination of attorneys' fees is established. In the event that all of the potential class members file claims under this agreement, the pro-rata share could be quite small. The class members are entitled to such

21

information in order to evaluate whether to accept or reject this settlement agreement.

*Fry v. Hayt, Hayt & Landau,* 198 F.R.D. 461, 475 (E.D. Pa. 2000). *See also, e.g., In re Baby Products Antitrust Litigation,* 708 F.3d 163, 180 (3rd Cir. 2013) ("Generally speaking, the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class.").

Because of the inadequacies in the Notice and the insufficient information provided to Settlement Class Members, as described herein, the Settlement should not be approved in its current form.

## VII.   THE OPT-OUT PROCEDURE IS EXCEEDINGLY BURDENSOME, INTRUSIVE AND OPPRESSIVE AND VIOLATES SETTLEMENT CLASS MEMBERS' DUE PROCESS RIGHTS

The process for requesting exclusion from the Settlement Class is exceedingly burdensome, intrusive and oppressive. The Opt-Out Form requires Settlement Class Members to, *inter alia*:

- Calculate the total square feet of each structure to be excluded;
- Provide the total stories of each structure to be excluded;
- Calculate the total square feet of Siding installed on each structure to be excluded; and
- Determine the Siding damaged and calculate the total square feet of the Siding damaged for each structure to be excluded.

*See* Exhibit 6 – Opt-Out Form.   The Preliminary Approval Order provides in relevant part: "To exercise this exclusion right, the Settlement Class Member ***must send a completed Opt-Out Form*** (attached as Exhibit 6 to the Settlement Agreement). . . . Any Settlement Class Member who does not properly and timely request exclusion shall be included in the Settlement Class and

shall be bound by any judgment entered in this Action." *See* Preliminary Approval Order [D.E. 28], ¶ 9 (emphasis added).   Likewise, both the Long Form Notice and the Settlement Website state in relevant part: "To exclude yourself, you must send a timely and *complete Opt-Out Form* via first class mail to Class Counsel. . . . *If you do not follow these instructions properly, you will lose your right to exclude yourself. There are no exceptions*." *See* Exhibit 3 – Long Form Notice (emphasis added); Exhibit 7 – Printout from Settlement Website.   The Settlement Agreement also provides in relevant part:  "A Settlement Class Member may opt out of the Settlement Class.   To exercise this exclusion right, the Settlement Class Member *must fully complete the Opt-Out Form* and send it via first class mail or personal delivery to Lead Counsel." Settlement Agreement, ¶ 11.1 (emphasis added).

As evidenced above, Settlement Class Members were ordered to fully complete the Opt-Out Form and submit it properly in order to be excluded from the Settlement Class.  They are instructed that if they do not do so, they will lose their right to be excluded and will be bound by the judgment.  As they were instructed, "[t]here are no exceptions."   Exhibit 3 – Long Form Notice.

The information that is required in order to complete the Opt-Out Form as ordered is information that presents an enormous affirmative burden on Settlement Class Members and is unnecessary for a Settlement Class Member who simply requests to be excluded from this litigation. It requires the Settlement Class Member to conduct an investigation and detailed examination of potentially multiple properties and provide detailed measurements.  It requires the Settlement Class Member to exercise expertise in order to determine the nature and extent of damage to the Siding and to provide detailed measurements of the scope of that damage.  By the Settling Parties' own admission, this would likely require a Settlement Class Member to retain a

"bona fide contractor to assist with necessary measurements or product identification." Settlement Agreement, ¶ 6.9. It further requires the Settlement Class Member to make a statement as to the extent of any damage. Such statements may later hinder that Settlement Class Member's potential claims against CertainTeed. It also requires Settlement Class Members to disclose whether they have entered into a written or oral agreement to be represented by counsel and, if so, it orders the exclusion request shall also be signed by the attorney who represents the Settlement Class Member. The Settlement provides no compensation to Settlement Class Members to undertake these onerous tasks of retaining contractors or having counsel review and execute the Opt-Out Form. Finally, Settlement Class Members were ordered to ascertain, compile and properly submit all of this information within a short period of time during the winter holiday season with the deadline ending on New Year's Eve.

There is no valid reason to require Settlement Class Members to undertake such onerous affirmative duties that would likely be beyond many Settlement Class Members' individual capabilities. The detailed information that Settlement Class Members were ordered to ascertain, compile and disclose is unnecessary to their exclusion request, is overly burdensome, and overly intrusive to a Settlement Class Member who simply wishes to opt-out of the Settlement and preserve their rights.

In denying preliminary approval to a class settlement, the court in *De Leon v. Bank of America, N.A. (USA)*, 2012 WL 2568142 (M.D. Fla. 2012), discussed such onerous opt-out procedures:

> As noted above, "due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." *Phillips Petroleum Co.*, 472 U.S. at 812. Rule 23 does not contain any specific

requirements for absent class members to exercise the right to opt out of a class settlement. Mailing a simple written request to be excluded from the class to a designated address should suffice.

But the Settlement Agreement requires far more than a simple written request for an absent class member to opt out. A class member who desires to opt out must not only (1) compose a letter that conforms precisely to the specific requirements of the Settlement Agreement, (2) mail it the proper address and (3) submit it within the required time; he, she or it must also advise "any and all joint account holders" that they will be excluded from the class and affirm that this was done in the letter, as provided in subsection 6(b) of the Settlement Agreement:

> Exclusion requests must: (i) include the full name, current mailing address and email address (if any) of the Person(s) requesting exclusion; (ii) be personally signed by the member of the Settlement Class who seeks to opt out; (iii) list the account number(s) for the credit card account on which a late fee or other charges were assessed in connection with Qualifying Payments; and (iv) include the following statement: "I/we request to be excluded from the class settlement in DeLeon et al v. Bank of America, N.A. (USA) a/k/a FIA Card Services, N.A., Case No. 6:09–cv–JA–KRS." In addition, if there are joint account holders for any of the account(s) included in respect of subsection 6(b)(iii) above, the exclusion request must also include an affirmation that the Person requesting exclusion has advised any and all joint account holders that they will be excluded from the settlement class as a result of the request for exclusion. No request for exclusion will be valid unless all of the information described above is included. No member of the Settlement Class may opt out through an actual or purported agent or attorney. No opt out request may be made on behalf of a group of persons. Settlement Class Counsel, the Settlement Administrator, and Defendant shall use such opt-out information only for the purposes of determining and/or establishing whether a Person has timely and properly opted out of the Settlement Class.

The parties do not discuss in their Memorandum why such a detailed request for exclusion is necessary. Defendant has access to BAC's databases that contain the account numbers on which late payment fees were assessed, from which it should be able to identify an individual or entity that wishes to opt-out by information

readily available to the class member, such as name, address and social security or tax identification number. On the other hand, an absent class member who desires to be excluded may not have access to old records showing the account number on which a late payment or other fee was assessed between April 1, 2005 and October 19, 2006. Even if the absent class member retained old account statements, he, she or it has little incentive to scour them to find the required information. Further, the affirmative obligation to contact joint account holders— who may be deceased or divorced spouses, deceased or estranged relatives, or adult children who no longer reside with the absent class member requesting exclusion—is an extraordinary imposition on an absent class member that could dissuade an absent class member from exercising his, her or its right to opt out.

Faced with satisfying all of the burdensome requirements that the Settlement Agreement imposes to opt out, an absent class member more than likely will do nothing. The inevitable result of imposing these requirements is that absent class members who do not opt out of the class will be bound by the class judgment and forfeit potentially valuable rights by virtue of the release and waiver provisions in the Settlement Agreement.

