IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: CERTAINTEED FIBER CEMENT SIDING LITIGATION | MDL DOCKET NO. 2270 |
| THIS OBJECTION RELATES TO ALL CASES | |

## OBJECTIONS REGARDING PROPOSED SETTLEMENT

To The Honorable District Judge:

James Blake, Jr., ("Objector"), files these Objections to the Proposed Settlement, Objections to Class Certification, Objections to Attorneys' Fees, Notice of Intent to Appear, and Request to Speak at the Hearing, and would show as follows:

### I. Objector

Objector is a member of the settlement class, as shown by Objector's attached declaration. Objector's address, telephone number and signature are included in the attached declaration, which is incorporated herein by reference.

Objector, through counsel, intends to appear at the hearing. Objector will not appear personally. Objector requests that Objector's counsel be allowed to appear at the final approval hearing to talk about these objections and to otherwise participate in the final approval hearing.

### II. Objections to the Court's Jurisdiction

Objector objects to the certification of the settlement class, approval of the settlement, and any award of attorneys' fees to Class Counsel because the Court lacks jurisdiction to do so. Article III requires that each class member have an "actual" and "concrete" injury in fact that is particularized to them. *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013); *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000). As the Supreme Court reiterated in *Vermont Agency*:

> As we have frequently explained, a plaintiff must meet three requirements in order to establish Article III standing. First, he must demonstrate "injury in fact"—a harm that is both "concrete" and "actual or imminent, not conjectural or hypothetical." Second, he must establish causation—a "fairly ... trace [able]" connection between the alleged injury in fact and the alleged conduct of the defendant. And third, he must demonstrate redressability—a "substantial likelihood" that the requested relief will remedy the alleged injury in fact. These requirements together constitute the "irreducible constitutional minimum" of standing, which is an "essential and unchanging part" of Article III's case-or-

controversy requirement, and a key factor in dividing the power of government between the courts and the two political branches.

529 U.S. at 771 (citations omitted). Most members of the class do not meet those constitutional requirements because there has been no manifestation of a defect in their siding. Indeed, the claims process itself contemplates that there will be persons in the class that will not incur any injury. *The mere existence of the claims process to establish loss, rather than class membership, establishes that there are persons in the class who have not suffered any injury.*

Class members who did not experience a defect in their siding cannot meet any of the three requirements for Article III standing. Their forum, if any, is in state court or through arbitration. To properly allege an injury in fact sufficient to confer Article III standing, class members must show the purported defect has actually manifested itself, or will inevitably manifest itself, in the very products they own. Here most class members have not experienced a defect in their siding so cannot satisfy that requirement.

The Fifth Circuit recently reversed a district court for approving a settlement that included class members that suffered no harm. In *In re Deepwater Horizon*, 732 F.3d 326 (5th Cir. 2013), the Fifth Circuit dealt with a settlement in which some class members had not suffered any harm, or who suffered harm but not from the oil spill at issue. The Fifth Circuit held:

> Turning to the present case, the district court had no authority to approve the settlement of a class that included members that had not sustained losses at all, or had sustained losses unrelated to the oil spill, as BP alleges.

*Id.* at 343. Because the class here similarly includes class members who have not suffered any harm, approval of the settlement would violate Article III.

### III. Additional Objections to the Certification

Rule 23 and due process permit class certification only when the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23 (a)(4)(permitting certification "only if … the representative parties will fairly and adequately protect the interests of the class"); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)("the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members"). The MANUAL FOR COMPLEX LITIGATION 4th explains that the requirement means that the class representative and Class Counsel must represent the interests of *all* members of the class, which includes their interests vis-à-vis each other:

> Divergent interests must be taken into account and fairly accommodated before the parties negotiate a final settlement. Consider whether the counsel who have negotiated the settlement have fairly represented the interests of *all* class members.

MANUAL FOR COMPLEX LITIGATION 4th § 21.612, p. 314 (emphasis added). Rule 23(a)'s adequacy of representation requirement "serves to uncover conflicts of interest between named

parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

The MANUAL FOR COMPLEX LITIGATION also says that if significant differences in interests exist between different groups within the class, the certification must create subclasses, with separate representatives and class counsel for each subclass. MANUAL FOR COMPLEX LITIGATION 4th, §21.23, p. 272. The Supreme Court addressed the adequacy requirement in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), where it mandated separate class representatives *and counsel* for subgroups within the class, even in the settlement context.

