IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRCIT OF PENNSYLVANIA

**IN RE: CERTAINTEED FIBER CEMENT**
**SIDING LITIGATION**                                **MDL DOCKET NO. 2270**

**Comes Now**
**J. Michael Scott**
**215 Roberts Road**
**Columbia Falls, MT 59912**

**1.1 y. Objects** to the limitation of **Qualifying Damage, Definitions.** Proposed limitation of 3/16"for edge shrinkage, and of 5/16" for window and door abutment, and of ½ "for warping or bowing is wholly inadequate and would leave the proposed unrepaired installation in an unsightly and obvious state of disrepair and would appear as less than a businesslike and professional installation, all affecting enjoyment of the property and resale value.

**Motion** to utilize more appropriate limitations for edge shrinkage which would be 1/8", and of 3/16" for window and door abutment, and of 3/8" for warping or bowing.

**2.11 Objects** to the certification of consolidated actions as a national settlement class. Namely that it is not in the best interests of the proposed Members as the proposed terms of settlement are not fair, adequate for an equitable compensation for damages to Class Members.

**4.1 Objects** to the total aggregate proposed payment cap of $103.9 million as being wholly inadequate. Class Members have not been afforded or provided a computation of the total product sales which occurred nationally from 1999 to present for the defective siding, nor has there been an engineering or estimate as to the total product failure expected based on current failure rates going forward from a materials engineering standpoint. Failures for this product can occur very slowly over time, even several years to exhibit failure conditions. For example, even a modest expected failure rate of 25%, the proposed $103.9 million cap would be wholly inadequate going forward for the settlement period.

**7.2 Objects** to the RS Means method for computing life expectancy and useful life as being inadequate and not applicable to the deprecation of siding materials: and **Objects** to the application of the RS Means method as the method for computation of payments. The RS Means method overvalues the first few years of life, and undervalues later life usefulness. The RS Means method has been arbitrarily applied in this instance and is not accurate for useful life depreciation. CertainTeed extensively advertised the product as having a 50 year life. Pro rata life expectancy based on CertainTeed life claims is 2% per year over the 50 year life.

As a specific example where the RS Means method is wholly inaccurate for its application for useful life would be as an illustrative example, the five year life. RS Means would depreciate the

material 40% giving only a useful life of 60% remaining after only 5 years. This is totally inaccurate. Whereas based upon the advertised fifty year life, there would be a 10% depreciation and a 90% useful life expectancy as the most applicable and accurate case.

**Motion** to utilize the straight line depreciation method at 2% per year over a fifty year life for purposes of compensation for proposed Class Members.

**7. a. Objects** to the limitation of **Qualifying Damage** as being limited to Wall Sections. Some walls show the appearance of failures more quickly than others based on orientation to the weather and exposure. Damage to defective siding can occur more slowly on some walls than others. The mere fact that one wall exhibits failure and another wall does not, depends on largely as to orientation and years of exposure and not as to the integrity of the underlying material. In observed cases it may take five or six years to exhibit signs of failure. The mere fact that one wall shows signs of failure is evidence enough that the underlying material was defective in the first place. And that going forward that other walls will have a high probability of failure over time, albeit more slowly than another wall.

**Motion** that if a wall exhibits 5% or more failure that the entire wall be replaced and that if 10% or more of any structure exhibits signs of failure, that the entire material shall be replaced on the structure, and not limited to "per each wall."

**7.3 Objects** to the initial payment of 50% of the calculated compensation. This will provide undue hardship on the Class Members to come up with adequate funds for repair, especially after calculating for depreciation.

**Motion** that the initial payment shall be 75% of the calculated compensation.

**Objects** to the wording that final claim or second payment would be reduced for usage.

**Motion** that the final claim or second payment be reduced for usage based upon the date of the initial application for claim and that if funds are remaining that the second payment receive accrued interest from the time of initial application until the time of remittance of the second payment.

Neither myself nor my lawyer will be present at the Final Hearing.

There is only one structure, my personal home, address below, affected by the defective siding.

J. Michael Scott
215 Roberts Road
Columbia Falls, MT 59912
Telephone 406-897-2549
Cell 406-600-6633
Email mkowoby@yahoo.com

*J. Michael Scott*
*December 26, 2013*