**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: CertainTeed Fiber Cement Siding Litigation | : | |
| ------------------------------------------------------------------ | : | MDL NO. 11-2270 |
| This Document Relates to: All Actions | : | |
| ------------------------------------------------------------------ | : | |

**<u>CLASS COUNSELS' STATUS REPORT REGARDING OBJECTORS</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. THE BANDAS OBJECTORS .............................................................................................. 2

    A. The Court Should Not Entertain Bandas' Objection While He Has Refused To Even Enter An Appearance ....................................................................................... 2

    B. Specific Examples of Bandas' Prior Conduct .......................................................... 4

        1. Bandas' Recent Conduct in the Western District of Washington .............. 5

        2. Bandas' Recent Conduct in Illinois ............................................................ 5

        3. Bandas' Recent Conduct in the Eastern District of Louisiana ................... 6

    C. The Jabrani Objectors .............................................................................................. 8

III. ARGUMENT ...................................................................................................................... 11

    A. Bandas and Manochi Have Violated the Rules of Professional Conduct in Pennsylvania and Texas ......................................................................................... 11

    B. Ghost-Writing Filings Without Entering an Appearance Violate Rule 11 and Are Forbidden in Federal Courts ........................................................................... 12

# TABLES OF AUTHORITIES

**Cases**

*Ayvazian v. Moore Law Group*,
    2012 U.S. Dist. LEXIS 88556 (C.D. Cal. June 26, 2012) .................................................. 14

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ............................................................................ 15

*Garcia v. Jenkins/Babb LLP*,
    2012 U.S. Dist. LEXIS 125844 (N.D. Tex. Sept. 5, 2012) ............................................... 15

*In re Am. Bus. Fin. Servs. Noteholders Litig.*,
    2008 U.S. Dist. LEXIS 95437 (E.D. Pa. Nov. 21, 2008) .................................................... 1

*In Re Chinese Manufactured Drywall Products Liability Litigation*,
    MDL 2047 (E.D. La.) [MDL Rec. Doc. No. 15859] ......................................................... 6

*In re Mungo*,
    305 B.R. 762 (Bnkr. D.S.C. 2003) .................................................................................... 14

*Karpov v. Karpov*,
    2013 U.S. Dist. LEXIS 22808 (D. Del. Feb. 20, 2013) .................................................... 14

*Ricotta v. California*,
    4 F. Supp. 2d 961 (S.D. Cal. 1998) .................................................................................. 13

*Z.A. v. San Bruno Park Sch. Dist.*,
    165 F.3d 1273 (9th Cir. 1999) ......................................................................................... 14

**Other Authorities**

John E. Lopatka and Hon. D. Brooks Smith,
    *Class Action Professional Objectors: What to Do About Them?*,
    39 Fla. St. U. L. Rev. 865 (2012) ....................................................................................... 2

**Rules**

Fed. R. Civ. P. 11 ........................................................................................................................ 13

Pennsylvania Rules of Professional Conduct. Rule 3.1 ............................................................ 4, 6

Tex. R.P.C. Rule 5.04(b) ............................................................................................................ 12

Tex. R.P.C. Rule 5.05(a) ............................................................................................................ 12

I.      **INTRODUCTION**

As set forth in Plaintiffs' Motion for Final Approval of Class Action Settlement ("Motion for Final Approval"), the reaction of the Settlement Class to the proposed Settlement has been overwhelmingly positive. CertainTeed estimates that the Siding has been installed on an estimated **300,000** structures in the United States. Yet, only 25 objections, an extraordinarily small percentage of the Class, were initially received. As detailed in Plaintiffs' Motion for Final Approval, most of these objections were the result of misunderstandings about the Settlement, and following the close of the period for submitting objections, 16 objections were completely withdrawn, and one objection was partially withdrawn.

