# EXHIBIT "A"

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: CERTAINTEED FIBER CEMENT SIDING LITIGATION.<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL CASES. | Civ. No. 11-MD-2270-TON<br><br>MDL Docket No. 2270 |

### SUPPLEMENTAL OBJECTIONS
### AND RESPONSE TO "STATUS REPORT"
### OF AMIRALI JABRANI, JANET JABRANI, AND REAL HOMES INC.

**LIGHTMAN & MANOCHI**
Gary P. Lightman, Esquire
Glenn A. Manochi, Esquire
1520 Locust Street, 12th Floor
Philadelphia, PA 19102
(215) 545-3000

***Attorneys for Objectors Amirali Jabrani, Janet Jabrani, and Real Homes Inc.***

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ........................................................................................................... I

**TABLE OF AUTHORITIES** .................................................................................................. II

**INTRODUCTION AND SUMMARY OF THE ARGUMENT** ................................................ 1

I.      The Settlement is not worth $103.9 million.................................................................... 1

A.     The settling parties have given no explanation what happens to the Settlement Fund
remainder. ................................................................................................................. 1

B.     The settling parties do not dispute that the *incremental* value of the settlement is tens of
millions of dollars less than the gross settlement fund. ...................................................... 4

II.     The Jabranis renew their earlier objections. .................................................................... 6

III.    The Juelich Objection has not been validly withdrawn. .................................................. 7

IV.    Class counsel's baseless attacks on the Jabranis and their counsel demonstrate their belief
that they cannot win the motion for settlement approval on the merits............................... 7

A.     No "partnership to engage in the unlicensed practice of law" exists between a lawyer and
a non-lawyer client in this case. ...................................................................................... 7

B.     "Ghostwriting" is not unethical. ...................................................................................... 9

C.     Class counsel's ascription of motive is both wrong and irrelevant. ................................... 10

D.     Class counsel improperly used depositions to attempt to intimidate the Jabranis............ 12

IV.    The Settlement Agreement cannot be approved because the class did not have the
opportunity to object to Class Counsel's fee petition ........................................16

**CONCLUSION** ................................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Antoninetti v. Chipotle Mexican Grill*, 643 F.3d 1165 (9th Cir. 2010)....................................12-13

*Blessing v. Sirius XM Radio, Inc.*, 2011 WL 5873383, No. 09 CV 10035(HB) (S.D.N.Y. Nov. 22, 2011) ........................................................................................................................... 11

*Carroll v. The Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290 (5th Cir. 1997)........................ 17

*Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030 (5th Cir.1990)............................................... 17

*Corpac v. Rubin & Rothman, LLC*, 2012 WL 2923514 (E.D.N.Y. July 19, 1012)................. 11-12

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) ................................................................ 12

*Ethicon Endo-Surgery v. U.S. Surgical Corp.*, 160 F.R.D. 98 (S.D. Ohio 1995)................... 16-17

*Freeman v. Schointuck*, 192 F.R.D. 187 (D. Md. 2000) .............................................................. 16

*Heinrichs v. Marshal & Stevens Inc.*, 921 F.2d 418 (2d Cir. 1990) ...................................... 16-17

*In re Air Cargo Shipping Svcs. Antitrust Litig.*, 2010 WL 1049269, No. 06-MD-1775 (E.D.N.Y. Mar. 22, 2010) ...................................................................................................................... 11

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013)......................................... *passim*

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013)............................................. *passim*

*In re Fengling Liu*, 664 F.3d 367, 370-71 (2d. Cir. 2011)......................................................... 10

*In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 587 (3d Cir. 1984) .................................... 11-13

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) .................................................................................................. *passim*

*In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220 (5th Cir. 2008) ............. 6-7

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 2010 WL 4630846, MDL No. 08-1999 (E.D. Wisc. Nov. 2, 2010) .............................................................................. 11

*In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010) ................ 17

*In re National Football League Players' Concussion Injury Litigation,* MDL No. 2323,  Dkt. 5657 (U.S. District Court, E.D.Pa., January 14, 2014) (Brody, J.) ........................................... 3

*In re Rimsat, Ltd.*, 212 F.3d 1039, 1047 (7th Cir. 2000) ........................................................... 16

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)........................................... 7

*Landers v. Kevin Gros Offshore, L.L.C.*, Civ. No. 08-1293-MVL-SS, 2009 WL 2046587 (E.D. La July 13, 2009) ........................................................................................................................ 16

*Molski v. M.J. Cable, Inc.*, 481 F.3d 724 (9th Cir. 2007) .............................................................. 13

*Morse v. Southern Pac. Transp. Co.*, 42 F.3d 1401 (Table), 1994 WL 650047 (9th Cir. 1994).. 16

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002) ..................................... 1, 5

*Robinson v. Home Depot USA, Inc.*, 47 Fed. Appx. 820 (5th Cir. 2012) ................................... 10

