IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: CERTAINTEED FIBER CEMENT : | |
| SIDING LITIGATION : | MDL Docket No. 2270 |
| : | |
| This document relates to: : | |
| ALL CASES : | |

O'NEILL, J.                                                                                      May 27, 2014

## MEMORANDUM

This multidistrict litigation arises out of plaintiffs' claims against defendant CertainTeed Corporation related to the alleged premature failure of certain of its siding products. On March 20, 2014, the Court granted final approval of a class action settlement in this matter. Dkt. No. 119. On April 9, the Jabrani objectors filed a notice of appeal challenging the Court's final approval of the settlement. See Dkt. No. 121.[1] Plaintiffs and the settlement class have now filed a motion asking that the Court require appellant-objectors Amirali Jabrani, Janet Jabrani and Real Homes, Inc., jointly and severally to post an appeal bond. Dkt. No. 128. Plaintiffs assert that the Jabrani objectors should be required "to post jointly and severally a bond in [an] amount deemed appropriate by the Court to ensure partial reimbursement of the costs being forced upon the Class members as a result of the Jabrani Objectors' meritless appeal." Dkt. No. 128-1 at ECF p. 3. The Jabrani objectors oppose plaintiffs' motion. Dkt. No. 131. For the reasons that follow, I will grant plaintiffs' request to require an appeal bond.

**I.    An Appeal Bond is Warranted**

Rule 7 of the Federal Rules of Appellate Procedure provides that "in a civil case, the district court may require the appellant to file a bond or provide other security in any form and

---

[1] The Jabrani objectors have also appealed from the Court's March 19, 2014 order denying their supplemental objections. Dkt. No. 117.

amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7.  The purpose of an appeal bond is to "protect the rights of appellees . . . against the risk of non-payment by an unsuccessful appellant." Dewey v. Volkswagen of Am., Nos. 07-2249 and 07-2361, 2013 WL 3285105, at *2 (D.N.J. Mar. 18, 2013) (citations and internal quotations omitted).  Factors to consider in determining whether to require a bond include:  (1) whether a bond "is necessary to assure adequate security . . . ; (2) the risks that the appellant will not pay the costs if it loses the appeal . . . ; [and] (3) the appellant's financial ability to post the bond . . . ."[2] Id. (citations and

---

[2]  In determining whether to impose a bond other courts have also considered the merits of the appeal and whether the appellant has shown any bad faith or vexatious conduct. See In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig., 11-MD-2247, 2012 WL 3984542, at *2 (D. Minn. Sept. 11, 2012); In re Checking Account Overdraft Litig., MDL 2036, 2012 WL 456691, at *2 (S.D. Fla. Feb. 14, 2012); In re AOL Time Warner, Inc., Sec. & "ERISA" Litig., 02-CV-5575, 2007 WL 2741033, at *2 (S.D.N.Y. Sept. 20, 2007).  On the authority of those and similar cases, plaintiffs assert that a bond should be required because "the appeal is driven by an attorney whose legal practice appears to consist entirely of objecting to class settlements to extort unearned fees."  Dkt. No. 128-1 at ECF p. 11.  Plaintiffs contend that "the appeal is patently taken in bad faith," noting that the Jabranis "testified that they never even read the Settlement Agreement or visited the settlement website" and they had never "calculated how much they would receive from the settlement" and "did not know how the settlement funds were actually going to be distributed to Class Members."  Dkt. No. 134 at ECF p. 4-5.

Nevertheless, I do not consider the merits of the Jabrani objectors' appeal in reaching my conclusion that they should be required to post an appeal bond.  Courts in this circuit have found "that the Court of Appeals is the best forum to litigate the merits of the appeal and to account for any frivolity that harms the plaintiffs."  In re Am. Invs. Life Ins. Co. Annuity Mktg. and Sales Practices Litig., 695 F. Supp. 2d 157, 166 (E.D. Pa. 2010); see also Dewey, 2013 WL 3285105, at *2 (same); Rossi v. Procter & Gamble Co., No. 11-7238, 2014 WL 1050658, at *2 (D.N.J. March 17, 2014) ("Plaintiff cites no binding legal authority suggesting that a district court may step into the shoes of an appellate court to decide whether an appeal is frivolous . . . .").  "Rule 7 was not intended to be used as a means of discouraging appeals, even if perceived to be frivolous."  In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine Prods. Liab. Litig.), No. MDL-1203, 2000 WL 1665134, at *5 (E.D. Pa. Nov. 6, 2000).