*De Leon v. Bank of America, N.A. (USA)*, 2012 WL 2568142, 20-21 (M.D. Fla. 2012) (Not Reported in F.Supp.) (Report and Recommendation Adopted by *De Leon v. Bank of America, N.A. (USA)*, 2012 WL 2543586 (M.D. Fla. Jul 02, 2012) (NO. 6:09-CV-1251-ORL-28)). "Rule 23(c)(2) does not specify how the absentee is to request exclusion. It certainly would be an undue burden on class members to require them to retain counsel and prepare a formal legal document; on the other hand, allowing too much informality might pose problems of authenticity and ambiguity." *In re Four Seasons Securities Laws Litigation*, 493 F.2d 1288, 1291 (10th Cir. 1974). "A reasonable indication of a desire to opt out ought to be sufficient." *Id.* "The serious due process implications of holding an absent member bound by a class adjudication demand that we look beyond formalistic procedures to evaluate whether a class member has reasonably expressed a desire to be excluded from a class suit." *McCubbrey v. Boise Cascade Home & Land Corp.*, 71 F.R.D. 62, 70 (N.D. Cal.1976). "If proposed class members are to be permitted to opt out, we find nothing in Rule 23 which requires them to file written reasons for their

exercise of choice. Any reasonable indication of a desire to opt out should suffice." *Plummer v. Chemical Bank,* 668 F.2d 654, 657 n.2 (2nd Cir. 1982) (citations omitted).

In the case at bar, the opt-out procedure is far more onerous that the procedure in *De Leon.* But just as the *De Leon* court found, the onerous opt-out procedure here will likely produce the same inevitable results of discouraging Settlement Class Members from opting out, causing them to be bound by the class judgment and forfeit potentially valuable rights by virtue of the release provisions in the Settlement Agreement — a release that eliminates their express 50-Year Limited Warranties for which they have already paid substantial sums.

The only information that should be necessary to opt-out is information identifying the person requesting exclusion as a Settlement Class Member. The Preliminary Approval Order defines the Settlement Class as:

> All individuals and entities that owned, as of September 30, 2013, homes, residences, buildings, or other structures located in the United States, on which CertainTeed Weatherboards Fiber Cement Siding, Lap Siding, Vertical Siding, Shapes, Soffit, Porch Ceiling, and 7/16" Trim was installed on or before September 30, 2013 (the "Settlement Class").

Preliminary Approval Order [D.E. 28], ¶ 3. Nowhere in the class definition does it require that the Settlement Class Member must have suffered damage to the Siding, nor does it require that a Settlement Class Member have any certain size, square footage or detailed measurements of structures. The class definition also does not discriminate against persons who have, or have not, retained counsel. This required disclosure is a particularly egregious intrusion, given that the Settlement Class Member simply does not want to be involved in this litigation. What useful, relevant information can be gleaned by forcing the Settlement Class Member wishing to opt-out to disclose whether or not they have retained counsel?

The Opt-Out Form should have required no more information than the person's name, address, telephone number; whether they own property with the Siding; and the date the Siding was installed. This information would allow the Settling Parties, the Court, and any subsequent tribunal to determine whether the person was a Settlement Class Member.

"There should be no unnecessary hurdles that make it difficult for class members to exercise their rights to opt out, object, submit a claim, or make an appearance." *City of Livonia Employees' Retirement System v. Wyeth*, 2013 WL 4399015, 10 (S.D.N.Y. 2013) (citing Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, 3 (2010)). "The parties do not make it as easy for class members to opt out of the settlement. To opt out, one must print a form from the settlement website and mail it at his or her own expense to the settlement administrator. . . . One hallmark of a reasonable settlement agreement is that it makes participation as easy as possible, whether class members wish to make a claim, opt out, or object." *McClintic v. Lithia Motors, Inc.*, 2012 WL 112211, 6 (W.D. Wash. 2012). *See also, e.g., Woullard v. State Farm Fire and Cas. Co.*, 2007 WL 208519, 3 (S.D. Miss. 2007) ("The proposed settlement agreement proposes an opt-out class, but the proposed procedure does not make opting out easy. The proposed notice of the settlement does not provide a box that can be checked off if a policyholder wishes to be excluded from the class, but requires instead that the insured write a separate letter requesting exclusion from the class.").

Here, the Settlement is not fair, reasonable or adequate because the mandatory procedure that must be followed in order to opt-out of the Settlement Class is overly burdensome, intrusive and oppressive. The egregiousness is elevated in this case because, as set forth above, the Notice does not adequately inform Settlement Class Members that the Settlement will eliminate their express 50-Year Warranties for which they have already paid substantial sums. It is a reasonable

conclusion that most Settlement Class Members will likely not realize they are giving up such rights and value by failing to opt-out. Even for Settlement Class Members who do, the mandatory undertakings required by the Opt-Out procedure will likely be beyond many of their individual capabilities, particularly given the short time frame over the winter holiday season. This implicates serious due process concerns and the Settlement, in its current form, should not be approved on this basis.

## VIII.  OBJECTION REQUIREMENTS

1.      One or more of my attorneys, listed below, will ask to appear at the Final Approval Hearing on my behalf to talk about my objections and estimate that forty-five minutes will be needed to present my objections.

2.      My current address, telephone number, and email address are:

Gary Juelich
2419 Christopher Winds Lane
St. Louis, MO  63129
314-630-4676
Gary24190@msn.com

3.      The address of the property affected by the settlement:

2419 Christopher Winds Lane
St. Louis, MO  63129

4.      The number of residential property or other structures at each address that I believe may contain the Siding is: one residential single family house.

## IX. CONCLUSION

For all of the foregoing reasons, Settlement Class Member Gary Juelich respectfully requests that the Court enter an order:

1)    denying final approval of the proposed Settlement in the form before the Court until such time that the proposed Settlement is reformed to address and remedy the issues raised herein;

2)    granting Settlement Class Member Gary Juelich and the Settlement Class Members such other and further relief as the Court deems just and proper.

Dated: December 30th, 2013

Gary Juelich

/s/ John Steward
John Steward
Steward Law Firm, LLC
1717 Park Avenue
St. Louis, MO 63104-2941
Telephone:  (314) 571-7134
Facsimile:  (314) 594-5950
Email:  glaw123@aol.com

/s/ Stephen F. Meyerkord
Stephen F. Meyerkord
Geoffrey S. Meyerkord
Meyerkord & Meyerkord, LLC
1717 Park Avenue
St. Louis, MO 63104-2941
Telephone (314) 436-9958
Facsimile (314) 446-4700 fax
Email: sfm@meyerkordlaw.com
Email: gsm@meyerkordlaw.com

**Attorneys for Objector Gary Juelich**

**Certificate of Service**

The undersigned hereby certifies that on December 30, 2013: a true and correct copy of the foregoing was filed with the Court through the Court's CM/ECF system which served all counsel of record; a true and correct copy of the foregoing was served via first class U.S. Mail, postage prepaid, by depositing same with the U.S. Post Office and addressed to the Court and those persons listed below:

PEPPER HAMILTON LLP
Robert L. Hickok, Esquire
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19102

AUDET & PARTNERS, LLP
Michael McShane, Esq.
221 Main Street, Suite 1460
San Francisco, CA 94105

Clerk of the Court
United States District Court for the
Eastern District of Pennsylvania
Byrne Federal Courthouse
601 Market Street
Philadelphia, PA 19106-1797

/s/ John Steward

# EXHIBIT 1

**Consumer Services**
**CertainTeed Corporation**
803 Belden Road
Jackson, MI 49203
Toll Free #:   800.999.3654
Fax #:         517.787.0023
Email:         jtc.conserv@saint-gobain.com

10.25.2011

**CertainTeed**
SAINT-GOBAIN

Mr. and Mrs. Gary and Kathy Juelick
2419 Christopher Winds
St. Louis, MO  63129

RE: Incident # 179795

Dear Mr. and Mrs. Juelick:

In response to a concern of excessive gapping, I performed a field inspection of the above referenced property with you on 10/6/11.