Moreover, if the underlying *litigation* class cannot be certified, then the class representatives cannot adequately represent the interests of a settlement class:

> The nationwide class plaintiffs thus entered negotiations in what the *Amchem* court describes as a "disarmed" state, unable to "use the threat of litigation to press for a better offer," *Amchem*, 521 U.S. at 621, 117 S.Ct. 2231-not a good position from which to represent the interests of parties that do wield such a threat.

*Smith v. Sprint Communications Co.*, 387 F.3d 612, 614 (7th Cir. 2004). The representative parties here were similarly disarmed and, therefore, could not adequately represent the interests of the class.

Separate class representatives and counsel should have been appointed for two reasons: (1) there is a material difference of interests between class members who have, and have not, experienced any damages with their Siding, and (2) there is a material difference in the strength of the claims depending on each class members' state. The settlement class here does not satisfy the adequacy or predominance requirements of Rule 23.

### A. Separate classes and counsel for past and future damages

The Supreme Court addressed the adequacy requirement for separate representation between past and future claimants in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), where it mandated separate class representatives *and counsel* for subgroups within the class, even in the settlement context:

> The settling parties, in sum, achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected. Although the named parties alleged a range of complaints, each served generally as representative for the whole, not for a separate constituency. In another asbestos class action, the Second Circuit spoke precisely to this point: "[W]here differences among members of a class are such that subclasses must be established, we know of no authority that permits a court to approve a settlement without creating subclasses on the basis of consents by members of a unitary class, some of whom happen to be members of the distinct subgroups. The class representatives may well have thought that the Settlement serves the aggregate interests of the entire class. But the adversity among

3

subgroups requires that the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups." In re Joint Eastern and Southern Dist. Asbestos Litigation, 982 F.2d 721, 742-743 (1992), modified on reh'g sub nom. In re Findley, 993 F.2d 7 (1993).

*Amchem Prods., Inc. v. Windsor*, 521 U.S. at 742.

The Supreme Court reiterated this rule in *Ortiz*:

> [I]t is obvious after Amchem that a class divided between holders of present and future claims (some of the latter involving no physical injury and attributable to claimants not yet born) requires division into homogeneous subclasses under Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel. See *Amchem*, 521 U.S., at 627, 117 S.Ct. 2231 (class settlements must provide "structural assurance of fair and adequate representation for the diverse groups and individuals affected"); cf. 5 J. Moore, T. Chorvat, D. Feinberg, R. Marmer, & J. Solovy, Moore's Federal Practice § 23.25[5][e], p. 23-149 (3d ed. 1998) (an attorney who represents another class against the same defendant may not serve as class counsel). FN31
>
> FN31. ... In Amchem, we concentrated on the adequacy of named plaintiffs, but we recognized that the adequacy of representation enquiry is also concerned with the "competency and conflicts of class counsel." Id., at 626, n. 20, 117 S.Ct. 2231 ... ; see also 5 Moore's Federal Practice § 23.25[3][a] (adequacy of representation concerns named plaintiff and class counsel).

*Ortiz*, 527 U.S. at 856. Similarly here, there should have been separate classes and counsel for those class members who have suffered damage in the past and those that have not.

### B. Separate classes and counsel for each state

Separate class representatives must be appointed, even in a settlement class, when the laws of the states differ regarding the underlying claim. *Smith v. Sprint Communications Co.*, 387 F.3d 612, 614-15 (7th Cir. 2004); *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d Cir.1996) aff'd, 521 U.S. 591 (1997). Class members like Objector from states like Texas have a substantially stronger claim than consumers in many other states because privity is not required under Texas law for a breach of warranty claim. Claims by consumers against a Defendant manufacturer require privity in many states, but not others:

> **[A] significant number of jurisdictions require vertical privity in an implied warranty action for direct economic loss.** See, e.g. *Rhodes v. Gen. Motors*, 621 So.2d 945, 947 (Ala.1993); *Rocky Mountain Fire & Cas. Co. v. Biddulph Oldsmobile*, 131 Ariz. 289, 640 P.2d 851, 856 (1982); *Hauter v. Zogarts*, 14 Cal.3d 104, 120 Cal.Rptr. 681, 534 P.2d 377, 383 n. 8 (1975); *Spolski Gen. Contractor, Inc. v. Jett-Aire Corp. Aviation Mgmt. of Cent. Fla., Inc.*, 637 So.2d 968, 970 (Fla.Dist.Ct.App.1994); *Bodymasters Sports Indus. v. Wimberley*, 232 Ga.App. 170, 501 S.E.2d 556, 561 (1998); *Puckett v. Oakfabco, Inc.*, 132 Idaho