Since the filing of Plaintiffs' Motion for Final Approval, two more sets of objectors have withdrawn their objections, both of whom were represented by counsel (including the Patota, *et al.* objection and the Juelich objection). Thus, there are only **seven** remaining objections (including the partial objection) before the Court. All of the remaining objections should be overruled as they raise no valid basis for denying final approval to the Settlement. *See In re Am. Bus. Fin. Servs. Noteholders Litig.*, 2008 U.S. Dist. LEXIS 95437, at *18-21 (E.D. Pa. Nov. 21, 2008) (O'Neill, J.) (granting final approval to settlement with 32 written objections, 7 verbal comments and/or objections made at the final fairness hearing, and 80 class members who opted out of the settlement out of a class of approximately 29,000). Of the remaining seven objections, six are *pro se* and are not expected to appear before the Court at the Final Approval Hearing. Plaintiffs addressed these objections in detail in their Motion for Final Approval. Only one of the remaining objections is lawyer-driven, and it is clearly motivated by considerations outside the parameters of the Settlement Agreement. Plaintiffs address this objection in detail below so the Court may rule on a more complete record.

## II.     THE BANDAS OBJECTORS

Following dissemination of the Court-approved notice to Settlement Class Members in this case, professional and serial objector[1], attorney Christopher Bandas (of Corpus Christi, Texas), filed with this Court a ghost-written objection on behalf of Amirali Jabrani, Janet Jabrani, and Real Homes, Inc. Bandas is a chronic objector, a vexatious litigant, and, in this case, he has knowingly violated Rule 11[2] of the Federal Rules of Civil Procedure and the Pennsylvania Rules of Professional Conduct (as well as those of his home jurisdiction of Texas). (*See* Class Counsel's Motion to Compel Depositions of the Bandas Objectors and Rule to Show Cause Why the Bandas Objectors Should Not Be Sanctioned ["Motion to Compel"] [Docket No. 79]).[3] Worse, knowing his own history, Bandas has refused to even enter his appearance in this case, and instead has elected to hide behind what is now a string of "local counsel" while he has directed the filing of improper pleadings, instructed his clients to violate court orders, and wasted this Court's time and resources all in the hopes of extorting money from this class action settlement.

### A.     The Court Should Not Entertain Bandas' Objection While He Has Refused To Even Enter An Appearance

The correspondence and retainer agreements now obtained by Class Counsel show that Bandas represents "Objectors" Amirali and Janet Jabrani, a husband and wife who live in the St.

---

[1] Professional objectors have been described as "attorneys who oppose settlements on behalf of nonnamed class members and threaten to file meritless appeals of the final judgment merely to extract a payoff." *See* John E. Lopatka and Hon. D. Brooks Smith, *Class Action Professional Objectors: What to Do About Them?*, 39 Fla. St. U. L. Rev. 865, 866 & n.2 (2012) (citing cases).

[2] Plaintiffs and Class Counsel are not formally moving for sanctions under Rule 11; however, they reserve the right to do so at a later date.

[3] In addition to the conduct outlined in this report, the Motion to Compel contains detailed references to Bandas' conduct in class actions around the country. Rather than file duplicative briefing, Class Counsel incorporates that briefing here by reference.

2

Louis, Missouri area. Bandas, however, has refused to enter his appearance in this litigation, and instead, has engaged at least three different sets of lawyers to be the front for a string of improper filings related to the objection of his clients, while he attempts to remain beyond the Court's jurisdiction. Bandas initially retained Christopher Arfaa of Harrisburg, Pennsylvania to file his objection to the settlement. After being shown proof of Bandas' track record of objections and sanctionable conduct (including *pro hac vice* revocations), Arfaa prudently recognized that assisting Bandas would not be proper and withdrew his appearance. (*See* Motion to Compel [Docket No. 79].)

After Arfaa withdrew, the Jabrani Objectors were left for a week without any official counsel of record. Bandas next convinced Gary P. Lightman and Glenn A. Manochi of Philadelphia, Pennsylvania to serve as his local counsel.[4] However, once again, Bandas failed to enter his appearance when Lightman and Manochi were brought into the matter. Bandas was creatively listed as "of counsel" on the filings relieving Arfaa and entering Lightman and Manochi.