*Safeco Ins. Co. of Am. v. AIG, Inc.*, 710 F.3d 754 (7th Cir. 2013) ............................................. 13

*Sassower v. Field*, 973 F.2d 75 (2d Cir. 1992) ......................................................................... 16

*True v. American Honda Motor Co.*, 749 F. Supp. 2d. 1052, 1079 (C.D. Cal. 2010)................. 11

## **Rules and Statutes**

28 U.S.C. § 1927 ......................................................................................................................... 16

Pa. Rules of Professional Conduct, Rule 5.5 comment 3 .............................................................. 8

Pa. Rules of Professional Conduct, Rule 5.5 comment 8 .............................................................. 8

ABA Formal Opinion 07-446 (May 5, 2007) ......................................................................... 9-10

Fed. R. Civ. P. 11 ........................................................................................................................ 16

Fed. R. Civ. P. 23 ........................................................................................................................ 13

Fed. R. Civ. P. 23(a)(4) ................................................................................................................. 6

Fed. R. Civ. P. 23(e)(3) ................................................................................................................. 7

Fed. R. Civ. P. 23(e)(5) ............................................................................................................ 7, 13

Fed. R. Civ. P. 23(h) ................................................................................................................ 7, 17

Fed. R. Civ. P. 26(b)(1) ........................................................................................................... 13, 15

Fed. R. Civ. P. 26(c) ................................................................................................................16-17

Fed. R. Civ. P. 26(g) .................................................................................................................... 16

Fed. R. Civ. P. 37(a)(4) ............................................................................................................16-17

Tex. R. Disc. Cond. 5.05 comments ..........................................................................................8-9

## **Other Authorities**

Advisory Committee Notes on 2003 Amendments to Rule 23 ....................................................... 7

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

In their initial objection (Docket No. 50), which they renew in full, the Jabranis noted that settlement fairness depends not just on the total value of the settlement and the *Girsh* factors, but on the allocation between the class and their attorneys. *See In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013) ("*Pampers*"). The settling parties never dispute this, and never cite *Pampers*. Dkt Nos. 86, 87.

The initial objection explored in detail why the parties' characterization of the settlement as a $103.9 million settlement was illusory. The settling parties' briefs in support of settlement approval never address the Jabranis' arguments on the merits; they never even cite the leading authorities the Jabranis rely upon, *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002), and *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 170 (3d Cir. 2013).

Instead of addressing the Jabranis' meritorious objections, in Docket No. 103, under the guise of a "report," Class Counsel levels meritless accusations against the Jabrani Objectors and their counsel. The allegations are not just baseless, but are entirely irrelevant to the merits of the Jabrani's objections. (Indeed, Class Counsel seems to  cut-and-paste: they accuse the Jabranis of filing a "boilerplate" objection, when the Jabranis' objections—and this filing—are each plainly tied to the specifics of the settlement before the Court, complete with multiple citations to the settlement.) An unfair settlement that fails to meet binding Third Circuit standards does not become fair just because class counsel has thrown mud at the one set of objectors he was unable to harass and intimidate into dropping their objection.

I.      **The Settlement is not worth $103.9 million.**

A.      **The settling parties have given no explanation what happens to the Settlement Fund remainder.**

The Jabranis' objection noted that the Settlement had no provision what happened to the remainder of the settlement fund, money that could total in the tens of millions of the dollars. There is no provision in the settlement if claims are low, and there is leftover money: who gets it

if not the class? (Nor is there any provision if settlement claims are high and the fund is exhausted before 2019, though the parties telling apparently thought that so unlikely as to not account for the possibility.) Even if the settlement does somehow pay $80 million to the class, at least $40 million of that amount will be withheld from payment until 2019, even as class counsel is paid immediately.

While plaintiffs repeat their assertion that the fund is "non-reversionary," nothing in the settlement prohibits the defendant from seeking to recover leftover funds. Plaintiffs cite Settlement ¶ 1.1.dd when they call the fund "non-reversionary" (see Dkt. 87-1 at 9), but nothing in that clause calls the settlement fund non-reversionary. The Court should require CertainTeed to declare in open court that it will not seek to reclaim any of the settlement fund; that class counsel asserts that CertainTeed will not is not remotely binding when the settlement itself is silent.

Most importantly, the parties still have given no explanation what happens to the Settlement Fund remainder. Plaintiffs assert that "all of the money will be distributed to the class," Dkt. 89-1 at 46-47, but they provide no cite to the settlement to demonstrate this. Bold and underlining does not substitute for evidence, much less reality. That there is no *cy pres* component simply means that there will likely be tens of millions of dollars left over several years from now with no explanation who gets it.

Indeed, the parties simply fail to meet their burden—in the form of any certification or expert report in the motion for final approval or elsewhere—as to the projected range of the total funds that will be paid out to class members. Given proponents' burden of proof on fairness, there is no evidence upon which the Court can assess the validity of the fee request. That information, especially the percentage of existing CT warranty claims that contain "Qualifying Damage," must be determined. Without it, this Court has no way to determine "with reasonable

accuracy the distribution of funds that will result from the claims process," as *Baby Products* requires.  708 F. 3d at 179.