> There are means other than bonds which adequately protect an appellee against frivolous appeals.  One such device is an immediate motion to dismiss filed in the court of appeals. . . . Another protective device is Rule 38 [of the Federal Rules of Appellate Procedure], under which just damages and single or double costs, including attorney's fees, may be awarded to the

internal quotations omitted).

I find that it is appropriate to require the Jabrani objectors to post an appeal bond.  First, a bond is necessary to assure adequate security to protect the interests of the settlement class.  The Jabrani objectors' appeal delays CertainTeed's obligation to release the settlement fund to claimants, delaying payments to class members who have already submitted claims for damaged siding  As plaintiffs point out, this delay has a potential impact on class members' "ability to protect what is likely their most valuable asset.  Given that the average appeal in this Circuit is 10 months, each claimant's home will be subjected to another rainy season and winter before repair is an option for many claimants."  Dkt. No. 128-1 at ECF p. 15; see In re Cardizem CD Antitrust Litig., 391 F.3d 812, 818 (6th Cir. 2004) (relying in part on the "delay[ed] disbursement of settlement funds" in concluding that imposition of Rule 7 bond in class action appeal was proper); see also In re NASDAQ Market-Makers Antitrust Litig., 184 F.R.D. 506, 514 (S.D.N.Y. 1999) (citation omitted) (finding that the actions of appellants in "jeopardizing a settlement agreement cause[ ] prejudice to the existing parties to a lawsuit").

Second, the Jabrani objectors have submitted no financial information to support their

---

appellee if the Court of Appeals determines that the appeal was frivolous.

Id. (citations omitted).  The Court of Appeals for the Ninth Circuit has likewise held that "the question of whether, or how, to deter frivolous appeals is best left to the courts of appeals, which may dispose of the appeal at the outset through a screening process, grant an appellee's motion to dismiss, or impose sanctions including attorney's fees under Rule 38."  Azizian v. Federated Dep't Stores, Inc., 499 F.3d 950, 961 (9th Cir. 2007); see also Fleury Richemont N. Am. Inc., C-05-4525 EMC, 2008 WL 4680033, at *9 (N.D. Cal. Oct. 21, 2008) ("In addition, Settling Plaintiffs may move the Court of Appeals to impose monetary sanctions against [the appellant] *or her counsel*, or both, if this appeal ultimately is found to be frivolous.") (emphasis in original), citing Fed. R. App. P. 38; 28 U.S.C. § 1912.  Although I recognize plaintiffs' concerns regarding the merits of and motivations behind the Jabrani objectors' appeal, I find that their motion seeking to impose a Rule 7 cost bond is not the appropriate mechanism for raising these concerns.

contention that they, as individuals, and/or Real Homes Inc., are incapable of posting an appeal bond. Instead, they have provided the Court only with an assertion that "[t]he Jabranis cannot afford a $1.4 million bond." Dkt. No. 131 at ECF p. 7. Their unsupported assertion regarding their claimed inability to pay is not sufficient to dissuade me from finding that an appeal bond is warranted under the circumstances now presented to the Court.

Third, allowing the Jabrani objectors to appeal without posting a bond will expose the settlement class to the risk that it will not be reimbursed for expenses imposed by the appeal. While there is no evidence that the Jabrani objectors would not pay any costs incurred by the settlement class if they were to lose their appeal, there is also no evidence that the Jabrani objectors would be able to pay fully the costs if they lose their appeal. Indeed, the Jabrani objectors contend that if the Court "imposes a seven-digit (or even a six-digit) bond, the Jabranis will: (1) move to stay the bond order pending review in the Third Circuit; and (2) move for in forma pauperis status under Fed. R. App. Proc. 24 . . . ." Dkt. No. 131 at ECF p. 7. Further, the Jabrani objectors' residence outside of the Third Circuit will arguably make it more difficult for the settling class to collect their costs should they prevail on the appeal. See Fleury v. Richemont N. Am., Inc., C-05-4525 EMC, 2008 WL 4680033, at *7 (N.D. Cal. Oct. 21, 2008).