As a result of this inspection and analysis of the claim information, we will **authorize** the replacement of the siding due to excessive gapping/cracks on the following walls: the rear facing wall at the upper level at bbq and with the rear facing patio wall.   The following supplier will handle the material portion of your claim:

Dealers Service @ 902 S Kirkwood in St. Louis, MO  63122 (314.966.3212)

Please use this letter to contact the supplier listed above and make arrangements to acquire the approved replacement material. At no cost, we have **authorized** the release of the following materials to you or your contractor:

15 squares (255 pieces) of Weatherboards 7.25" prefinished

*Warranty Information*: The CertainTeed Weatherboards™ Fibercement Siding Warranty includes SureStart Protection ™ for a period of 2-years from the date of the original installation that covers labor costs.  Upon expiration of SureStart Protection ™, the warranty covers material only on a prorated basis.   In this instance, the original installation date has been reported as 5/2008.  Therefore, SureStart Protection ™ expired in 5/2010 and any labor incurred will not be covered.  However, in the interest of resolving this complaint, the above authorization should cover 100% of the siding necessary to make the replacement.

Please contact the local lumberyard listed above to make arrangements to disperse the approved materials. After job completion and submittal of the final material count to our office, the appropriate credit will be issued to the lumberyard/distributor.

We apologize for any inconvenience this may have caused.

Sincerely,

Julie Weiner

Julie Weiner
Consumer Service Field Representative

cc:     CS Department
        Distributor:  warranty@ Wausau supply.com
        Chris Feldt

Note to the supplier: Please release the items listed above. Upon receipt of the final material count to our office, the appropriate credit will be issued to the distributor's account. This information can be faxed to us at 517.787.002

# EXHIBIT 2

01/24/2012 16:45 FAX 5177870023     Warranty Svcs     ☑001



01/24/2012 16:45 FAX 5177870023          Warranty Svcs                                    ☑002



## CONGRATULATIONS! ... and thank you for your recent purchase

of CertainTeed WeatherBoards® FiberCement Siding. You can feel confident that you have made a wise decision buying from a company that is an industry leader and stands behind its products with strong warranty protection.

Since 1904, CertainTeed has been producing quality building products that provide long-lasting beauty and protection for homes of every size, style and age. In addition to fiber cement siding, CertainTeed offers roofing, vinyl siding, windows, fence, deck and railing, trim, foundations, pipe, insulation, walls, and ceiling products.

For more than 100 years, the origin of our name continues to be our ongoing philosophy, "Quality made *certain*, satisfaction guaranteed."

### LIMITED, PRORATED AND TRANSFERABLE WARRANTY

## What and Who is Covered and for How Long

CertainTeed warrants to the original property owner/consumer that, when subject to normal and proper handling and use, and proper installation, its WeatherBoards FiberCement Siding primed with FiberTect® will be free from manufacturing defects during the 50-year period following its date of installation. Subject to the *Warranty Proration Schedule* on the back of this warranty, CertainTeed will pay to repair or replace, at its option, any WeatherBoards FiberCement Siding CertainTeed determines to be defective under the terms of this limited warranty. CertainTeed also reserves the right to refund the amount paid by the original property owner/consumer for the WeatherBoards FiberCement Siding (prorated as indicated in the *Warranty Proration Schedule*). Under no circumstances and in no event, however, will CertainTeed pay for or be liable for any labor charges or other expenses whatsoever in connection with the removal, repair or installation of either the original or replacement WeatherBoards FiberCement Siding, except as provided under SureStart™ protection described below.

WeatherBoards FiberCement Siding (but not the FiberTect sealer applied to the product) is warranted against damage from hail during the warranty period. In the event of hail damage, the property owner must first pursue costs of replacement or repair of hail-damaged WeatherBoards FiberCement Siding through homeowner's insurance or any other applicable insurance coverage. CertainTeed will reimburse the property owner for material costs in excess of the insurance contribution excluding any insurance deductible. CertainTeed will not, however, be responsible for the cost of any labor required to install or replace hail-damaged material.

All references in this warranty to WeatherBoards FiberCement Siding include any WeatherBoards FiberCement soffit or FiberCement 7/16" thick trim which is installed in conjunction with the original CertainTeed WeatherBoards FiberCement Siding.

In the event of repair or replacement under the terms of this warranty, the original warranty will apply to the repaired or replaced material and will extend for the balance of the warranty period in effect at the time CertainTeed determines the WeatherBoards FiberCement Siding is defective.

## SureStart™ Protection

CertainTeed WeatherBoards FiberCement Siding products are covered by SureStart protection. Under this warranty feature, CertainTeed will pay to repair or replace, at its option, any WeatherBoards FiberCement Siding CertainTeed determines to be defective during the two-year SureStart period, unless CertainTeed elects to pursue its refund option as described above. The SureStart period begins on the date of installation and terminates at the end of the two-year period as shown on the back cover.

CertainTeed's maximum liability under SureStart will be equal to the reasonable cost to repair or replace the defective material at current value, including labor in connection with removal, rep... or installation of either the original or replacement WeatherBoards FiberCement Siding.

If during the SureStart period a topcoat is applied and the WeatherBoards FiberCement Siding on which it is applied is determined to be defective, *not as a result of a topcoat failure*, then Cer...Teed will pay the cost for the coating at current value, plus labor to apply the topcoat, such labor *not* to exceed a total cost of $1 per square foot.

If the FiberTect sealer is determined by CertainTeed to be suffering from yellowing or from cracking, flaking, chalking or erosion from the surface then CertainTeed will pay the reasonable cost to repair or

replace the FiberTect sealer (and the topcoat if one is applied) at current value, including labor in connection with removal, repair or installation of either the original or replacement sealer (and the topcoat if one is applied), such labor *not* to exceed a total cost of 75 cents per square foot.

If CertainTeed has agreed to pay labor charges per the terms of this Limited Warranty, CertainTeed will provide reimbursement only upon receipt of a copy of the installation or application contractor's invoice or other written evidence of the completion of such work which CertainTeed, in its sole discretion, deems reasonable or acceptable.

## Transferability

This Limited Warranty is transferable, but only by the original property owner/consumer to the first subsequent property owner. Warranty transfer is effective on the date of real estate title transfer. The duration of the warranty, measured from the date of original installation, will remain the same for the subsequent property owner as for the original property owner/consumer and will be prorated as indicated in the *Warranty Proration Schedule*. If transferred during the SureStart period, however, SureStart Protection will automatically terminate, and the duration of the warranty, measured from the date of installation, will apply and will be prorated as indicated on the *Warranty Proration Schedule*. Any remaining period of SureStart protection at the time of transfer will *not* be available to the subsequent property owner. The subsequent property owner *cannot* transfer this warranty to any other subsequent property owner.

## Limitations

This Limited Warranty does not provide protection against and CertainTeed will have no liability for any failure, defect or damage caused by circumstances and events beyond normal exposure conditions or beyond CertainTeed's control, including, but not limited to:

- Improper transportation, handling or storage of the WeatherBoards FiberCement Siding by either the installer or the property owner, including but not limited to: failure to keep the material dry, improper drainage, exposure to standing water, inadequate ventilation, excessive stacking weight, or otherwise causing moisture damage, surface contamination, surface defects, efflorescence, chalking or other damage.