4

> 816, 979 P.2d 1174, 1183 (1999); *Connick v. Suzuki Motor Co., Ltd.*, 275 Ill.App.3d 705, 212 Ill.Dec. 17, 656 N.E.2d 170, 180 (1995), *aff'd in part on other grounds, rev'd in part on other grounds*, 174 Ill.2d 482, 221 Ill.Dec. 389, 675 N.E.2d 584 (1996). **Other jurisdictions, however, have eliminated the privity of contract requirement and allow recovery of economic loss from remote manufacturers**. *See, e.g., Morrow v. New Moon Homes, Inc.*, 548 P.2d 279, 289 (Alaska 1976); *Nobility Homes of Tex., Inc. v. Shivers*, **557 S.W.2d 77, 81 (Tex.1977)**; *Cova v. Harley Davidson Motor Co.*, 26 Mich.App. 602, 182 N.W.2d 800, 802 (1970).

*Cole v. General Motors Corp.*, 484 F.3d 717, 728 (5th Cir. 2007)(emphasis added). Thus, class members from Texas have a substantially stronger claim against the manufacturers than class members from many other states. Plaintiffs recognized this problem because they sought separate state subclasses in their Second Amended Complaint. Doc. 13 p. 18.

**IV. Additional Objections to the Settlement**

    **A. Lack of consideration for many class members**

A trial court must also assure that there is adequate consideration for the release of the absent class members' claims:

> trial judges bear the important responsibility of protecting absent class members, "which is executed by the court's assuring that the settlement represents adequate compensation for the release of the class claims."

*In re Pet Food Products Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010), quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 782 (3d Cir. 1995). For most class members, the Settlement Agreement here fails to provide *any* compensation for the release of the class claims, much less adequate compensation. The waiver of rights as to class members who do not have an Eligible Claim lacks consideration. *In re Deepwater Horizon*, 732 F.3d 326, 343 (5th Cir. 2013) ("The fact that these claimants cannot show causation translates to a Settlement that lacks valid consideration."). That is, if a member of the class incurred a loss that is not eligible for a claim payment, then the waiver of rights in the settlement is unenforceable because it lacks consideration.

The Settlement makes the problem clear:

> If a Settlement Class Member does not have an Eligible Claim, he is not entitled to any remedy under this Agreement. Each Eligible Claim must be submitted and processed in accordance with the Claims Program described below

Settlement ¶ 5.5. For those class members who do not have an Eligible Claim, (1) the Court lacks jurisdiction to release their claims and (2) the release is not supported by consideration. Because the Settlement lacks consideration for most class members, the Court may not approve it.

### B. Failure to account for unexpended funds

Plaintiffs say that the settlement creates a *non-reversionary* settlement fund of $103.9 million. Doc. 25-1 p. 1. But this is a claims-made settlement and is not a pro-rata distribution. Given historic class action claims rates, there will almost certainly be money left over in the fund after all payments are made. Each claim is capped: "the maximum amount payable could ultimately be the full value of the claim without adjustment." Doc. 25-1 p. 8. *But the settlement wholly fails to provide for those leftover funds, and the notice failed to notify class members as to the disposition of unclaimed funds.* The only mention of unexpended funds – in ¶ 4.5 – applies only if the Settlement is not approved. Nowhere does the Settlement provide for the disposition of unexpended funds if the Settlement if finally approved.

The Third Circuit has held:

> We add today that one of the additional inquiries for a thorough analysis of settlement terms is the degree of direct benefit provided to the class. In making this determination, a district court may consider, among other things, the number of individual awards compared to both the number of claims and the estimated number of class members, the size of the individual awards compared to claimants' estimated damages, and the claims process used to determine individual awards. Barring sufficient justification, cy pres awards should generally represent a small percentage of total settlement funds.