Just as they did with Arfaa, Class Counsel immediately provided Lightman and Manochi with documented proof of Bandas prior misdeeds, including Arfaa's decision to withdraw his appearance in this case. (*See* Declaration of Michael McShane In Support of Class Counsel's Status Report on Objectors ["McShane Decl."] Exhibit A.) Unfortunately, unlike Arfaa, Lightman and Manochi have not been deterred. Indeed, Manochi's response to the back and

---

[4] While Class Counsel are obviously familiar with the practice of retaining local counsel, in our collective experience encompassing many decades of law practice, we have never encountered a situation, other than Bandas, where local counsel is retained but the primary attorney remains hidden from the Court via an intentional failure to enter an appearance so he or she cannot be subject to the jurisdiction of the Court and therefore answerable for his or her tactics. This is improper.

3

forth it took to schedule the Jabrani's depositions (despite the Court's Order) was to flippantly tell one of the attorneys for the Class that "this should be fun."

In fact, this is no game, and Bandas' frivolous objection for the purpose of attempting to extort this settlement and delay substantial immediate cash relief for Eligible Class Members who have submitted claims is not conduct becoming to an officer of the court. Moreover, by assisting Bandas in his effort to interfere with this Court and the final approval process, Manochi and Lightman may also be in violation of Rule 11, as well as the Pennsylvania Rules of Professional Conduct. PRPC Rule 3.1 provides that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." By assisting Bandas with his boilerplate objection, knowing full well it is asserted for the sole reason of exacting some sort of ransom from this settlement, Lightman and Manochi have asserted a frivolous argument without good faith.

Through their conduct, these attorneys are flouting the rules of this Court in order to delay the settlement of this class action after years of hard fought litigation, thus potentially delaying relief to thousands of Settlement Class Members, all so they may extort money from Class Counsel. The objection should be overruled.

### B.  Specific Examples of Bandas' Prior Conduct

Although he has intentionally sought to conceal himself from the Court, Bandas has at all times represented Objectors Amirali Jabrani, Janet Jabrani, and Real Homes, Inc. (collectively the "Jabrani Objectors"). Both of the Jabranis testified that they were represented by Bandas alone. (*See* Declaration of Michael McShane ["McShane Decl."] Exhibits B and C, excerpts from the Depositions of Amirali Jabrani 125:9-15 and Janet Jabrani 26:14-27:13.) The retainer

agreements produced by the Jabranis further reflect Bandas' status as the Jabranis' attorney. (*See* McShane Decl. Exs. D, E, and F.)

### 1. Bandas' Recent Conduct in the Western District of Washington

Bandas' efforts to conceal himself and refusal to enter an appearance here is unsurprising given the reception federal courts have given his past conduct. As a recent example, on August 20, 2013, the Hon. James L. Robart of the United States District Court for the Western District of Washington revoked Bandas' *pro hac vice* admission as a sanction for his refusal to post an appeal bond as ordered by the court. The *Clearwire* case[5] was a class action to which Bandas objected, had his objection overruled, and even though he tried to drop his appeal after the bond order was issued, Judge Robart refused to let Bandas off the hook that easily. Judge Robart required an appearance by Bandas, and at the hearing revoked Bandas' *pro hac vice* admission as a sanction. (*See* McShane Decl. Ex. G.)

### 2. Bandas' Recent Conduct in Illinois

In another Bandas incident, in May 2010, the Illinois Attorney Registration and Disciplinary Commission sanctioned Alan Barinholtz, who had assisted Bandas as local counsel in filing an objection to a class action settlement. According to the hearing records, Bandas represented to Barinholtz that he was an attorney from Texas and that "when he had filed objections to class action settlements in other jurisdictions, he had been able to obtain a $100,000 settlement of his attorneys' fees." Barinholtz failed to take any steps to investigate Bandas' reputation or his past tactics, which ultimately resulted in his disciplinary proceedings. The Illinois Disciplinary Commission concluded that had Barinholtz bothered to conduct any inquiry into Bandas' previous filings he would have "discovered cases in which the courts found that

---

[5] *See Dennings v. Clearwire Corp.*, No. 2:10-cv-1859-JLR (W.D. Wash.).

Bandas's objections lacked substantive merit; failed to meet the procedural requirements for the filing of such objections; were generic and bore no particular relationship to the circumstances of each settlement; and that Bandas's and local counsel's filing of the objections had been found to be attempt [sic] by Bandas and local counsel to extort money from the class and/or class counsel." Ultimately the Illinois Disciplinary Commission found that Barinholtz violated six Illinois disciplinary rules by advocating for Bandas' frivolous filings. (*See* McShane Decl. Ex. H.)