A back-of-the-envelope calculation is telling. There are 300,000 potential class members. McShane Decl. (Dkt. 89-2) ¶9. Class counsel admits that they expect only a 1% claims rate. *Id.* ¶12. Three thousand claims of approximately $14,000 (Dkt. 87 at 11) is only $42 million—and that assumes, against common sense, that the claims administrator will pay 100% of the claims when it is under no obligation to do so (Dkt. 50 at 6-8). Of this, the class will receive only about $10 million now (versus $18.5 million for the attorneys right away), and the remaining $32 million years later—assuming that CertainTeed does not declare bankruptcy and renege on its obligation to fund the remainder of the settlement fund. (The parties have submitted no evidence to show that CertainTeed has the financial wherewithal to continue to fund the settlement fund in future tranches.) And if the claims administrator rejects a percentage of claims (and again, the settling parties have failed in their obligation to demonstrate how often the claims process will actually pay a claim), that disproportionate attorney fee becomes even more disproportionate. Additionally, any these numbers must be further reduced by claims which have already been settled and by the number of claims which do not have "Qualifying Damage." Class counsel have had access to the CertainTeed warranty claims information, but have failed to submit this data to the Court; we should draw the adverse inference. *See In re National Football League Players' Concussion Injury Litigation,* MDL No. 2323, Dkt. 5657 (U.S. District Court, E.D.Pa., January 14, 2014) (Brody, J.) (memorandum opinion denying preliminary approval for class action settlement where moving parties failed to provide Court with evidence that settlement fund was sufficient to cover all claims). But even under these generous assumptions where every claimant gets a full 100% of their claim, the settlement fund will have tens of millions of dollars left over with no provision for its distribution.

*Baby Products* is directly on point. In that settlement, the parties established a $35 million settlement fund; no one disputed that the settlement fund was of an appropriate size, but the Third Circuit reversed the district court's settlement approval because it failed to consider the amount that was directly going to the class—less than $3 million. 708 F.3d at 170.  And the *Baby Products* settlement at least had a description of what was going to happen to the remainder of the settlement fund; this settlement has none. Despite this directly-on-point binding Third Circuit precedent, Class Counsel fails to mention *Baby Products* entirely in its brief for settlement approval, much less distinguish it. (Class counsel instead pretends that *Baby Products* is only applicable to the fee determination—but then fails to correctly characterize its holdings that the fees should be based on the amount that the class *actually* claims, not on what it might potentially claim.) It would be reversible error to approve the settlement.

      **B.**    **The settling parties do not dispute that the *incremental* value of the settlement is tens of millions of dollars less than the gross settlement fund.**

The settlement does not actually *pay* class members anything: it merely gives them the right to participate in a new adversary proceeding to be paid for by the settlement fund. A claims administrator adjudicates claims (on an eight-page claim form, plus much documentary evidence required) and decides both whether a claim is eligible and how much the claim will be. Settlement ¶ 6. The settlement fund pays the claims administrator to do so, and pays for an independent claims reviewer; there is no provision in the settlement restricting how much the claims administrator will be paid or ensuring that the claims administrator or independent claims reviewer will not charge excessive rates or even that the claims administrator and independent claims reviewer have no separate financial relationship with Class Counsel. And Class Counsel and CertainTeed are released from liability for any negligence by the claims administrator. *Id.* ¶ 6.24. Nothing in the settlement precludes class counsel from collecting its $19 million, and then ignoring the claims procedure, or splitting the payments made to an overbilling claims reviewer.

While class counsel implausibly claims a six-year claims process will only cost $521,000 (Docket No. 25-2 at ¶ 11), there is no penalty if that figure is greatly exceeded at the expense of the class.

The value of a settlement is the *incremental* value of what is provided, but the parties ignore this opportunity cost. Before this settlement was in effect, CertainTeed was already offering to provide replacement material to customers. *See* Declaration of Amarali Jabrani Exhibit 7. Under the settlement, CertainTeed is now providing a claims process for a yet-to-be-determined percentage of the cost of material, labor, and paint. Settlement ¶ 7.2. The incremental value of the settlement is not $103.9 million, but $103.9 million minus what CertainTeed would have paid class members anyway—including through the fifty-year warranty that is still in effect after this settlement.  Dkt. No. 83; Dkt. No. 94. *See generally Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002) (settlement value calculated by "the *incremental* benefits", "not the total benefits" (emphasis in original)). Class Counsel devotes dozens of pages to criticizing the Jabranis and their counsel, but only addresses this fundamental aspect of the Jabranis' objection in a single paragraph of their brief. Without any supporting evidence, an attorney declaration gives the *ipse dixit* that the warranty valuation of class members' claims is only $3.8 million.