For all of these reasons, I find that an appeal bond is warranted in this matter. Indeed, in their response to plaintiff's motion seeking the imposition of an appeal bond, the Jabrani objectors do not strongly contest plaintiffs' position that the imposition of a Rule 7 cost bond is warranted. Rather, they focus their efforts on challenging the amount that plaintiffs seek for the bond.

## II.     Calculating the Amount of the Bond

"The question of whether to impose an appeal bond is distinct from the issue of what

costs the bond can and should cover." In re AOL Time Warner, Inc., Sec. & "ERISA" Litig., 02-CV-5575, 2007 WL 2741033, at *3 (S.D.N.Y. Sept. 20, 2007). "A district court may not impose a bond in an amount beyond what is necessary to ensure adequate security if to do so would effectively preclude pursuit of an appeal." In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine Prods. Liab. Litig.), No. MDL-1203, 2000 WL 1665134, at *5 (E.D. Pa. Nov. 6, 2000); see also Dewey, 2013 WL 3285105, at *2 (holding that a court's determination of the amount of an appeal bond should be guided by "whether the amount of the bond will effectively preclude pursuit of the appeal"). I will require the Jabrani objectors, jointly and severally, to post a bond for $5,000, an amount which I find to be appropriate given the estimated costs to be incurred by the settlement class in defending the Jabrani objectors' appeal. See Dkt. No. 128-1 at ECF p. 14 ("Class Counsel estimates that they will incur an estimated . . . $5,000 in costs related to the appeal.").

It is clear that "[c]osts' referred to in Rule 7 [include] those that may be taxed against an unsuccessful litigant under Federal Rule of Appellate Procedure 39." Hirschensohn v. Lawyers Title Ins. Corp., No. 96–7312, 1997 WL 307777, at *1 (3d Cir. June 10, 1997) (citation omitted). Federal Rule of Appellate Procedure 39 provides:

> [t]he following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule:
>
> (1) the preparation and transmission of the record;
>
> (2) the reporter's transcript, if needed to determine the appeal;
>
> (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and
>
> (4) the fee for filing the notice of appeal.

Fed. R. App. P. 39(e). What is less clear is whether the "costs of appeal" may also include costs

not explicitly enumerated in Rule 39, including attorneys' fees and costs that will result from the delay in administration of the settlement fund.

      A.      **Attorneys' Fees**

With respect to whether attorneys' fees can be included when determining the appropriate amount of a Rule 7 appeal bond, "[t]here is no binding authority for the Court to follow." In re Am. Invs. Life Ins. Co. Annuity Mktg. and Sales Practices Litig., 695 F. Supp. 2d 157, 166 (E.D. Pa. 2010); see also O'Keefe v. Mercedes-Benz USA, LLC, No. 01-2902, 2003 WL 22097451, at *3 (E.D. Pa. June 4, 2003) (finding no binding authority). As plaintiffs acknowledge, while "[t]he Second, Sixth, Eleventh, and Ninth Circuits all hold that it is within a district court's discretion to include projected attorneys' fees in an appeal bond made pursuant to Rule 7," only an unreported decision from the Court of Appeals for the Third Circuit has addressed this question. Dkt. No. 128-1 at ECF p. 14. In Hirschensohn v. Lawyers Title Insurance Corp., No. 97-7312, 1997 WL 307777, at *2-3 (3d Cir. June 10, 1997), the Court of Appeals held "that attorneys' fees are distinct from the 'costs' defined by Rule 39" and concluded that "Rule 7 does not authorize a bond to cover estimated costs of attorneys' fees." Following Hirschensohn, courts within the Third Circuit have declined to include attorneys' fees in determining the appropriate amount for Rule 7 appeal bonds. See In re Am. Invs. Life Ins. Co., 695 F. Supp. 2d at 166 (declining to include attorneys' fees in the objector's appeal bond where they were unavailable under the statute on which the plaintiffs' claims were based); O'Keefe, 2003 WL 22097451, at *3 (finding that the plaintiff was "not entitled to include attorney's fees" where Hirschensohn held that Rule 39's definition of costs "is binding on [Rule] 7 appeal bonds," and where, under the plain meaning of the underlying statute, "costs" did not include attorney's fees); In re Diet Drugs, 2000 WL 1665134, at *4 ("Class Counsel's argument that attorney's fees