- Failure of either the installer or the property owner to provide reasonable and necessary maintenance to the WeatherBoards FiberCement Siding before, during or after its installation, including but not limited to: abrasions from rubbing, scratching, dents, dings or other cause, damage caused by ladders, scaffolding and other job site tools.

- Use of accessories that do not properly receive and/or secure WeatherBoards FiberCement Siding.

- Improper installation or installation not in accordance with CertainTeed's written instructions in effect at the time of the original installation of WeatherBoards FiberCement Siding.

- Defects in, failure of, or damage to the wall or substrate on which the WeatherBoards FiberCement Siding is installed caused by movement, distortion, cracking or settling of the wall or substrate or the foundation of the building.

- Discoloration, stains or other damage arising from exposure to outside sources such as, but not limited to, salt spray, air pollution (including metallic oxides or metallic particles), fungal or chemical agents, mold or mildew growth. (*Mold and mildew are functions of environmental conditions and are not manufacturing defects. As such, they are not covered under this Limited Warranty or any other warranty.*)

- Impact of foreign objects, fire, earthquake, flood, lightning, hurricane, tornado or other casualty or act of God over which CertainTeed has no control.

- Primer, sealer, paint or other coating applied over the WeatherBoards FiberCement Siding by the property owner or third party that is not recommended or supplied by CertainTeed, regardless of compliance with the primer, sealer, paint or coating manufacturer's recommended application techniques or specifications. (Concerns with the primer, sealer, paint or coating should be directed to the manufacturer of that product.)

- Improper coating that causes the WeatherBoards FiberCement Siding to fail.

- Deterioration of the FiberTect sealer, including but not limited to yellowing, cracking, flaking, chalking or erosion from the surface, occurring more than two (2) years after the original installation of the WeatherBoards FiberCement Siding. (CertainTeed installation instructions require a top coat to be applied within two (2) years following the original installation of WeatherBoards FiberCement Siding.)

* Vandalism or acts of war.
* Any other cause not a result of a manufacturing defect in the mater... supplied by Cert... ...d.

CertainTeed reserves the right to discontinue or modify any of its prod... ... including the color, without notice to the property owner, and CertainTeed will not be liable in the e... ... replacement ma... ... varies in color or gloss in comparison to the original material as a result of no... ... weathering. If Cert ... ... ...d replaces any material under this warranty, CertainTeed may substitute p... ...ucts designated b... ... to be of comparable quality or price range if the original material has been dis...ntinued or modifi...

## What the Customer Must Do

If you believe you have a manufacturing defect covered under the terms ... this Limited Warranty, you must promptly notify CertainTeed and provide proof of the date of pur... ... and installation of the WeatherBoards FiberCement Siding, as well as confirmation of proper ... ...tallation. Unt... ... ...vide such proof, CertainTeed will use the date of manufacture as the start ... warranty, y... ... ... ... ... ...r for CertainTeed to process your warranty claim, you must provide a de... ...tten des... ... ... ...oblem and photographs showing the reason for the claim, sufficient for Cert... ... to act ... ... ... ...on receipt of a properly reported claim, CertainTeed will evaluate the clai... ...d if a defect ... ... ... ... the terms of this Limited Warranty is confirmed, CertainTeed, within a reas... ...le amount ... ... ... ...er review and evaluation, will pay to repair, replace or refund the property owner ... accordance with th... terms of this Limited Warranty. In order to properly evaluate and process a claim... CertainTeed may require the property owner to submit a sample of the material claimed to be defe... e Certain...ed t ... ... ... and/or at CertainTeed's request, may require the property owner to a... ... a... ... ... ... ... to the property on which the material is installed, to the extent necessary f... ... ... ... inspect, take photographs and/or samples if required.

## Warranty Registration Information

*Failure to register this warranty will not ...id the warranty or any ... ...erms.*

All written notifications and correspondence should be sent to CertainTeed Corporation, Attention: Warranty Claims, 803 Be... ... Road, J...son, MI 4920.l. Claims may also be initiated by calling CertainTeed at 1-800- ... 5 (... ... ...n CertainTeed's website -- www.certainteed.com.

## Warranty Proration Schedule

| Number of Years of Use Obtained After Installation | CertainTeed's Prorated Share of Warranty Obligation | | |
|---|---|---|---|
| 0-2 years | 100% | | |
| 3-50 years | 2% redu...tion from original pur... | ...s ea... | ...e installation |

## Limited Warranty and Limitation of Remedi...

THE OBLIGATIONS CONTAINED IN THIS LIMI... ... WARRANTY ARE ... ...l... S... ...EDY AND ARE EXPRESSLY IN LIEU OF ANY AND AL ...THER OBLIGATIO... ... ... ...TIES, APPLICABLE STATE LAW WILL DETERMINE T... PERIOD OF TIME ... ... PRO...ERTY OWNER/CONSUMER MAY ...EEK A REMEDY ... ... THE IMPLIED W.R... ... ...2...T.... ... ... ...N R FITNESS FOR A PARTICUL...R PURPOSE. CERT... ...D'S OBLIGATI... ...P SIIAL... ... ...OR LIABILITY SHALL BE LIM...ED TO REPAIR... ...ANDING OR REP... ...E DE ... ...ODUCT AND IN NO EVENT SHALL CERTAINTEED BE ...SIE FOR ANY INCI... ...... ...Y.... DAMAGES, INCLUDING ANY DAMAGE TO THE BUILDI... ...CONTENT, OR ... ...-.. ... ... THAT OCCUR AS A RESULT OF THE BREACH. IF YO... ...CHOVE DOES NOT ... ...4 ...31 SIO... ...2 ...TATION... OR INCIDENTAL OR CONSEQUENTIAL DAMAGES, ...E ABOVE LIMIT... ...s ...s72... ... ... ...l. NO FIELD REPRESENTATIVE OF CERTAINTEED, DISTRI... ...R, DEALER OR I... ...... ... ...CHANGE OR MODIFY THIS LIMIT...D WARRANTY.

This warranty gives you ... ...ific legal rights. ...ay also have oth... state to state.

# CertainTee... 🏠

*Quality made **certain.** Satisfactio... **...ranteed.**

**CertainTeed Corporatio...**
P.O. Box 860, Valley For...e, PA 19-482
www.certainteed.com

Fiber
(D e warranty b...

...Weathe... ...ords
r ...the... ...08,
al is ... ...cally
...de w...ranty.)

...n WB806

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**NOTICE OF SETTLEMENT**

**For Qualifying Owners of Property on Which Certain Fiber Cement Siding Manufactured by CertainTeed Corporation is Installed**

**You Could Receive Cash Compensation Under a Class Action Settlement.**

*A U.S. federal court authorized this notice. It is not from a lawyer. You are not being sued.*

- This settlement resolves a lawsuit over whether or not Fiber Cement Siding manufactured by the Defendant, CertainTeed Corporation on or before September 30, 2013 was defective and failed to perform as promised when installed on buildings located in the United States.

- CertainTeed will pay $103.9 million to settle the Class Action if approved by the Court.

- You must file a Claim Form and have an Eligible Claim as defined in the Agreement in order to receive a remedy under the Agreement. You have six years from the Effective Date (see below) to file a Claim Form.