*In re Baby Products Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013). The Court here cannot make that determination because the Settlement does not address the likely scenario where there are unclaimed funds at the end of the claims period. In addition, the Court should "condition approval of a settlement on the inclusion of a mechanism for additional payouts to individual class members if the number of claimants turns out to be insufficient to deplete a significant portion of the total settlement fund." *Id.*

Because the Settlement is incomplete as to this material element, and because the Notice failed to inform class members as to the resolution of this material matter, the Court should not approve the Settlement.

### V. Objections Regarding Attorneys' fees

When class counsel seeks to reduce the benefits to the class with a fee award, they become an adversary of the class and the district court becomes a fiduciary to protect the class:

> During the fee-setting stage of common fund class action suits such as this one, "[p]laintiffs' counsel, otherwise a fiduciary for the class, ... become[s] a claimant against the fund created for the benefit of the class." This shift puts plaintiffs' counsel's understandable interest in getting paid the most for its work representing the class at odds with the class' interest in securing the largest possible recovery for its members. Because "the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding

attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs." As a fiduciary for the class, the district court must "act with 'a jealous regard to the rights of those who are interested in the fund' in determining what a proper fee award is."

*In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 994-995 (9th Cir. 2010)(citations omitted). Objector objects to the Settlement and Class Counsel's fee request because they failed to comply with the requirements of Rule 23.

Rule 23 requires district courts to give class members a full and fair opportunity to contest class counsel's fee motion:

> Attorney's Fees and Nontaxable Costs. In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:
>
> (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, **directed to class members in a reasonable manner**.
>
> (2) A class member, or a party from whom payment is sought, may object to the motion.
>
> (3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a). ...

FED. R. CIV. P. 23 (h)(emphasis added). The Court did not direct class counsel's motion for fees to class members in a reasonable manner because it set an objection deadline *before* the due date for the fee request. *See,* Doc. 28 (preliminary approval order) at 7-8 (failing to set a deadline for the filing of the fee motion). But ultimately it is Class Counsel's duty to comply with the rule, and as of the writing of these objections, no fee motion had yet been filed in the docket.

The Ninth Circuit reversed a district court for failing to give class members adequate time to review and object to class counsel's fee request:

> The plain text of the rule requires that any class member be allowed an opportunity to object to the fee "motion" itself, not merely to the preliminary notice that such a motion will be filed.

*In re Mercury Interactive*, 618 F.3d at 993-994. That Court went on to explain that the intent of the rule was to ensure that class members have sufficient time to review the motion and supporting documentation:

> The Advisory Committee Notes to the 2003 amendments to Rule 23(h) further support this reading of the rule. They elaborate that "[i]n setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion." Fed. R.

7

> Civ. P. 23, 2003 Advisory Committee Notes, ¶ 68. The Advisory Committee Notes further contemplate that, in appropriate cases, the court will permit an "objector discovery relevant to the objections." *Id.* ¶ 69. Clearly, the rule's drafters envisioned a process much more thorough than what occurred in this case.

*Id.* at 994. Finally, the Ninth Circuit noted that commentators agree that class members should be given sufficient opportunity to review and challenge class counsel's fee request:

> Commentators also agree with this logical interpretation of the rule. For example, Moore's Federal Practice counsels that "[a]ny objection deadline set by the court should provide the eligible parties with an adequate opportunity to review all of the materials that may have been submitted in support of the motion and, in an appropriate case, conduct discovery concerning the fees request." 5 Moore's Federal Practice § 23.124[4] (Matthew Bender 3d ed. 2009). Allowing class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported is essential for the protection of the rights of class members. It also ensures that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested, information to evaluate the reasonableness of a proposed fee.

*Id.*

Importantly, a district court is required to give class members a full and fair opportunity to contest class counsel's fee motion.

> Included in that fiduciary obligation is the duty to ensure that the class is afforded the opportunity to represent its own best interests. When the district court sets a schedule that denies the class an adequate opportunity to review and prepare objections to class counsel's completed fee motion, it fails to fulfill its fiduciary responsibilities to the class.

*Id.* at 995. The Ninth Circuit case is on point and reversed the district court for using the very procedure followed here:

> We hold that the district court abused its discretion when it erred as a matter of law by misapplying Rule 23(h) in setting the objection deadline for class members on a date before the deadline for lead counsel to file their fee motion. Moreover, the practice borders on a denial of due process because it deprives objecting class members of a full and fair opportunity to contest class counsel's fee motion.