Bandas' current local counsel in this case, Lightman and Manochi, are similarly in violation of the Pennsylvania Rules of Professional Conduct. They have been provided with numerous public documents demonstrating Bandas' history of filing objections, but have intentionally decided to ignore these facts. (*See* McShane Decl. Ex. A.) By doing so they have advanced arguments in this Court that they knew or should have known have no merit. Rule 3.1 provides that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." Here, Lightman and Manochi, by acting as the "front" for Bandas' objection racket, have attempted to harm the Settlement Class, interfere with these proceedings, and have wasted this Court's time.

### 3. Bandas' Recent Conduct in the Eastern District of Louisiana

Bandas recently represented seven objectors to a settlement agreement in *In Re Chinese Manufactured Drywall Products Liability Litigation*, MDL 2047 (E.D. La.) [MDL Rec. Doc. No. 15859] (hereinafter, "*Chinese Drywall*"). As in the instant litigation, these objectors presented meritless objections to the *Chinese Drywall* settlement for the sole purpose of extorting an unearned legal fee for Bandas. Incredibly, Bandas' office manager (who is featured on his

6

website), Jan Petrus, was one of the seven objectors. Class Counsel sought to depose these objectors who, as in the instant litigation, went to great lengths to evade service with subpoenas. (*See* McShane Decl. Exhibit L.) Upon learning that class counsel in *Chinese Drywall* intended to conduct depositions, several of the Drywall Objectors (including Jan Petrus) sought to withdraw their objections to the settlement in order to avoid being deposed. (*See* Jan Petrus' Motion to Dismiss Objection [MDL Rec. Doc. No. 15957]; Earnest Vitela's Motion to Dismiss Objection [MDL Rec. Doc. No. 15979]; and E&E Construction Co.'s Motion to Dismiss Objection [MDL Rec. Doc. No. 16040].)

After successfully serving the remaining Drywall Objectors with subpoenas, Class Counsel in *Chinese Drywall* moved forward with the depositions of the remaining Drywall Objectors. At these depositions it was learned that the remaining Drywall Objectors had no knowledge of the terms of the settlement they were objecting to; that Bandas had used a third-party law firm (the Batman Law Firm) to solicit clients for purposes of objecting to settlement; that the Drywall Objectors were asserting entirely pretextual objections to the settlement; and that the Drywall Objectors had been solicited to pursue their objections with a promise of a $5,000 bounty as incentive for pursuing their baseless objections. (*See,* McShane Decl., Ex. M.) The depositions conducted in the instant litigation reveal that the Jabrani Objectors are pursuing their objections under nearly identical circumstances.

After successfully serving Mr. Vitela with a subpoena to conduct his deposition in *Chinese Drywall*, his counsel moved in the United States District Court for the Southern District of Texas to quash the subpoena. (*See* McShane Decl. Ex. N.) Following a hearing before the Southern District of Texas, the court refused to quash the subpoena and Mr. Vitela was ordered to appear for a deposition. (*See* McShane Decl. Ex. O.) Mr. Vitela remains in contempt of Judge

Ramos' order requiring his appearance at a deposition as he did not appear at the time and location set for his deposition.

Bandas and his objectors ultimately capitulated after it became evident that Class Counsel in *Chinese Drywall* were unwilling to agree to pay Bandas an unearned legal fee in exchange for him withdrawing his clients' objection. For this reason, the Drywall Objectors voluntarily withdrew their objection to the settlement. [MDL Rec. Do. No. 16357]. However, at the time the Drywall Objectors sought to withdraw their objection, Class Counsels' motions for sanctions against Bandas and his clients remained pending before Judge Fallon, [MDL Rec. Doc. Nos. 15982 and 16073], who allowed the withdrawal of the objection but took all other matters before the court under advisement (this includes Class Counsels' request for sanctions which remains pending before Judge Fallon). [MDL Rec. Doc. No 16570].

### C. The Jabrani Objectors

On December 31, 2013, the Jabrani Objectors filed a twenty-four page objection to the Settlement in this case. (Docket Nos. 50-52.) The objection was signed by the Jabranis' attorney, Christopher M. Arfaa.