This is simply nonsense. The Jabranis, without any counsel at all, received a warranty offer of 40% of the replacement cost. The settlement provides them 48% of the replacement cost—and half of that after their claim is approved  and the second installment some six (6) years from now. How is it that the warranty provides the Jabrani more than 83% of the settlement relief, but class counsel can assert that the warranty only provides the class as a whole less than 5% of the settlement relief? The McShane Declaration is inadmissible as expert testimony without foundation; it does not even purport to show the methodology by which it reached its

conclusions. The Jabranis object to this Court relying upon it. Class counsel has not met its burden to show that the settlement provides any incremental benefit to the class, much less incremental benefit meriting the oversized fee they request.

Finally, the parties do not dispute that the class will not receive the vast majority of its benefits until 2019, while class counsel will be paid immediately and be able to earn a return on its fees. This adds to the disproportionate unfairness.

As in *Pampers,* this Court now confronts a classic question of fiction versus reality. As the Third Circuit has held, settlement fairness should be based on what the class actually receives. *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 170 (3d Cir. 2013). The parties have failed to present any evidence as to what this will be. The settlement should not be approved until the parties demonstrate the *incremental* value of the settlement over what class members already had available to them before there was a settlement and o fees should be awarded until the class's *actual* share of the settlement is known.

At a minimum, this Court should follow the *Baby Products* instruction to "delay a final assessment of the fee award to withhold all or a substantial part of the fee until the distribution process is complete." *Id.* at 179.

## II.     The Jabranis renew their earlier objections.

The Jabranis renew their objections from Dkt. 50 in full. For example, class counsel's assertion that there is no Rule 23(a)(4) intra-class conflict does not reflect the reality that similarly situated class members are being treated differently under this settlement, and that the settlement has no provision in the occasion that the settlement fund is exhausted.

And plaintiffs fail to even mention *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220 (5th Cir. 2008), much less explain how they comply with it and Rule 23(h). *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533 n.15 (3d Cir. 2004), cited by plaintiffs,

was decided before *High Sulfur*, and does not even mention the amendment of Rule 23 that requires a district court to perform the allocation. Its reliance on pre-Rule 23(h) decisions cannot be dispositive.

## III.    The Juelich Objection has not been validly withdrawn.

The Juelich objections were purportedly withdrawn. Dkt. 104. But they have not been withdrawn validly. Under Rule 23(e)(5), an objection cannot be withdrawn without the permission of the Court. Under Rule 23(e)(3), any side-agreements relating to a settlement must be disclosed to the Court. The Juelich objection provided additional reasons why the settlement cannot be approved. The Court should not accept its withdrawal without disclosure of the terms and conditions under which class counsel extracted that withdrawal.

In any event, the Jabranis adopt and incorporate the Juelich objection and supplemental objection (Dkt. Nos. 40 and 94) in full. This Court must reject the settlement for the reasons stated therein.

## IV.    Class Counsel's baseless attacks on the Jabranis and their counsel demonstrate their belief that they cannot win the motion for settlement approval on the merits.

As the saying goes, if the law is against you, pound the facts; if the facts are against you, pound the law; if the facts and the law are against you, pound the table.

Docket No. 103, titled a "status report," but really a series of scurrilous attacks against the Jabranis and their counsel, is an example of table-pounding, and demonstrates that class counsel does not believe they can win this case on the merits, and hope to instead poison the well.

### A.    No "partnership to engage in the unlicensed practice of law" exists between a lawyer and a non-lawyer client in this case.

Class counsel argues that Mr. Bandas (who is not before the Court and who has not made an appearance) and his firm's non-lawyer clients have formed a partnership to engage in the unlicensed practice of law. This argument is patently frivolous.

Although class counsel cites the Pennsylvania and Texas disciplinary rules that prohibit a lawyer from engaging in the unlicensed practice of law and from assisting another to do so, they

cite no authority, no case law, no ethics opinion, nothing, to support the application of their novel theory to the facts of this case.

The text of the rules themselves cannot be contorted to Class Counsels' nonsensical argument. The Jabrani Objectors have retained legal counsel in Pennsylvania in accordance with the rules. *See* Pa. Rules of Professional Conduct, Rule 5.5 comment 8 ("Paragraph (c)(1) recognizes that the interests of clients and the public are protected if a lawyer admitted only in another jurisdiction associates with a lawyer licensed to practice in this jurisdiction."). Here, the Jabranis are being represented by Pennsylvania counsel in this action (Dkt. 90). There has been no unauthorized practice of law.