should be included in the 'costs' covered by a Rule 7 bond is unavailing."); Rossi v. Procter & Gamble Co., No. 11-7238, 2014 WL 1050658, at *2 (D.N.J. March 17, 2014) ("Although Hirschenson is an unreported decision, its reasoning remains sound."); Star Pac. Corp. v. Star Atl. Corp., No. 08-04957, 2013 WL 637686, at *1-2 (D.N.J. Feb. 20, 2013) (noting that "Rule 39 does not specifically include attorneys' fees as 'costs'" in a decision declining to "reach the issue of whether attorneys' fees should be considered 'costs' under Rule 7" because an appeal bond was not required); In re Ins. Brokerage Antitrust Litig., MDL 1663, 2007 WL 1963063, at *5 (D.N.J. July 2, 2007) ("The cases in this Circuit have not included attorneys' fees as "costs" under Rule 39, and, as such, this Court will not impose attorneys' fees as part of the appeal bond in this case.").  Although I recognize that plaintiffs' project an expenditure of significant attorneys' fees for their defense of the class action settlement from the Jabrani objectors' appeal, I will follow Hirschenson and the other decisions in this circuit in declining to include attorneys' fees in the amount of the bond to be imposed on the Jabrani objectors.

    **B.**  **Costs from the Delay in Administration of the Settlement Fund**

    Courts are likewise divided with respect to the question of whether damages to the class and/or the cost of continued administration of the settlement fund are properly included in the amount of the bond required.  Compare In re Am. Investors Life Ins. Co., 695 F. Supp 2d at 166 ("The Court will not include damages to the class as part of the costs for the appeal bond.") with In re Gen. Elec. Co. Sec. Litig., --- F.Supp.2d ----, 2014 WL 534970, at *3  (S.D.N.Y. Feb. 11, 2014) ("[T]he Court of Appeals may impose an award of damages on an appellant pursuing a frivolous appeal, and a district court may consider that likelihood is assessing the scope and amount of a Rule 7 Bond."); and Heekin v. Anthem, Inc., 05- 01908, 2013 WL 752637, at *2 (S.D. Ind. Feb. 27, 2013) ("the excess administrative costs created by the delay incident to the

appeal, can be characterized as a 'cost of appeal' under Rule 7"). As with In re American Investors, most decisions within this Circuit that have considered this question have decided that a bond imposed under Rule 7 cannot secure costs associated with continued administration of a settlement fund or damages caused by delay incident to an appeal. See In re Diet Drugs, 2000 WL 1665134, at *4 (finding insufficient support for the plaintiffs' contention "that a bond under Rule 7 can secure damages caused by incident to an appeal"); Rossi, 2014 WL 1050658, at *2 ("Because Rule 39 does not enumerate any additional administrative costs caused by delay in the disbursement of settlement funds, inclusion of these costs is denied."); but see In re Nutella Mktg. & Sales Practices, No. 11-1086, 2012 WL 6013276 (D.N.J. Nov. 20, 2012), at *2 (finding that "administrative costs can be secured by a Rule 7 bond"). On this question I will not diverge from the majority of decisions in this circuit and will limit the amount of the bond available to plaintiffs under Rule 7 to those costs which are explicitly enumerated in Rule 39(e) of the Federal Rules of Appellate Procedure.

### C.    Amount of the Bond

In plaintiffs' motion for a bond, "Class Counsel estimates that they will incur an estimated . . . $5,000 in costs related to the appeal" separate from attorneys' fees, costs of administering the settlement fund and damages to members of the class resulting from delayed implementation of the settlement. Dkt. No. 128-1 at ECF p. 14. Accordingly, I will impose a bond of $5,000 upon the Jabrani objectors, jointly and severally.[3]

An appropriate Order follows.

---

[3] By its terms, Rule 7 permits cost bonds to be assessed against appellants, not their attorneys. Fed. R. App. P. 7.