- *If you have CertainTeed Weatherboards™ Fiber Cement Siding installed on your property, your legal rights will be affected whether you act or don't act. Please read this Notice carefully.*

| YOUR LEGAL RIGHTS AND CHOICES | | DUE DATE |
|---|---|---|
| **EXCLUDE YOURSELF** | You are **not** entitled to recover anything from the Settlement. This is the only choice that will allow you to sue CertainTeed on your own about the claims discussed in this Notice. | December 31, 2013 |
| **OBJECT** | If you do not exclude yourself, you can write to the Court about why you don't like the Settlement | December 31, 2013 |
| **APPEAR AT A HEARING** | If you do not exclude yourself, you can ask to speak to the Court about the fairness of the Settlement. | February 19, 2014 |
| **SEND IN A CLAIM FORM** | If your Siding appears to be damaged, send in a Claim Form. The deadline for submitting a Claim Form is six (6) years after the Effective Date of the Agreement. (If you sold the house, you must file within 180 days of the Settlement's Effective Date or the closing of your sale). You will not be eligible for a remedy under this Agreement if you do not submit a timely Claim Form. | See Questions 11-20 in this Notice. |
| **DO NOTHING** | You are bound by the terms of the Agreement and give up your right to sue CertainTeed on these claims later. You will not be eligible for a remedy under this Agreement if you fail to file a Claim Form by the deadline. | |

These rights and options—**and the deadline for each**—are explained in this Notice.

The Court in charge of this case has not yet decided whether or not to approve the settlement. No payments to Class Members will be made until after the Court approves the settlement and after any possible appeals are resolved.

## BASIC INFORMATION

CertainTeed Corporation and representatives of owners of buildings on which the Siding had been installed reached a proposed class action settlement. The settlement is intended to resolve disputes between the parties about the performance of the Siding. This proposed class action settlement covers the entire United States.

### 1. What Siding is the subject of this lawsuit?

The Siding that is the subject of this lawsuit (called "Siding" throughout this Notice) is CertainTeed Weatherboards™ Fiber Cement Siding, Lap Siding, Vertical Siding, Shapes, Soffit, Porch Ceiling, and 7/16" Trim installed on or before September 30, 2013. Other companies also make fiber cement siding but this lawsuits involves only fiber cement siding made by CertainTeed.

### 2. Why did I get this Notice package?

The Court directed this Notice package to you because you may own a home or other property on which the Siding was installed. If so, you are likely to be a member of the proposed class. If you are a member of the proposed class, the proposed settlement will affect your rights. You have choices to make before the Court decides whether or not to approve the settlement.

This Notice package explains:

- What a class action lawsuit is.
- What this class action lawsuit is about.
- What your legal rights are.
- What the settlement involves.
- What the benefits are and who is eligible to get them.
- How to apply for the benefits.

### 3. What is a Class Action?

In a class action lawsuit, one or more people called "Representative Plaintiffs" sue one or more Defendants on behalf of other people who have similar claims. A court decides whether any lawsuit may proceed as a class action and this court has not finally decided that the lawsuit may be certified as a class action. All these people with claims, together, are a "Class" or "Class Members." One Court decides all the issues in the lawsuit for all Class Members, except for those who exclude themselves from the Class.

### 4. What is this class action about?

The Representative Plaintiffs allege that the Siding is subject to shrinkage, warping, cracking, bowing, delamination and otherwise does not perform in accordance with the reasonable expectations of users. CertainTeed denies these allegations. The proposed settlement is intended to resolve this dispute. The Court has not decided in favor of either the Class or CertainTeed. The Court's role in the settlement is to make sure it is a proper settlement that is fair, reasonable, and adequate for all class members.

The Court in charge of this lawsuit is the United States District Court for the Eastern District of Pennsylvania. The name of the lawsuit is *In re: CertainTeed Fiber Cement Siding Litigation,* MDL Docket No. 2270. The judge is the Honorable Thomas P. O'Neill.

### 5. Why is the class action being settled?

Rather than proceeding to litigate through a jury trial, both sides in the lawsuit have agreed to a settlement. That way, everyone avoids the cost and risk of a trial, and Settlement Class Members will be eligible to file a Claim Form to receive a more substantial remedy than that provided under CertainTeed's limited warranty, if their Siding is defective.

## WHO IS IN THE SETTLEMENT

### 6. How do I know if I'm part of the settlement?

To see if you are eligible for a remedy under this settlement, you first have to know if you are a Settlement Class Member. You are a Settlement Class Member if:

As of September 30, 2013, you owned a home, residence, building, or other structure in the United States, on which the Siding was installed on or before September 30, 2013.

If you are a Settlement Class Member, you are only eligible for a remedy under the Agreement if you have an Eligible Claim. Briefly, this means that your Siding exhibits Qualifying Damage pursuant to the criteria set forth in the Agreement. You may also file a claim if you purchased a building on which the Siding was installed on or before September 30, 2013, and the seller did not retain the right to make a claim.

If you owned a building on which the Siding was installed on or before September 30, 2013, but sold it, you may file a claim only if (a) the purchaser assigned that right to you in writing, AND (b) your claim package is postmarked no later than the later of 180 days after the Effective Date of the Settlement Agreement or the settlement on the sale of the building. You must submit the written assignment of the claim with your claim package.

### 7. Are there exceptions to being included in the Settlement?

You are *not* a Settlement Class Member even if the Siding was installed on your building if:

- You exclude yourself from this settlement.
- You previously filed a claim concerning your Siding in any court of law, and the claim was resolved with a final judgment or order, whether or not that judgment was favorable to you.
- You are a subsidiary, parent company, successor, assign, or controlling shareholder of CertainTeed.
- You are the Judge in this lawsuit or a member of the Judge's immediate family.

### 8. How do I know if I have the Siding described in Question 1 that is the subject of this lawsuit?

There are several ways to find out if you have the Siding:

- *Check your purchase or repair documents.* You may have receipts, warranties, bills of sales, or brochures from when you purchased or repaired your Siding. These documents may say that the Siding was installed on your property.
- *The contractor or company that installed or repaired your Siding* may know whether or not the Siding was installed.
- *See if you still have packaging material for the Siding.* The installer may have left a package of leftover Siding in your garage or basement and you may be able to identify it from the packaging.
- *Ask a contractor or builder.* An experienced contractor or builder may be able to tell by looking at your property whether you may have the Siding.
- *Go to the website,* www.CertainTeedFiberCementSettlement.com. The settlement website includes further information and pictures of the Siding to help you identify it.

### 9. How do I qualify for a remedy under the Agreement?

To qualify for a remedy, you must meet these criteria:

- Submit a completed and timely Claim Form.
- The Siding about which you are filing your claim must meet the definition of Qualifying Damage as set forth in the Agreement. Siding that shows certain shrinkage, warping, bowing, delamination and cracking, as defined in the Agreement, displays Qualifying Damage.
- The Qualifying Damage must occur prior to the end of the Claims Submission Period, which is six (6) years following the Effective Date of the Agreement. That date will be posted on the website after the Court gives final approval to the settlement.

## THE SETTLEMENT BENEFITS - WHAT YOU GET

### 10. How does the settlement work?

CertainTeed will pay $103.9 million to settle the Class Action lawsuit. A Settlement Class Member with an Eligible Claim will be offered a cash payment in accordance with the Agreement. The amount available to each claimant is determined using the criteria described in the Settlement Agreement. Also, the amount payable to each claimant depends upon a number of factors such as (1) the extent of the Qualifying Damage; (2) how much of the siding on the wall has Qualifying Damage; (3) the size of the wall; and (4) the length of time the Siding has been installed.