*Id.* at 993.

The relevant facts in this case are identical to the facts in *Mercury Interactive*. Like this case, the notice there provided that counsel would "request ... attorneys' fees in the amount of 25% (29.375 million)." *Id.* at 990. The notice required class members to file objections two weeks before class counsel filed the motion and supporting documentation. *Id.* The filing showed for

8

the first time the number of hours worked and billing rates to support the fee request under the percentage method. *Id.* at 991.

Here, the notice merely provided that:

> The lawyers who represent the Settlement Class will ask the Court for reimbursement of their out of pocket expenses and an award of attorneys' fees and costs based on their work in this litigation in an amount not to exceed $18.5 million in attorneys' fees and $500,000 in costs.

Notice p. 8. Thus, under *In re Mercury Interactive Corp. Securities Litigation* approval of the settlement and class counsel's fee request would violate Rule 23 and class members' due process rights.

The failure to file the fee motion before the objection deadline is particularly troublesome in this case because the fees will be based on hours of time spent:

> The amount of the award will in large part be based on the amount of time spent by the lawyers litigating this case since 2010.

Notice p. 8. Class Counsel took depositions of merely *two* CertainTeed employees. Doc. 26, p. 7. The docket sheet reveals there was not a single contested motion. It is unfathomable that Class Counsel could run up the requested $18.5 million in fees on an hourly basis for the short time this case was pending. Yet, the failure to file the fee motion makes it impossible for class members to determine the reasonableness of the fee or the settlement.

## VI. Prayer

Regarding the proposed class settlement, the Court is limited to a single decision: approve or disapprove the settlement. *Evans v. Jeff D.*, 475 U.S. 717, 726-727 (1986). The Court may not amend the settlement. *Id.* Thus, Objector prays that the Court disapprove the settlement and deny the motion to certify. If the Court nevertheless approves the settlement, Objector prays that the Court deny the requested fees to Class Counsel. Objector further prays that the Court grant Objector such other and further relief as to which Objector may be entitled.

s/Jeffrey Weinstein
Jeffrey Weinstein
TX State Bar No. 21096450
WEINSTEIN LAW
518 East Tyler Street
Athens, TX 75751
903/677-5333
903/677-3657 – facsimile

**ATTORNEY FOR OBJECTOR**

## Certificate of Service

I hereby certify that a copy of the above and foregoing document has been served upon all counsel of record on December 31, 2013, including the following:

Clerk of the Court
United States District Court for the
Eastern District of Pennsylvania
Byrne Federal Courthouse
601 Market Street
Philadelphia, PA 19106-1797

AUDET & PARTNERS, LLP
Michael McShane, Esq.
221 Main Street, Suite 1460
San Francisco, CA 94105

BERGER & MONTAGUE, P.C.
Laddie Montague, Jr., Esq.
Shanon J. Carson, Esquire
1622 Locust Street
Philadelphia, PA 19103-6365

PEPPER HAMILTON LLP
Robert L. Hickok, Esquire
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19102

s/Jeffrey Weinstein
Jeffrey Weinstein

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: CERTAINTEED FIBER CEMENT SIDING LITIGATION | MDL DOCKET NO. 2270 |
| THIS OBJECTION RELATES TO ALL CASES | |

### DECLARATION OF JAMES BLAKE, JR.

1. My name is James Blake, Jr. I am capable of making this Declaration. The facts stated in this Declaration are within my personal knowledge and are true and correct.

2. I am an individual who owned as of September 30, 2013, a house located at 4410 Merlin Drive, Garland, Texas, 75041, on which the Siding was installed on or before September 30, 2013. The address contains a single structure containing the Siding.

3. I did not file a claim in court regarding my Siding. I am not CertainTeed's legal representative, assign, or successor. I am not a member of the Judge's immediate family.

4. My address is 4410 Merlin Drive, Garland, Texas, 75041. My telephone number is 972-278-3125, but I request that any communications be made through my counsel.

5. My objections are set out in the Objections document to which this declaration is attached. I have retained the attorneys at Weinstein Law to represent me in seeking disapproval of the settlement and Class Counsels' fee request.

6. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 30, 2013 in Athens, Texas.

*James E. Blake, Jr.*
James Blake, Jr.

11