On January 9, 2014, Arfaa filed a notice of appearance on behalf of the Jabrani Objectors. (Docket No. 68.) On January 12, 2014, Class Counsel served Arfaa with deposition notices for the Jabrani Objectors. Class Counsel contacted Arfaa on January 13, 2014 to discuss the objections of his "clients" to the settlement and to arrange a time for their depositions. Arfaa responded that, in fact, he had been retained by Bandas to act solely as "local counsel" for the Jabrani Objectors and was not authorized to accept service of the deposition notice on their behalf – this despite being the *only* attorney of record in this matter for the Jabranis. Arfaa further responded that he did not believe the Jabrani Objectors were subject to the jurisdiction of

8

this Court – despite having filed objections in this Court – and directed Class Counsel to speak with Bandas directly regarding the depositions of the objectors. (*See* McShane Decl. Ex. I.)

On January 22, 2014, Class Counsel again reached out to Arfaa because **Bandas refused all contact with Class Counsel** regarding the scheduling of the Jabranis' depositions (or anything else). Arfaa again declined to accept service of anything on behalf of his "clients." Class Counsel provided Arfaa with a list of cases reflecting Bandas' role as a professional objector, including his recent problems in the Western District of Washington. (*See* McShane Declaration Ex. J.) Two days later, on January 24, 2014, following conversations with Class Counsel, Arfaa filed a notice of withdrawal of appearance and stated that he was "engaged as local counsel for the Jabrani Objectors by their main counsel, Christopher A. Bandas, Esq…." (Docket No. 77.)

On January 28, 2014, this Court ordered the depositions of the Jabrani Objectors to take place starting no later than 9:00 A.M. and all to be completed by February 3, 2014. (Docket No. 85.) The Court further ordered the Jabrani objectors to show cause why they should not be sanctioned. (*Id.*)

On January 30, 2014, Gary P. Lightman and Glenn A. Manochi entered their appearances on behalf of the Jabrani Objectors as their "attorneys." (Docket No. 90.) Again, even though the notice of appearance specifically listed Lightman and Manochi as "local counsel," Bandas did not attempt to file a motion for admission *pro hac vice* or otherwise properly enter his appearance. That same day, Manochi filed a baseless motion for reconsideration on behalf of the Jabrani Objectors. In an attempt to resolve that motion, Class Counsel reached out to Mr. Manochi who informed Class Counsel that the Jabranis would be retaining yet a fourth law firm to represent them with respect to their objection – counsel in Missouri to defend their depositions. (*See* McShane Decl. Ex. K.)

Despite the Court's January 28, 2014 Order, the Jabranis' counsel repeatedly resisted Class Counsel's attempts to schedule these depositions and argued that their clients, despite filing an objection in the Eastern District of Pennsylvania, were not subject to the Court's jurisdiction and would therefore have to be subpoenaed. The Jabranis' continued this meritless argument even into the deposition when their latest attorney, Pete Woods, stated on the record that they were only appearing as a "courtesy." (*See* Ex. B, A. Jabrani Depo. 4:24-5:21.) During the deposition, Woods continued to assert objections that his client was not obligated to attend the deposition. (*See* Ex. B, A. Jabrani Depo. 17:1-20:19.)

During the Jabranis' depositions they were questioned about the repeated attempts to serve them with subpoenas and their apparent attempts to avoid service. When told that they were observed by the process server to be hiding in their residence, the Jabranis falsely claimed that they could not hear the process server knocking at the door because they were hard of hearing. Not once during the four hour depositions of each of the Jabranis did either of them ask the examiner to repeat a question because they could not hear the question. (*See* Ex. B, A. Jabrani Depo. 8:16-10:6.)

More importantly, when asked *if they had ever actually reviewed the Settlement Agreement or calculated how much they would receive from the settlement*, they testified that they had not. (A. Jabrani Depo. 56:6-18; 64:12-16; J. Jabrani Depo. 14:2-11.) When asked if he knew how the settlement was actually going to be distributed, Mr. Jabrani did not know. (A. Jabrani Depo. 47:10-48:6.) Mr. Jabrani seemed to believe, incorrectly, that some Settlement Class Members would get more money simply for being earlier claimants. (A. Jabrani Depo. 53:9-53:23.) Nor did Mr. Jabrani ever compare what he would be entitled to under his warranty versus the settlement; indeed, *Mr. Jabrani had never even read his warranty*. (A. Jabrani Depo.