Indeed, class counsel ignores the comments to the disciplinary rules, which make it clear that providing legal counsel and assistance to a non-lawyer client is expressly permissible. *See* Pa. Rules of Professional Conduct, Rule 5.5 comment 3 ("A lawyer may provide professional advice and instruction to non-lawyers whose employment requires knowledge of the law; for example, claims adjusters, employees of financial or commercial institutions, social workers, accountants and persons employed in government agencies. Lawyers also may assist independent nonlawyers, such as paraprofessionals, who are authorized by the law of a jurisdiction to provide particular law-related services. In addition, a lawyer may counsel nonlawyers who wish to proceed *pro se*.").[1]

---

[1]   The comments to the Texas rules are similar: "Paragraph (b) of Rule 5.05 does not prohibit a lawyer from employing the services of paraprofessionals and delegating functions to them. So long as the lawyer supervises the delegated work, and retains responsibility for the work, and maintains a direct relationship with the client, the paraprofessional cannot reasonably be said to have engaged in activity that constitutes the unauthorized practice of law. See Rule 5.03. Likewise, paragraph (b) does not prohibit lawyers from providing professional advice and instructions to nonlawyers whose employment requires knowledge of law. For example, claims adjusters, employees of financial institutions, social workers, abstractors, police officers, accountants, and persons employed in government agencies are engaged in occupations requiring knowledge of law; and a lawyer who assists them to carry out their proper functions is not assisting the unauthorized practice of law. In addition, a lawyer may counsel nonlawyers who wish to proceed pro se, since a nonlawyer who represents himself or herself is not engaged in the unauthorized practice of law[;]" and "Authority to engage in the practice of law conferred in any jurisdiction is not

**B.    "Ghostwriting" is not unethical.**

Class Counsel contends that inappropriate "ghostwriting" has occurred in this case. Again, Class Counsel misapplies the law and fails to disclose that their argument is predicated on superseded rules and cases (although their interpretation of even those prior rules is equally incorrect).

On May 5, 2007, the ABA expressly endorsed so-called "ghostwriting" as ethical. "A lawyer may provide legal assistance to litigants appearing before tribunals '*pro se*' and help them prepare written submissions without disclosing or ensuring the disclosure of the nature or extent of such assistance." ABA Formal Opinion 07-446 (May 5, 2007).[2]

However, not even that has occurred here. The Jabrani Objectors have never appeared *pro se* in this case. They have been represented by counsel. Class Counsel incorrectly suggests that any lawyer who advises the Jabranis in this case would also have to appear in this case, as an attorney of record. This is simply wrong. Notably, Class Counsel does not cite any rules or authority. They just say it. It is, again, a patently frivolous argument.

Even if the Jabrani Objectors were *pro se*, Class Counsel still misapplies the current standards that speak to "ghostwriting." Circuit courts of appeal to take up the issue of ghostwriting have found that it is appropriate. *See, e.g., In re Fengling Liu*, 664 F.3d 367, 370-71

---

necessarily a grant of the right to practice elsewhere, and it is improper for a lawyer to engage in practice where doing so violates the regulation of the practice of law in that jurisdiction. However, the demands of business and the mobility of our society pose distinct problems in the regulation of the practice of law by individual states. In furtherance of the public interest, lawyers should discourage regulations that unreasonably impose territorial limitations upon the right of a lawyer to handle the legal affairs of a client or upon the opportunity of a client to obtain the services of a lawyer of his or her choice."  Rule 5.05 of the Texas Rules of Disciplinary Conduct, comments 4 and 5.

[2] "Ghostwriting" is described by the ABA as simply "a form of 'unbundling' of legal services, whereby a lawyer performs only specific, limited tasks instead of handling all aspects of a matter." ABA Formal Opinion 07-446 (May 5, 2007). The "fact that a litigant submitting papers to a tribunal on a pro se basis has received legal assistance behind the scenes is not material to the merits of the litigation. Litigants ordinarily have the right to proceed without representation and may do so without revealing that they have received legal assistance in the absence of a law or rule requiring disclosure." *Id*. There is nothing unethical about ghostwriting.

(2d. Cir. 2011)(finding that neither lawyer that prepared pleading nor litigant who filed pleadings had duty to disclose that lawyer "ghost wrote" pleadings and finding that even if such a duty to disclose existed, movant failed to establish that court was mislead in some material fashion by that lack of disclosure); and *Robinson v. Home Depot USA, Inc.*, 47 Fed. Appx. 820, 825 (5th Cir. 2012)(observing that movant has not cited any authority that "ghostwriting" is inappropriate in the Fifth Circuit).

Although ghostwriting is ethical, some courts have still criticized the practice on the basis that in some circumstances (not present here) a court may give special favor or treatment to a client if the court believes the client is unrepresented and *pro se*. In this case, however, the Jabranis have been represented by counsel. In addition, the engagement agreement between Bandas Law Firm, P.C. and the clients has been produced which shows the clients are not *pro se* and are being provided with legal counsel in this matter. No inappropriate ghostwriting has occurred.

### C.    Class Counsel's ascription of motive is both wrong and irrelevant.

Class Counsel goes to great lengths to malign the Jabrani Objectors, their counsel, and ascribe a scandalous and dramatic narrative to their supposed motivations. Clearly, Class Counsel does not want this Court to look at the merits of the Jabrani Objections, a subject which they have almost entirely avoided in their pleadings.