Information about the payment available under the Agreement is supplied in answer to Questions 11 through 14 below. When you read the answers to those questions, keep in mind that compensation for eligible Claims is based in part on how long you have already been able to use the siding.

| Date of Original Installation | Percent Payable |
|---|---|
| 2013 | 80% |
| 2012 | 76% |
| 2011 | 72% |

3

| Date of Original Installation | Percent Payable |
|---|---|
| 2010 | 68% |
| 2009 | 64% |
| 2008 | 60% |
| 2007 | 56% |
| 2006 | 52% |
| 2005 | 48% |
| 2004 | 44% |
| 2003 | 40% |
| 2002 | 36% |
| 2001 | 32% |
| 2000 | 28% |
| 1999 | 24% |

The amount paid to each Class Member will be determined by using the pricing provided by "RS Means," which is a widely accepted cost estimator used in the construction/building industry. RS Means accounts for regional differences in costs for labor and materials. However, the cost of your claim can be closely estimated as follows:

The average cost of installing fiber cement siding to a home in the United States is approximately $500 per square (a "square" is 100 square feet of siding). Since the average home requires about 28 squares, the cost to re-side an average home is about $14,000. An example of a recovery for a Class Member would be as follows: If two out of the four sides of an average size home built in 2006 had Qualifying Damage in excess of 5%, and each of the sides was of equal size, then one-half of the 28 squares, or 14 squares would need to be replaced.

According to the schedule set forth above, which reflects both a reduction for the number of years of service the homeowner received from the Siding, and the compromises inherent in the Settlement process, the claim would be valued at $3,640 ((14 squares x $500/square) multiplied by .52). The Claimant could receive more than this amount if there are excess funds at the end of the claims period. In fact, the maximum amount payable could ultimately be the full value of the claim without an adjustment, depending upon the claims rate. In order to help you decide if this settlement is right for you, you can also contact your local contractor, most of whom will give you a free estimate of the cost to replace your siding.

In order to ensure that all Claimants are treated equally during the six year claims period, all claims will be paid on a two-payment schedule. The first payment will be in the amount of 50% of the claim value (in the above example that would be $1,820) as soon as the claim is administered. The second payment would be made at the end of the claims period, unless Class Counsel seeks approval from the Court to accelerate payments based on the claims rate.

If less than 5% of the siding on a single wall section has Qualifying Damage then the payment will be based on the actual number of boards or panels with damage. The siding material will be prorated based on the schedule in your warranty. All other costs associated with replacing the siding will be subject to the schedule set forth above.

If you siding was installed within the last two years, your SureStart warranty is likely still in force. If so, you must first make a claim with CertainTeed under the SureStart Warranty. However, if after making a claim with CertainTeed you believe you would have recovered more under this Settlement, then you can make a claim in this settlement too. If this Settlement would have provided you more, you will be paid the difference between what CertainTeed paid and what the Settlement provides.

The Settlement allows a class member to make more than one claim during the claims period, however, a Claimant cannot collect twice for the same wall section for which they previously received compensation.

Remember, this Notice is only a summary of important features. The Agreement, available on the website, www.CertainTeedFiberCementSettlement.com, contains all the details about the settlement.

## 11.  Making a Claim . . .

(a)   When should I submit my claim?

You can submit your claim any time up until the end of the Claims Submission Period, which is six (6) years after the Effective Date. (But if you sold the building, see Question 12 for a different deadline). The Effective Date will be posted on the website when it is known. However, it is estimated that the effective date will not occur before January 1, 2014.

(b)    What will I receive if, after all of the factors under the Settlement Agreement are applied, my claim is found to be valid?

- You will receive a cash payment calculated as described in Section 10 of this Notice and in the Settlement Agreement.

### 12. If I sold or transferred a building with Siding, but at that time I retained the right to make a claim for the Siding with a valid documented assignment when should I submit my claim?

Your Claims Package must be postmarked or otherwise received by the Claims Administrator no later 180 days after the later of (1) the Effective Date of the Settlement Agreement, or (2) the settlement on the sale of the property. You must submit a copy of the written assignment of the claim along with your Claims Package.

### 13. If I have already settled a warranty claim for the Siding with CertainTeed, may I receive any additional remedy under the settlement?

If you previously settled or resolved a warranty claim for all Siding prior to the Effective Date, you have no claim under this Agreement unless you have new Qualifying Damage. Claims or portions of claims that have been settled or resolved include: (i) claims or portions of claims that have been resolved with a final judgment or dismissal, whether or not favorable to the claimant; or (ii) claims or portions of claims that have been settled as evidenced by a written release of CertainTeed; or (iii) claims or portions of claims for which you have received compensation for replacement siding, such as by a check for Siding or labor that has been cashed; or (iv) claims or portions of claims for which you have received replacement material by redeeming a material authorization letter from CertainTeed.

### 14. What if I submitted a warranty claim for the Siding to CertainTeed, but never settled the claim with CertainTeed?

If you previously submitted a warranty claim to CertainTeed, received an offer from CertainTeed for the warranty claim, but have not yet accepted the offer, you should submit a Claim form and state in the Claim Form that you received such an offer. Your claim will be considered, but you still have to meet all of the criteria in the settlement, such as whether you have the Siding, whether it exhibits Qualifying Damage under the definition in the Agreement, and whether the Qualifying Damage was caused by a defect.

### 15. When is the Settlement's Effective Date?

For information about the Settlement's Effective Date, check the website, www.CertainTeedFiberCementSettlement.com. The Effective Date will be the date of the Court's Order giving final approval to the settlement if there are no objections or appeals, but if there are objections or appeals the date will be later. When the date becomes known, it will be posted on the website.

### 16. Should I submit a claim form if I think I am a class member and my Siding appears to have damage, but the Siding was installed after September 30, 2013?

Do not submit a claim form if your Siding was installed after September 30, 2013. In this case, you are not a Settlement Class Member and have no claim under this Agreement. In that case, you may submit a claim directly to CertainTeed pursuant to the applicable limited warranty.

### 17. What happens if the settlement is not approved by the Court?

If the settlement is not approved at the Final Approval Hearing, then the settlement will terminate and all class members and Parties will be restored to the positions in which they were before the Agreement was signed.

## HOW TO RECEIVE A REMEDY -- SUBMITTING A CLAIM FORM

### 18. How can I receive a remedy under the settlement?

To qualify for a remedy, you must fill out and submit a Claim Form demonstrating the damage to your Siding, and attach all of the documentation it requests. You can obtain a copy of the Claim Form by:

- calling this toll-free number: (855) 332-3413
- visiting the website, www.CertainTeedFiberCementSettlement.com; or
- writing to:   CertainTeed Fiber Cement Siding Litigation
c/o BMC Group, Settlement Administrator
P.O. Box 2007
Chanhassen, MN 55317-2007

## 19. When will I receive my remedy?

On February 19, 2014 the Court will hold a hearing to decide whether or not to approve the settlement. If the Court approves the settlement, the Claims Administrator will begin reviewing each Claim Form submitted. Please note that there is often delay after a settlement like this is approved. For example, there may be appeals of the Court's order approving the settlement, and payments can't be made unless appeals are finished and the Court's Order is upheld. Because of this, there could be a delay before the first claims are reviewed and deemed eligible. The claims will generally be reviewed on a first-come, first-served basis.

## 20. What if the Claims Administrator denies my claim?

If you believe the Claims Administrator wrongly denied your claim, you can appeal to an Independent Claims Reviewer. You cannot appeal a denial based on fraudulent conduct or an untimely claim application. (However, you may challenge denial of a claim based on fraudulent conduct by presenting the matter to the Court). Your appeal must be filed with the Claims Administrator within 45 days of your receipt of notice of the denial.