10

75:10-24.) Moreover, while Mr. Jabrani stated that part of his objection to the settlement was based on the payment of attorneys' fees to Class Counsel, he testified that he would be "fine" with Bandas' fees "substantially exceed[ing]" his own recovery. (A. Jabrani Depo. 120:8-122:5.) Incredibly, Mrs. Jabrani testified that she never even read the objection before executing the accompanying declaration. (*See* Ex. C, J. Jabrani Depo. 22:3-23:11.)

## III.   ARGUMENT

Class Counsel respectfully request that the Court overrule the Jabranis' objection, and issue an order that Bandas show written cause as to why he has not entered his appearance and why his well-documented conduct does not violate Rule 11 of the Federal Rules of Civil Procedure, and the Rules of Professional Conduct in Pennsylvania and those of Bandas' home jurisdiction of Texas. By ghost-writing and causing to be filed frivolous objections to this Settlement and failing to enter an appearance before this Court, Bandas has sought to interfere with the implementation of this Settlement and the proceedings before this Court. Bandas has further caused unnecessary expenditures of time and cost in this case.

### A.   Bandas and Manochi Have Violated the Rules of Professional Conduct in Pennsylvania and Texas

By inserting himself into this Action, Bandas is subject to the Pennsylvania Rules of Professional Conduct. Those Rules provide that "[a] lawyer shall not form a partnership with a non-lawyer if any of the activities of the partnership consist of the practice of law." Pa. R.P.C. Rule 5.4(b). Further, the Rules provide that "[a] lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so." Pa. R.P.C. Rule 5.5(a).

Bandas' conduct violates these provisions. First, by entering into an agreement with his clients and suggesting that they may be entitled to a cut of his "winnings" after he holds the

11

Settlement Class hostage under a false argument of due process, Bandas has formed a partnership with a non-lawyer where the activities of the partnership constitute the practice of law. (*See* McShane Decl. Ex. D.) Second, by authorizing and causing to be filed legal documents without revealing to the Court that he is the author, Bandas is in fact ghost-writing these submissions, which are then filed by his clients *"pro se"* or by local counsel.

Although Manochi was not involved in filing the Jabranis' original objection, Manochi has assisted Bandas by agreeing to pursue the objection while Bandas remains hidden. As noted above, Manochi was made aware of Bandas' disciplinary history and knows that Bandas' decision to stay hidden from this Court is because of his past misconduct and fear of reprisal if he becomes known to the Court. In fact, if Bandas had tried to be admitted *pro hac vice*, he likely would have been denied because of the recent incident in Washington.

Even if Bandas' ignorance of the Rules of Professional Conduct here in Pennsylvania were a defense to his actions (and it is not), the Texas Disciplinary Rules of Professional Conduct contain nearly identical language.[6] Bandas is a member of the Texas bar.

### B. Ghost-Writing Filings Without Entering an Appearance Violate Rule 11 and Are Forbidden in Federal Courts

Bandas' ghost-writing scheme is forbidden by Rule 11 and similar conduct has been sanctioned by courts in nearly every circuit. By attempting to play the role of "puppet master" and evade the Court's jurisdiction by not entering an appearance, Bandas is making a mockery of the Rules of this Court and those that govern practitioners in federal courts. Rule 11 states, in pertinent part:

---

[6] *See* Tex. R.P.C. Rule 5.04(b) ("A lawyer shall not form a partnership with a non-lawyer if any of the activities of the partnership consist of the practice of law."); Tex. R.P.C. Rule 5.05(a) ("A lawyer shall not: (a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction; or (b) assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law.").

(a) Signature. Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number. Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit. The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Several courts have applied Rule 11 to cases involving ghost-writing and observed that "attorneys cross the line, however, when they gather and anonymously present legal arguments, with the actual or constructive knowledge that the work will be presented in some similar form in a motion before the Court. With such participation the attorney guides the course of litigation while standing in the shadows of the Courthouse door." *Ricotta v. California*, 4 F. Supp. 2d 961, 987 (S.D. Cal. 1998).