To be sure, Class Counsel seeks to frame the objection process as an inquiry not on the merits of the objection, but instead as an inquisition into the Jabranis' choice of attorney. <u>That objector's counsel has represented objectors in other class actions "has no greater bearing on the merits of the objection raised than a plaintiff's counsel's experience in filing class actions speaks to the merits of claims he brings.</u>" *True v. American Honda Motor Co.*, 749 F. Supp. 2d. 1052, 1079 (C.D. Cal. 2010) (emphasis added). "Merely characterizing some of the attorneys as 'professional objectors' without specifying what, exactly, they have done that is either in bad faith or vexatious [in this case], is not enough." *Blessing v. Sirius XM Radio, Inc.*, 2011 WL

5873383, No. 09 CV 10035(HB) (S.D.N.Y. Nov. 22, 2011); *see also In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 2010 WL 4630846, MDL No. 08-1999 (E.D. Wisc. Nov. 2, 2010); *In re Air Cargo Shipping Svcs. Antitrust Litig.*, 2010 WL 1049269, No. 06-MD-1775 (E.D.N.Y. Mar. 22, 2010).

Other courts have explicitly held that the motive of objectors or their counsel is simply not relevant to the merits of an objection. *See, e.g., Corpac v. Rubin & Rothman, LLC*, 2012 WL 2923514, at *2-*3 (E.D.N.Y. July 19, 1012)("[t]he Court 'fail[s] to see how motives of [Objector], other than the obvious financial once of maximizing [his] recovery, would make any fact of consequence to the determination of reasonable fees, the amount of damages or the restriction on pursuing future claims] more or less probable.'") (citing *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 587 (3d Cir. 1984)). It is neither logically nor legally permissible to conclude that an objection is valid or invalid from outcomes in other cases, especially when those outcomes are mixed. The merits of the Jabranis' objections are, of course, the focus of the Court's attention, and the issue on which Class Counsel should have focused.

Nevertheless, Mr. Bandas participated in two notable cases he saw through to appeal and that both resulted in reversal of the trial courts' decisions. *See Dennis v. Kellogg Co.,* 697 F.3d 858 (9th Cir. 2012)(Bandas was an attorney of record); *In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013)(Bandas filed a notice of appeal on behalf of his objector client and joined the briefing of the lead appellant).

More importantly this dispute over counsel's supposed motives is irrelevant. For example, in the Ninth Circuit, a supposed bad motive and a party's "litigation history" (vexatious according to the defendantstherein) does not abrogate the legal right to make an otherwise meritorious argument. *Antoninetti v. Chipotle Mexican Grill* is directly on point. 643 F.3d 1165 (9th Cir. 2010).

There, the plaintiff, Antoninetti, was characterized as a serial Americans with Disability Act litigant; a district court refused to grant him an injunction he was entitled to because it

questioned his sincerity: "Plaintiff has sued over twenty business entities for alleged accessibility violations, and, in all (but one) of those cases, he never returned to the establishment he sued after settling the case and obtaining a cash payment." 643 F.3d at 1175. Even though the grant of injunctive relief is a question of equity, the Ninth Circuit reversed. Here, Class Counsel attacks the objectors' counsel, even one step further attenuated than the relationship to prior litigation that the Ninth Circuit said was irrelevant.

For the legislative regime to work, "it may indeed be necessary and desirable for committed individuals to bring serial litigation." *Id. Accord Molski v. M.J. Cable, Inc.*, 481 F.3d 724 (9th Cir. 2007); *see also Safeco Ins. Co. of Am. v. AIG, Inc.*, 710 F.3d 754 (7th Cir. 2013) (endorsing settlement of objection at appellate level).

*Antoninetti's* reasoning is also true under Rule 23(e)(5). For the same reason class action litigation is often superior to other forms of litigation, absent class members do not have the financial incentive to object; often, just the cost of postage exceeds the amount at stake.

Absent class members cannot be protected unless experienced counsel for objectors can raise objections to the multiple violations of Rule 23 that occurred here. The improper *ad hominem* attacks against the Jabranis and their counsel should not influence this Court's willingness to consider their objections and the serious problematic errors of law on the merits. *See In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 587 (3d Cir. 1984)(finding supposed intent of objector/appellants irrelevant).

**D.   Class Counsel improperly used depositions to attempt to intimidate the Jabranis.**

As the attached deposition transcripts show, Class Counsel used the deposition process not to elicit discoverable information under Rule 26(b)(1), but to attempt to intimidate the Jabranis into dropping their meritorious objections.