# YOUR RIGHTS - GETTING OUT OF THE SETTLEMENT

## 21. What if I don't want to be part of the settlement or the Settlement Class?

You do not have to take part in the settlement or be a Settlement Class Member. You can do what is called "excluding" yourself or "opting out." If you exclude yourself, you may not receive a remedy under the Agreement and you cannot object to the settlement. Any Court orders will not apply to you. By excluding yourself, you keep any right to file or proceed with a lawsuit about the Siding that you may have.

## 22. How do I exclude myself from the settlement?

To exclude yourself, you must send a timely and complete Opt-Out Form via first class mail to Class Counsel at any ONE of the following addresses:

| AUDET & PARTNERS, LLP | **OR** | BERGER & MONTAGUE, P.C. |
|---|---|---|
| Michael McShane, Esq. | | H. Laddie Montague, Jr., Esq. |
| 221 Main Street, Suite 1460 | | Shanon J. Carson, Esquire |
| San Francisco, CA 94105 | | 1622 Locust Street |
| | | Philadelphia, PA 19103-6365 |

**Deadline for Exclusion:** Your request for exclusion from the settlement must be postmarked or personally delivered to class counsel listed above by December 31, 2013. If you request exclusion by this date, and later wish to opt back into the settlement because you opted out in error, you must do so by December 31, 2013.

If you do not follow these instructions properly, you will lose your right to exclude yourself. There are no exceptions.

**UNLESS YOU PROPERLY FILE A REQUEST FOR EXCLUSION, YOU WILL BE BOUND BY ANY JUDGMENT IN THIS CASE AND YOU WILL NOT BE PERMITTED TO PURSUE ANY PENDING OR FUTURE LITIGATION ON MATTERS RESOLVED IN THIS SETTLEMENT. THIS IS TRUE:**

- even if you have objected to the settlement;
- even if you are actively litigating a pending lawsuit regarding the Siding; and
- even if you sent in an exclusion request but sent it to an incorrect location.

## 23. If I exclude myself, can I receive a remedy under the Agreement or tell the Court that I don't think the settlement is fair?

No. If you exclude yourself, you cannot receive a remedy under the Agreement, and you cannot tell the Court that you don't like the settlement (which is called "objecting"). If you exclude yourself, you are no longer part of the Settlement Class, but you can sue or be part of a different lawsuit against CertainTeed about the claims in this case.

# YOUR RIGHTS - OBJECTING TO THE SETTLEMENT

## 24. How do I tell the Court if I don't like the settlement?

If you're a Settlement Class Member and don't exclude yourself, you can object to the settlement. This means you can tell the Court you don't like the settlement or some part of it. For example, you can say you don't think the settlement is fair or adequate. The Court will consider your views but may approve the settlement anyway.

To object, you or your lawyer must prepare a letter that contains all of the following:

- The name and title of the lawsuit, *In re: CertainTeed Fiber Cement Siding Litigation*, MDL Docket No. 2270;
- A written statement of objections clearly specifying the grounds or reasons for each objection;
- A statement of whether or not you or your lawyer will ask to appear at the Final Approval Hearing to talk about your objections, and, if so, how long you will need to present your objections;
- Copies of any documents you or your lawyer will present at the Final Approval Hearing;
- Your current address, telephone number, and email address, and that of your attorney, if any;
- The address of the property or properties affected by the settlement;
- The number of units of residential property or other structures at each address that you believe may contain the Siding; and
- Your signature *and* that of your attorney, if you have one.

Your objection letter must be sent to the Court, Class Counsel, and CertainTeed's counsel at the addresses below, and postmarked or received **no later than December 31, 2013.** If you retain an attorney to object to the settlement, the attorney must file a notice of appearance and serve it on Class Counsel and CertainTeed's counsel no later than ten days after objecting to the settlement.

| The Court: | CertainTeed Corporation: |
|---|---|
| Clerk of the Court | PEPPER HAMILTON LLP |
| United States District Court for the | Robert L. Hickok, Esquire |
| Eastern District of Pennsylvania | 3000 Two Logan Square |
| Byrne Federal Courthouse | 18th and Arch Streets |
| 601 Market Street | Philadelphia, PA 19102 |
| Philadelphia, PA 19106-1797 | |

**Class Counsel:**

AUDET & PARTNERS, LLP   **OR**   BERGER & MONTAGUE, P.C.
Michael McShane, Esq.              H. Laddie Montague, Jr., Esq.
221 Main Street, Suite 1460       Shanon J. Carson, Esquire
San Francisco, CA 94105         1622 Locust Street
                                 Philadelphia, PA 19103-6365

### 25. What's the difference between objecting and excluding myself?

Objecting is the way to tell the Court what you don't like about the settlement. You can object only if you stay in the Settlement Class and the settlement.

Excluding yourself is the way to tell the Court that you don't want to be a part of the Settlement Class and the settlement and that you want to keep the right to file your own lawsuit. If you exclude yourself, you can't object because the settlement doesn't affect you anymore.

## IF YOU DO NOTHING

### 26. What happens if I do nothing at all?

If you have the Siding on your building, all decisions made by the Court in this lawsuit or about the settlement will apply to you. If the Court approves the settlement, you will have released CertainTeed from any further claims against it about the issues settled in this lawsuit, and you can't ever sue CertainTeed again about these issues. This is true even if you do not send in a Claim Form for a remedy.

However, you will retain the right to make a claim under the Agreement until six years after the Effective Date. (There is a shorter deadline if you sold the building. See Question 12).

## THE LAWYERS REPRESENTING YOU

### 27. Do I have a lawyer in this lawsuit?

The Court has designated the following lawyers to represent you and all Settlement Class Members. Together, these lawyers are called Lead Counsel. *You will not be charged for these lawyers.* The names and addresses of Lead Class Counsel are as follows:

Michael McShane
AUDET AND PARTNERS LLP
221 Main Street
Suite 1460
San Francisco, CA 94105

Shanon J. Carson
H. Laddie Montague, Jr.
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103

### 28. How will the lawyers be paid?

The lawyers who represent the Settlement Class will ask the Court for reimbursement of their out of pocket expenses and an award of attorneys' fees and costs based on their work in this litigation in an amount not to exceed $18.5 million in attorneys' fees and $500,000 in costs. The cost of notice and claims administration is estimated to be $1.7 million. The costs of notice, claims administration, and attorneys' fees and costs will be paid from the Settlement Fund. The amount of attorneys' fees to be awarded will be determined solely by the Court. The amount of the award will in large part be based on the amount of time spent by the lawyers litigating this case since 2010. The Court must approve any requests for fees, expenses, and costs.

### 29. Will the Class Representatives who have worked with the lawyers receive any extra payment?

Yes. To compensate them for work in this litigation, the Class Representatives will be paid an incentive payment. The incentive payments must be approved by the Court and will likely be from $2,500 to $5,000 per Class Representative, depending upon the extent of a representative's involvement in the case. In no event will the funds payable to all Class Representatives exceed $100,000.

## THE COURT'S FINAL APPROVAL HEARING

### 30. When and where will the Court decide whether or not to approve the settlement?

The District Court will hold a Final Approval Hearing at 10:00 a.m. on **February 19, 2014**. At this hearing, the Court will consider whether or not the settlement is fair and adequate. If there are written objections, the Court will consider them, and the Court will listen to people who have asked to speak at the hearing. After the hearing, the Court will decide whether or not to approve the settlement.

The Hearing will be held at: United States District Court for the Eastern District of Pennsylvania, James A. Byrne Federal Courthouse, 601 Market Street, Philadelphia, PA 19106-1797.