A federal judge in the District of Delaware recently found that ghost-writing as "a practice is strongly disapproved as unethical and as a deliberate evasion of the responsibilities imposed on attorneys. Ghost-writing frustrates the application of Fed. R. Civ. P. 11 which

13

requires all attorneys to verify through their signatures that there are sufficient grounds for the arguments in their pleadings." *Karpov v. Karpov*, 2013 U.S. Dist. LEXIS 22808, at *10 n.3 (D. Del. Feb. 20, 2013); *see also In re Mungo*, 305 B.R. 762, 768 (Bnkr. D.S.C. 2003) ("ghost-writing must be prohibited in this Court because it is a deliberate evasion of a bar member's obligations."). While the Jabranis have only officially been *pro se* in this Court during the time after Arfaa withdrew his appearance and before Manochi entered his, it is undisputed that at all times they have been controlled by an attorney who has not entered his appearance. Arfaa, for example, stated that he was not even authorized to accept service on behalf of the Jabranis. (*See* McShane Decl. Ex. I.)

Attorneys who engage in such unethical gamesmanship are routinely subject to sanctions. *See Ayvazian v. Moore Law Group*, 2012 U.S. Dist. LEXIS 88556, at *10-11 (C.D. Cal. June 26, 2012) ("The Court reminds the Plaintiff that the practice of "ghostwriting" violates the rules of professional conduct, and undermines the litigant's status as pro se. The likelihood that the impermissible practice of ghostwriting was used in the present Complaint is but another factor in support of the Court's decision to grant sanctions under Rule 11." (internal citations omitted)).

Further, even if the Court were to consider Arfaa and Manochi's "representation" of the Jabranis to be valid, courts have held that attorneys who fail to enter an appearance yet purport to do work in a jurisdiction are in violation of the law. Regarding attorneys who fail to properly enter an appearance, "[a] person is or is not licensed to practice law in a particular forum. There is no half-way. If not licensed, one cannot practice in that forum, and cannot charge, or receive attorney's fees for such services under penalty of criminal law." *Z.A. v. San Bruno Park Sch. Dist.*, 165 F.3d 1273, 1276 (9th Cir. 1999).

In the unlikely event that Bandas denies his involvement in ghost-writing for these objectors despite his clients' testimony, correspondence with local counsel, and the retainer agreements that are now before the Court, courts have allowed discovery into the matter when it is suspected that a lawyer is anonymously involved. *See Garcia v. Jenkins/Babb LLP*, 2012 U.S. Dist. LEXIS 125844, at *3-4 (N.D. Tex. Sept. 5, 2012) ("Accordingly, if this matter remains pending before the Court, Defendants may conduct discovery into whether Plaintiffs have obtained the assistance of any undisclosed attorney so the Court can determine what actions should be taken regarding that.").

IV. **CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that this Court overrule the Jabranis' objection, and that Bandas be ordered to show written cause as to why he has not entered his appearance and why his well-documented conduct does not violate the Rules of Professional Conduct in Pennsylvania and those of Bandas' home jurisdiction of Texas. In addition, pursuant to its inherent authority to protect and control these proceeding,[7] the Court should take whatever actions it deems appropriate against Bandas, Lightman, Manochi, and their clients for their conduct in this matter.

Dated: February 13, 2014                  Respectfully submitted,

                                                  /s/ Michael McShane
                                                  Michael McShane
                                                  AUDET & PARTNERS, LLP
                                                  221 Main Street, Suite 1460
                                                  San Francisco, CA 94105
                                                  Telephone: (415) 568-2555
                                                  Facsimile: (415) 568-2556
                                                  MMcShane@audetlaw.com

---

[7] *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 (1991).

> H. Laddie Montague, Jr.
> Shanon J. Carson
> Lawrence Deutsch
> BERGER & MONTAGUE, P.C.
> 1622 Locust Street
> Philadelphia, PA 19103
> Telephone: (215) 875-4656
> Facsimile: (215) 875-4604
> scarson@bm.net
>
> *Co-Lead Counsel for Plaintiffs and the Settlement Class*