At the deposition of Janet Jabrani, Class Counsel:

      a.   Asked the witness if she was "concerned" that her lawyer (Mr. Bandas) was not at the deposition (J. Jabrani Depo. at p. 17, Ex. 2);

b.  Asked if the witness was happy with her lawyer even though her counsel has been criticized in other cases (*id.* at 98-99, 110-122);

c.  Asked the witness if she wished she had had more information about her lawyer before hiring him and knew more about his history (*id.* at.99-103, 104-105, 109-114);

d.  Offered to send documents to the witness directly that supposedly impugn counsel (*id.* at.99-100);

e.  Suggested to the witness that counsel's conduct was improper because he represented objectors in other cases and suggested it was improper to represent objectors in this case (*id.* at.99-102);

f.  Told the witness Class Counsel was pursuing sanctions against her (*id.* at. 100, 119-120);

g.  Falsely told the witness that her counsel has "abandoned" clients in past objections (*id.* at. 104);

h.  Falsely told the witness her counsel had left a client at a deposition (*id.* at. 104);

i.  Falsely told the witness that her lawyer had been held in contempt in the *Chinese Drywall* litigation (*id.* at. 104);

j.  Suggested to the witness that she would have to post a bond in this case in excess of $500,000 and asked her if she was willing to pay it (*id.* at. 105);

k.  Asked a lay witness hypothetical and threatening questions about having to pay a large bond (*id.* at p. 106);

l.  Impugned her lawyer based on pleadings from another case and suggested to the witness that counsel's motives were improper in this case (*id.* at. 107-111);

m. Falsely suggested that none of counsel's prior work had resulted in a benefit to class members (*id.* at.115)

n.  Threatened to post the witness' name on a settlement website (*id.* at. 116)

o.  Threatened that the Court would make her appear in Pennsylvania and incur attendant expenses and sanctions (*id.* at. 120-122)

At the deposition of Ali Jabrani, Class Counsel:

a. Threatened to post the deponent's name on the settlement website (Ali Jabrani Depo. at 64, Ex. 1);

b. Misrepresented the circumstances under which Mr. Arfaa withdrew as local counsel and falsely told the witness (without establishing any foundation or basis) "he withdrew based on Mr. Bandas' history as a serial objector" (*id*. at 68).

c. Made comments to the witness (barely in question form) impugning his lawyer (*id*. at 68);

d. Read orders and pleadings from other cases in which Mr. Bandas participated simply to ask the witness repeatedly if he was "concerned" about his lawyer or the particulars of other, unrelated cases (*id*. at 70-77, 80-87);

e. Without basis or foundation for the amount, Class Counsel suggested to the witness multiple times in the deposition that he would have to post a $400,000 bond, suggested that the Court would order that amount, and asked if he could afford that bond (*id*. at 77, 78, 79, 81)

f. Repeatedly asked the witness if he was aware that class counsel is seeking sanctions against the witness and his counsel (*id*. at 85, 87, 88, 89);

g. Told the witness that other lawyers were seeking sanctions against Mr. Bandas in another case (*id*. at 187-88);

h. Threatened the witness that Class Counsel was seeking to bring the witness before the Judge in Pennsylvania and incur out-of-pocket expenses for doing so (*id*. at 90-91); and

i. Questioned the witness about documents and refused the witness' request to see the documents before answering the question (id. at 163, 165).

Rule 26(b)(1) limits discovery to those things that are reasonably calculated to lead to the discovery of admissible evidence. Class Counsel's direct threats to these witnesses about sanctions, bad-mouthing their lawyer, threatening them with expenses and travel disallowed by rule, representing that $400,000 bond orders will be charged against them and repeatedly asking

the witness "how they feel" about their lawyer is not relevant to any claim or defense. Those "questions" have a single purpose: harassment.

Of course, "[n]o one expects that the deposition of a key witness in a hotly contested case to be a non-stop exchange of pleasantries." *Freeman v. Schointuck*, 192 F.R.D. 187, 189 (D. Md. 2000). But as the United States District Court for the Southern District of Ohio observed:

> As officers of the court, counsel are expected to conduct themselves in a professional manner during a deposition…. <u>A deposition is not to be used as a device to intimidate a witness or opposing counsel so as to make that person fear the trial as an experience that will be equally unpleasant, thereby motivating him to either dismiss or settle the complaint.</u>

*Ethicon Endo-Surgery v. U.S. Surgical Corp.*, 160 F.R.D. 98, 99 (S.D. Ohio 1995) (emphasis added) (cited in *Landers v. Kevin Gros Offshore, L.L.C.*, Civ. No. 08-1293-MVL-SS, 2009 WL 2046587, at *1 (E.D. La July 13, 2009) (finding that imposing a sanction for improper deposition questioning is "otherwise congruent with FED. R. CIV. P. 26(g).").

Moreover, "accusations of wrongdoing against witnesses and attorneys have no place in a deposition." *Ethicon Endo-Surgery*, 160 F.R.D. at 99.