### 31. Do I have to come to the Hearing?

No. Class Counsel will answer questions the Court may have. But you are welcome to come at your own expense. If you send a written objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

### 32. Can I have my lawyer appear at the Final Approval Hearing to tell the Court about my opinions regarding the settlement?

Yes. As long as you don't exclude yourself, you have the right to appear through counsel at the Final Approval Hearing, so long as your Notice of Appearance and any written objections you may have are postmarked or received by the Court, CertainTeed, and Class Counsel by December 31, 2013. If you do this, however, the cost of having your lawyer appear will be at your own expense.

## GETTING MORE INFORMATION

### 33. Are more details about the settlement and my rights under the settlement available?

This Notice summarizes the settlement and your rights under the settlement. It cannot tell you every right to which you may be entitled. To obtain further information or advice about your legal rights, you may contact Class Counsel or consult a lawyer at your own expense.

More details about the terms of the settlement are set forth in the Agreement. If you have questions or want to know more about the settlement, you can call the Claims Administrator toll-free at (855) 332-3413, or write to: CertainTeed Fiber Cement Siding Litigation, c/o BMC Group, Settlement Administrator, P.O. Box 2007, Chanhassen, MN 55317-2007. You can also check the website, www.CertainTeedFiberCementSettlement.com. The website has a copy of the complete Agreement and other important documents and will be maintained to provide answers to frequently asked questions.

You can also look at and copy the legal documents filed in this lawsuit at any time during regular office hours at the Office of the Clerk of the Court, United States District Court for the Eastern District of Pennsylvania, James A. Byrne Federal Courthouse, 601 Market Street, Philadelphia, PA 19106-1797.

# EXHIBIT 4

**Preliminary Fiber Siding Replacement Calculator** v1.03

## USE OF WEBSITE CALCULATOR

This web-based calculator provides only a rough and preliminary estimate of possible payments from the settlement. The calculator is based on costs as of the date the Court preliminarily approved the settlement, in October, 2013. Those costs will be updated when the settlement becomes final and may increase, decrease, or remain the same when the settlement is finalized. The actual payments will be determined by the claim administrator, and will be based on additional factors and costs that this courtesy calculator does not analyze or estimate. The actual payments will be based on a number of factors, including (1) the extent of the Qualifying Damage, (2) the proportion of the wall with Qualifying Damage, (3) the size of the wall, (4) the length of time the Siding has been installed, (5) the actual construction of the building, and (6) the individual characteristics related to the tear off, replacement, and painting necessary to remediate the damaged siding which qualifies for payment. The claim administrator will consider information submitted on claim forms and information developed during the claim administration process to determine the amounts of payments. Accordingly, the claim administrator is not bound by the results of this calculator. The volume of claims submitted may also affect the amounts of payments either up or down. In addition, the amounts may be paid in multiple payments over the length of the claims period to ensure that class members making early claims are not treated differently than class members making claims throughout the class period or the end of the class period.

☐ I agree with all applicable terms and conditions

# EXHIBIT 5

**Preliminary Fiber Siding Replacement Calculator** v1.03

Zip Code: [63129]   Enter any valid U.S. Zip Code

Age of Siding [2006 (8 Years) ▼]   Enter the age of the siding in Years (1-15)

Survey structure and identify where the deterioration occurs. On each side of the structure where qualifying damage affects 5% or more of that side, measure the square feet of deteriorated area and the number of stories affected by the deterioration. Enter the square feet (S.F.) and number of stories affected below for each side where qualifying damage affects 5% or more of that side.

|  | **S.F.** | **No. of Stories** |
|---|---|---|
| Side 1: | 700 | ⦿ 1 ○ 2 ○ 3 |
| Side 2: | 700 | ○ 1 ⦿ 2 ○ 3 |
| Side 3: | 0 | ⦿ 1 ○ 2 ○ 3 |
| Side 4: | 0 | ⦿ 1 ○ 2 ○ 3 |
| Side 5: | 0 | ⦿ 1 ○ 2 ○ 3 |
| Side 6: | 0 | ⦿ 1 ○ 2 ○ 3 |
| Side 7: | 0 | ⦿ 1 ○ 2 ○ 3 |
| Side 8: | 0 | ⦿ 1 ○ 2 ○ 3 |
| **Total:** | 1400 | [Calculate] |

| | |
|---|---|
| Remove and replace fiber cement siding: | $13,823.04 |
| Less Siding age deduction: | -$6,635.06 |
| **Preliminary Siding Cost Estimate:** | **$7,187.98** |

# EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: CERTAINTEED FIBER CEMENT SIDING LITIGATION | : | MDL DOCKET NO. 2270 |
| | : | |
| This Document relates to: | : | |
| **ALL CASES** | : | |

## OPT – OUT FORM

I/we hereby request that I/we be excluded from the Settlement Class in In re: CertainTeed Fiber Cement Siding Litigation, MDL No. 2270.  I understand that by excluding myself from the settlement, I will not receive any benefits from the settlement.

_____

Name and Address of Class Member(s) Who Are Opting Out

_____        _____

Telephone Number                    Email Address

_____

Signature(s)

_____

Address of Class Member's Building To Exclude (Attach Additional Pages For Any Other Buildings To Be Excluded)

_____

Number of Residential Units Or Other Structures To Be Excluded

_____

When Siding Installed on Each Structure

**AMOUNT OF SIDING INSTALLED ON PROPERTY**

For each structure on the property with Siding installed, list:
- Total square feet of the structure _____

- Total stories of the structure _____
- Total square feet of Siding installed _____
- Total square feet of Siding damaged, if any _____
- (Attach additional pages, if necessary)

_____

Name and Address of Attorney For Class Member Who Is Opting Out, If Any

_____    _____

Telephone Number                          Email Address

_____

Attorney Signature, If Any Attorney

# EXHIBIT 7



English (US) ▼

CertainTeed Fiber Cement Siding Settlement > General Information Regarding the Litigation and Settlement > Important Dates and Deadlines

# Exclusion Deadline: 12/31/2013

To exclude yourself, you must send a timely and complete Opt-Out Form via first class mail to Class Counsel at any ONE of the following addresses:

AUDET & PARTNERS, LLP
Michael McShane, Esq.
221 Main Street, Suite 1460
San Francisco, CA 94105

OR

BERGER & MONTAGUE, P.C.
H. Laddle Montague, Jr., Esq.
Shanon J. Carson, Esquire
1622 Locust Street
Philadelphia, PA 19103-6365

**Deadline for Exclusion:** Your request for exclusion from the settlement must be postmarked or personally delivered to class counsel listed above by December 31, 2013. If you request exclusion by this date, and later wish to opt back into the settlement because you opted out in error, you must do so by December 31, 2013.

If you do not follow these instructions properly, you will lose your right to exclude yourself. There are no exceptions.

**UNLESS YOU PROPERLY FILE A REQUEST FOR EXCLUSION, YOU WILL BE BOUND BY ANY JUDGMENT IN THIS CASE AND YOU WILL NOT BE PERMITTED TO PURSUE ANY PENDING OR FUTURE LITIGATION ON MATTERS RESOLVED IN THIS SETTLEMENT. THIS IS TRUE:**

- even if you have objected to the settlement;
- even if you are actively litigating a pending lawsuit regarding the Siding; and
- even if you sent in an exclusion request but sent it to an incorrect location.

f    ✉    in    8+

12/30/13

Case 2:11-md-02270-TON   Document 40   Filed 12/30/13   Page 58 of 58
Exclusion Deadline: 12/31/2013 – CertainTeed Fiber Cement Siding Settlement

Privacy Policy and Terms of Use (c) 2013 Analytics