A deposition conducted in an "unproductive and harassing manner" is undoubtedly sanctionable." *In re Rimsat, Ltd.*, 212 F.3d 1039, 1047 (7th Cir. 2000); *see also Morse v. Southern Pac. Transp. Co.*, 42 F.3d 1401 (Table), 1994 WL 650047, at *1 (9th Cir. 1994) (finding attorney's behavior "clearly sanctionable" under FED. R. CIV. P. 26(c) where he was argumentative and "badger[ed] the witness through dozens or pages of transcript"); *Sassower v. Field*, 973 F.2d 75 (2d Cir. 1992) (affirming order of sanctions under FED. R. CIV. P. 11 and 28 U.S.C. § 1927, where attorney's conduct included "incredibly harassing depositions" and "abusive questioning" of defendants); *Heinrichs v. Marshal & Stevens, Inc.*, 921 F.2d 418, 420 (2d Cir. 1990) (affirming award of sanctions under FED. R. CIV. P. 37(a)(4) and 26(c) where counsel's questioning of witnesses "was often improperly argumentative and confrontational"); *Carroll v. The Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 293-94 (5th Cir. 1997)

(sanctions imposed based on abusive conduct during deposition); *Coane v. Ferrara Pan Candy Co.,* 898 F.2d 1030, 1033 (5th Cir.1990) (finding entirely appropriate the court's expectations of a heightened standard of conduct by a litigant who is also an attorney).

The deposition transcripts speak for themselves. The purpose of the Jabranis depositions was not to obtain evidence relevant to this case, but to intimidate and harass the objectors into withdrawing their objections.

Given that Class Counsel is asserting that the Jabranis' outside counsel's conduct in *other* cases is relevant to the merits, surely Class Counsel's sanctionable conduct in *this* case is even more relevant. This is especially true where Class Counsel has made egregiously baseless accusations of unethical behavior without even citing to the relevant authorities showing that Mr. Bandas has done nothing wrong.

**V.     The settlement agreement cannot be approved because the class did not have the opportunity to object to Class Counsel's fee petition**

*Subsequent* to the publication of preliminary notice and, importantly, *after* the December 31, 2013 objection deadline for filing objections (*see* Dkt. 28), this Court entered an order extending the parties' deadline to file any motions in support of final approval by January 29, 2014 (Dkt. 72).

Pursuant to that Court order, Class Counsel did not file their motion for attorneys fees and expense until January 29, 2014, almost one month after the objection deadline (Dkt. 89). That alone precludes approval. In *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010) the Ninth Circuit became the first appellate court to hold that, under Federal Rule of Civil Procedure 23(h), class members must be given an opportunity to object to class counsel's attorneys' fees motion *after* that motion is filed  with the court.

The Jabrani Objectors were deprived of any meaningful opportunity to consider and address Class Counsels' fee petition, to which the Jabranis have objections.   Therefore the settlement agreement cannot be approved.

### CONCLUSION

For the foregoing reasons, this settlement should be rejected as unfair and unreasonable and the class cannot be certified. Class Counsel has simply failed to carry their burden of proof regarding the fairness fo the settlement and their claims for attorneys' fees. At the very least, the fee request must be reduced in accordance with Rule 23(h) and existing case law.

The objections here are meritorious. Approval of the settlement as written under the record Class Counsel has provided would be reversible error. Class Counsel's attempt to make this a referendum on Mr. Bandas instead of on the merits of an untenable settlement that favors the attorneys over the class should be rejected.

DATED: February 17, 2014                           LIGHTMAN & MANOCHI

By: _____

Gary P. Lightman, Esquire
Glenn A. Manochi, Esquire
1520 Locust Street, 12th Floor
Philadelphia, PA 19102
(215) 545-3000

*Counsel for Amirali Jabrani, Janet
Jabrani and Real Homes, Inc.*

## CERTIFICATE OF SERVICE

I, Glenn A. Manochi, certify that on this day the foregoing document was filed electronically via the Court's ECF system. A Notice of Electronic Case Filing shall automatically be generated by the system, and shall be sent automatically to all parties entitled to service who have consent to electronic service. Electronic service of the Notice of Electronic Case Filing constitutes service of the filed document to all such parties and shall be deemed to satisfy the requirements of Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure. In addition, on this day true and correct copies of the foregoing document were served on the following persons via email:

PEPPER HAMILTON LLP
Robert L. Hickok, Esquire
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19102

AUDET & PARTNERS, LLP
Michael McShane, Esq.
221 Main Street, Suite 1460
San Francisco, CA 94105

BERGER & MONTAGUE, P.C.
H. Laddie Montague, Jr., Esq.
Shanon J. Carson, Esquire
1622 Locust Street
Philadelphia, PA 19103-6365

LEVIN FISHBEIN SEDRAN & BERMAN
Charles E. Schaffer, Esquire
510 Walnut Street, Suite 500
Philadelphia, PA 19106

Dated: February 17, 2014

_____
GLENN A. MANOCHI

E:\JABRINI\CERTAINTEED\DOCS\CERTAINTEED SUPP OBJECTIONS.DOCX